Eugene F. Getty, Esq.
KELLNER HERLIHY GETTY & FRIEDMAN, LLP
470 Park Avenue South, 7th Floor
New York, New York 10016-6819
Tel. No. (212) 889-2121
efg@khgflaw.com

*Counsel for the Liquidator*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 15 |
|  | : |  |
|  | : | Case No. 16-_____ (____) |
| CINQUE TERRE FINANCIAL GROUP | : |  |
| LIMITED, | : |  |
|  | : |  |
| Debtor in a | : |  |
| Foreign Proceeding. | : |  |
|  | : |  |

--------------------------------------------------------x

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN INSOLVENCY
PROCEEDING AND APPLICATION FOR RELIEF PURSUANT TO SECTIONS
1504, 1507, 1509, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE**

1.     Stuart Mackellar, not individually but solely in his capacity as the duly appointed liquidator ("**Liquidator"**) of Cinque Terre Financial Group Limited ("**Cinque Terre**" or the "**Foreign Debtor**"), a company undergoing liquidation before the Eastern Caribbean Supreme Court High Court of Justice, Virgin Islands Commercial Division, in the British Virgin Islands (the "**BVI Court**"), claim number BVIHC (COM) 139 of 2015 (the "**BVI Liquidation**"), pursuant to Section 162 of the British Virgin Islands Insolvency Act of 2003 (the "**2003 Act**"), respectfully submits the Official Form Petition, this Verified Petition (together, the "**Petition**"), the accompanying Declaration of Stuart Mackellar, (the "**Mackellar Declaration**"), and the Declaration of Andrew Thorp, Esq. as to BVI Law (the "**Thorp Declaration**"), for entry of an Order pursuant to Chapter 15 of Bankruptcy Code:

(i) recognizing the BVI Liquidation of Cinque Terre as a foreign main proceeding, or in the alternative, a foreign non-main proceeding, pursuant to chapter 15 of the Bankruptcy Code, and the Liquidator as Cinque Terre's foreign representative under sections 1509 and 1517 of the Bankruptcy Code;

(ii) granting all automatic relief pursuant to section 1520 of the Bankruptcy Code, including staying all pending litigation against Cinque Terre;

(iii) granting other and additional relief pursuant to Sections 1507 and 1521(a) and (b) of the Bankruptcy Code, including, without limitation, *inter alia*:

    a. authorizing the Liquidator to issue discovery requests, examine witnesses, take evidence, and seek the production of documents concerning the assets, affairs, rights, obligations or liabilities of Cinque Terre;

    b. Upon the written request made by the Liquidator or through his counsel directing the turnover of any and all documents, records, filings, or other information, however stored, accessible by persons in the United States, regarding the assets, affairs, rights, obligations or liabilities of Cinque Terre from any person or entity subject to this Court's jurisdiction, including but not limited to Cinque Terre's former officers, directors, employees, representatives, legal advisors, shareholders, members, subsidiaries, counterparties, financial institutions, investment advisors and accountants;

    c. Upon written request made by the Liquidator or through his counsel, enjoining all persons and entities subject to the jurisdiction of this Court from destroying, secreting, altering, deleting or otherwise disposing of any documents, records, emails, filings, or other information, however stored, concerning or relating to the

assets, affairs, rights, obligations or liabilities of Cinque Terre, and directing them

to provide access to such documents, records, emails, via the applicable electronic

means; and

(iv)    Granting such other relief as may be just and proper.

## PRELIMINARY STATEMENT

2.      This Court previously has noted that "[u]nique to the Bankruptcy Code," chapter

15 contains a statement of purpose: "to incorporate the Model Law on Cross-Border Insolvency

so as to provide effective mechanisms for dealing with cases of cross-border insolvency . . . ." *In*

*re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126

(Bankr. S.D.N.Y. 2007) (quoting 11 U.S.C. § 1501), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).

Among the express objectives of chapter 15 is to promote the "fair and efficient administration of

cross-border insolvencies that protects the interests of all creditors, and other interested entities,

including the debtor." 11 U.S.C. § 1501(a)(3).

3.      The Liquidator petitions for recognition of the BVI Liquidation primarily to

obtain this Court's assistance to investigate the activities of the directors and management of

Cinque Terre taken in various jurisdictions including but not limited to Switzerland, the United

States and Central America.  This will be accomplished by obtaining critical discovery from

persons and entities located within the United States, staying litigation against Cinque Terre

pending in this District, and, potentially, prosecuting claims belonging to Cinque Terre against

defendants in the United States.  This assistance is critical to the Liquidator's ability to

administer the BVI Liquidation on behalf of Cinque Terre's significant creditors and other

stakeholders.

4.      Cinque Terre has in excess of $80 million in known creditor claims, four financial

institutions with security interests and charges entered in the BVI corporate registry, and is

subject to orders of attachment in respect of its assets in the Centauro Litigation (described further below).  Regarding Cinque Terre's assets, tens of millions of dollars of receivables and product that creditors were led to believe existed have either vanished or never existed, and Cinque Terre's Chief Financial Officer, Mr. Rothenberg, a Ft. Lauderdale, Florida resident, has stated in writing that he has no knowledge of the Cinque Terre's assets and that documents, books and records concerning Cinque Terre were intentionally sent from the United States to Venezuela.  As well, according to two of Cinque Terre's secured creditors, Mr. Bazzoni, Cinque Terre's Chief Executive officer and Principal, who worked in Switzerland and New York until recently, has relocated to Venezuela.

5.      The Liquidator understands that Cinque Terre has been represented by counsel located in this judicial district for years, including in respect of the Centauro Litigation (defined below) involving a $21 million attachment and veil piercing litigation commenced by *Centauro Liquid Opportunities Master Fund, L.P.*.  The Centauro Litigation has been ongoing for approximately seven months.  Centauro sued Cinque Terre and also named and asserted claims of veil piercing and alter ego against certain Cinque Terre affiliates and subsidiaries along with Mr. Bazzoni.  Cinque Terre's counsel also represents the affiliates, subsidiaries, and Mr. Bazzoni in that case.

6.      As this Petition, accompanying Declarations, and the exhibits thereto demonstrate, the BVI Liquidation can and should be recognized as a foreign main proceeding. However, if the BVI Liquidation is recognized as a non-main proceeding, this Court has the discretion to order protections and relief as it deems appropriate pursuant to sections 1507 and 1521 of the Bankruptcy Code.

7.      The Liquidator seeks precisely the type of relief that chapter 15 was designed to provide, and the BVI Liquidation and this Petition meet all the requirements for recognition and the requested relief.

8.      The Liquidator is a person duly appointed by the BVI Court to administer Cinque Terre's assets, liabilities, and any ongoing business in connection with the court-ordered BVI Liquidation of Cinque Terre pursuant to the 2003 Act.  The 2003 Act is a law relating to insolvency or adjustment of debt.  A copy of the BVI Court's Order dated April 11, 2016, appointing the Liquidator (the "**Liquidation Order**") is attached to the Mackellar Declaration and is in English.

9.      The BVI Liquidation is a collective judicial proceeding, subject to the direct control of the BVI Court, encompassing all creditors and stakeholders of Cinque Terre.  It is pending in the British Virgin Islands (the "**BVI**"), the foreign country in which Cinque Terre was incorporated, maintained its registered office, maintains its center of main interests, and where the Liquidator is engaged in non-transient economic activity.

10.    Pursuant to section 1516(c) of the Bankruptcy Code, because Cinque Terre was incorporated in the BVI, the BVI is presumed to be Cinque Terre's center of main interest.  This Petition and the accompanying Declarations further demonstrate that Cinque Terre's counterparties and creditors had clear and actual knowledge that Cinque Terre was a BVI entity. This is evidenced, *inter alia,* by the facts that four major financial institutions registered their security interest in the BVI, an unsecured creditor made the liquidation application in the BVI that resulted in the Liquidation Order, the liquidation application in the BVI was also joined by RB International Finance (USA) LLC, the lead institution in respect of three-of-four secured creditors pursuant to an intercreditor agreement, and where Cinque Terre represented its location

5

to be their respective agreements.    Additionally, the BVI is the obvious and demonstrable "nerve center" of Cinque Terre's ongoing liquidation.   Hence, the BVI Liquidation is a "foreign main proceeding" within the meaning of sections 101(23), 1502(4), 1516(c), and 1517(b)(1) of the Bankruptcy Code.

11. This Court and other courts have recognized numerous other liquidation proceedings of BVI-incorporated entities as foreign main proceedings.  *See In re Fairfield Sentry Ltd.*, 440 B.R. 60 (Bankr. S.D.N.Y. 2010) (recognizing the BVI liquidations of various BVI financial entities as foreign main proceedings upon the application of the joint liquidators of those entities), *aff'd*, 714 F.3d 127 (2d Cir. 2013); *In re Tranen Capital Investment Fund,* No. 15-12620 (Bankr. S.D.N.Y. October 29, 2015); *In re Lawndale Group S.A.,* No. 15-11352 (SCC) (Bankr. S.D.N.Y. July 6, 2015) (recognizing liquidation of British Virgin Islands entity as foreign main proceeding); *In re Pioneer Freight Futures*, No. 13-12324 (Bankr. S.D.N.Y. Aug. 23, 2013) (recognizing BVI liquidation proceeding); *In re Transfield ER Cape Ltd.*, No. 10-106270 (MG) (Bankr. S.D.N.Y. Jan. 13, 2011); *see also In re British American Isle of Venice (BVI), Ltd.*, 441 B.R. 713 (Bankr. S.D. Fla. 2010); *In re Grand Prix Assocs., Inc.,* No. 09-16545 (DHS), 2009 WL 1410519 (Bankr. D.N.J. May 18, 2009) (recognizing BVI liquidation as foreign main proceeding).

12.    Cinque Terre, the foreign debtor, maintains tangible and intangible assets in the United States and in this District.   These assets include funds held in trust at counsel for the Liquidator's offices in the United States and in this District, and funds held in a Northern Trust bank account located in Chicago, Illinois.   Cinque Terre also is a defendant in litigation pending in this District.   In this regard, because attachment orders and rights to collection are currently

capable of execution, both the requested stay pursuant to 11 U.S.C. 1520 and a provisional stay pursuant to 11 U.S.C 1519, as well as other relief pursuant to 1519, are necessary.

13.     The Liquidator respectfully submits that: (i) recognition of the BVI Liquidation would not be contrary to public policy under Bankruptcy Code Section 1506; (ii) the BVI Liquidation is a foreign main proceeding within the meaning of Sections 101(23) and 1502(4) of the Bankruptcy Code; (iii) the Liquidator is the duly appointed foreign representative of Cinque Terre within the meaning of Section 101(24); and (iv) the Liquidator and the Petition comply with all the requirements of Bankruptcy Code sections 109 and 1515 and Bankruptcy Rule 1007(a)(4).

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and sections 109 and 1501 of the Bankruptcy Code.

15.     Venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1410(1) and (2) because Cinque Terre has property in the United States and within this judicial District and because Cinque Terre is a defendant in an action pending in this District.

16.     Cinque Terre satisfies the requirements for filing a case under title 11 because it maintains property in the United States.  *See* 11 U.S.C. § 109(a); *In re Barnet*, 737 F.3d 238 (2d Cir. 2013).  Cinque Terre has monies on retainer with its New York counsel and its other US counsel, funds in a bank account in Illinois, and intangible assets in New York in the form of potential claims and causes of action.  *See In re Octaviar Administration Pty Ltd.*, 511 B.R. 361, 370-373 (Bankr. S.D.N.Y. 2014).  Entities from which Petitioner will be seeking discovery are subject to this Court's jurisdiction including persons who reside and/or are employed in the United States.

17.     This is a core foreign proceeding under 28 U.S.C. § 157(b)(2)(P).

## FACTUAL BACKGROUND

### Cinque Terre's Business

18.    Cinque Terre is a limited liability company formed on or about March 12, 2008

under the laws of the BVI.  At all material times, Cinque Terre maintained its registered office

at Craigmuir Chambers, Road Town, Tortola, British Virgin Islands.

19.    The Liquidator has only recently begun his investigation of the business and

operations of Cinque Terre, and thus, a full picture of its activities is not yet available.  Indeed,

a significant impetus for this Petition is to enable the Liquidator to investigate Cinque Terre's

dealings.   However, it currently is understood that, before the commencement of the BVI

Liquidation, Cinque Terre purports to have been engaged in the business of international oil

transactions.  This business may have included purchasing and selling oil and bunker[1] (marine)

fuel for resale to end users or to brokers, investing in hedging transactions and other derivatives

related to fuel/oil sales and providing trading and logistics support in connection with

international oil/bunker fuel sales.  In some cases, Cinque Terre appears to have entered into

joint ventures with trading partners or investors to finance its activities, while in other cases

Cinque Terre appears to have obtained financing for its investments.

20.    Concerning the principals and employees of Cinque Terre, the Liquidator has

conducted investigations as to the location of the assets and property of Cinque Terre and its

principals.   The sole director and shareholder of Cinque Terre is an Italian national named

Alessandro Bazzoni.  The Liquidator has discovered assets in the form of property holdings in

---

[1] "'Bunker fuel,' or even commonly just 'bunker,' is the term for fuel oil used to power modern vessels; it derives from the tank in which the fuel is stored, whose name is itself a holdover term from coal bunkers used in early steam vessels." *Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 148 n.3 (2d Cir. 2016).

New York and Miami connected to Mr. Bazzoni.   Richard Rothenberg, a citizen and resident of

the United States, was the chief financial officer of Cinque Terre before the BVI Liquidation.

Mr. Rothenberg apparently operated out of an office located in Fort Lauderdale, Florida, while

Mr. Bazzini worked out of Cinque Terre's offices in Zug, Switzerland.   It is not presently

known how many other persons were employed by Cinque Terre but the Liquidator has

identified a Feres Dager of Miami, Florida listed as currently employed by Cinque Terre

according to his LinkedIn profile.   Further employees of Cinque Terre and their location are

being investigated by the Liquidator.

21.      The Liquidator currently is in the process of assessing the location and extent of

Cinque Terre's assets, including tangible assets and receivables that creditors were led to

understand existed.    Among other things, the Liquidator is attempting to determine the

whereabouts and existence of approximately 250,000 barrels of crude oil valued at about US

$8 million (the "**Bunkers**") that Cinque Terre purportedly purchased from "Nordic Oil and Gas,

Ltd. (Dubai)" ("**Nordic Oil**"), a supplier, on September 15, 2015 and November 2015, which

supposedly were located on two barges off the coast of Benin according to a letter sent by Nordic

Oil to Cinque Terre CFO Rothenberg on February 15, 2016.   The Liquidator has searched for

information concerning the Bunkers' current whereabouts and instead has discovered that the

very existence of the Bunkers may well be a fraud.   Other known assets consist of bank accounts

at BSI Bank, Switzerland, Bancredito Bank, Puerto Rico, and Northern Trust Bank, Illinois, with

alleged balances ranging from several thousands of dollars to hundreds of dollars.    The

Liquidator has yet to verify the amounts and bases this information on documents produced by

pre-liquidation counsel for Cinque Terre on April 11, 2016, in connection with the Centauro

Litigation (defined below).   A portion of Cinque Terre's assets also are expected to include

potential claims against third parties. Cinque Terre's liabilities are believed to be in excess of its current assets.

## Events leading up to the BVI Liquidation

22.     On November 17, 2015, Pegasus Oil Trading Limited ("**Pegasus**"), made an application to the BVI Court for an order under the 2003 Act placing Cinque Terre in liquidation and for the appointment of a liquidator.   In its application, Pegasus alleged that, in May 2013, it had entered into a memorandum of understanding with Cinque Terre and another party for the purpose of selling bunker fuel in the area of the Panama Canal.  Cinque Terre apparently was responsible for selling bunker fuel to Pegasus and for delivering the fuel to vessels as directed by Pegasus.   Thereafter, in April 2014, the parties entered into a joint venture agreement regarding their transaction.

23.     According to Pegasus, Cinque Terre defaulted on its obligation to pay invoices associated with the storage of the fuel that was to be delivered pursuant to the joint venture, and then defaulted on its obligations to fund a portion of the losses of the joint venture.  Pegasus filed its liquidation application because Cinque Terre was not paying its debts as they came due.

24.     The hearing on Pegasus' application was adjourned until April 11, 2016.  During the interim period another creditor of Cinque Terre, RB International Finance (USA) LLC ("**RB International**"), filed an application to intervene in and be substituted as applicant.  According to RB International, on July 21, 2014, Cinque Terre and RB International entered into a line letter agreement, a continuing agreement for letters of credit, a promissory note in the original face amount of US $20 million and a general security agreement by which RB International provided Cinque Terre with a credit facility of up to $20 million usable for short term advances or the issuance of standby and commercial letters of credit (the "**RB International Loan**").

The RB International Loan was secured by a perfected security interest on all of Cinque Terre's personal and fixed assets. RB International, BNPP Suisse S.A. ("**BNPP**"), and Credit Suisse S.A. ("**Credit Suisse**") each registered charges and security interests in respect of Cinque Terre in the BVI Corporate Registry in 2014. RB International acts on BNPP and Credit Suisse's behalf pursuant to an inter-creditor agreement between and amongst RB International, BNPP and Credit Suisse.

25.     According to RB International, by October 21, 2015, RB International had advanced in excess of $16.1 million in principal to Cinque Terre under the RB International Loan. On November 18, 2015, Cinque Terre also assigned to RB International all of its interest in the contract to purchase the Bunkers, including all interest in the Bunkers, with the understanding that, upon the sale of the Bunkers, the proceeds would be applied to reduce the amount Cinque Terre owed under the RB International Loan.

26.     According to RB International, in January 2016, Cinque Terre defaulted on its obligations to make payments under the RB International Loan, and RB International issue notices of default. When RB International requested that Cinque Terre turn over the Bunkers to it, Cinque Terre informed RB International that it was unable to because of a purported global prejudgment attachment order issued in connection with a litigation pending in the United States District Court for the Southern District of New York styled *Centauro Liquid Opportunities Master Fund, L.P. v. Alessandro Bazzoni, et al.*, case no. 15-cv-9003 (LTS) (the "**Centauro Litigation**").

27.     The complaint in the Centauro Litigation asserts that, in 2009, Cinque Terre and Centauro Liquid Opportunities Master Fund, L.P. ("**Centauro**") entered into a joint venture by which Centauro financed oil transactions to be sourced and executed by Cinque Terre, the

profits of which were to be shared 50-50 by each party to the joint venture. The complaint further alleges that Centauro funded a total of 26 transactions between October 2010 and January 2012, but that by January 2014, Cinque Terre had defaulted on its obligation to provide Centauro with returns on completed transactions. On or about May 21, 2015, Cinque Terre executed a promissory note in favor of Centauro in the amount of $21,092,213 plus interest for amounts due to Centauro, and agreed to make monthly payments of $500,000. Cinque Terre, however, immediately defaulted when it failed to make the first payment when it came due. The complaint alleges claims for breach of contract, fraud, fraudulent inducement, conversion and unjust enrichment against Cinque Terre and certain other companies that the plaintiff, Centauro, alleges are alter egos of Mr. Bazzoni.

28.    A single New York counsel has represented Cinque Terre, a Cinque Terre affiliate and Mr. Bazzoni in the Centauro Litigation since its inception.

29.    On March 29, 2016, RB International filed a motion to intervene in the Centauro Litigation. In its April 4, 2016 response to RB International's motion, Centauro confirmed that its attachment did not apply to the Bunkers. According to RB International, when RB International confirmed to Cinque Terre that it had resolved the purported global attachment issue in regard to the Bunkers and sought their immediate turnover, Cinque Terre failed to provide RB International with any information concerning the current location and status of the Bunkers.

**The BVI Liquidation Order and BVI Insolvency Law**

30.    The hearing on the Pegasus and RB International applications took place before the BVI Court on April 11, 2016. At that time, the BVI Court directed that Cinque Terre be wound up by the BVI Court in accordance with the provisions of the 2003 Act and appointed Mr.

Mackellar as Liquidator of the company.   The Liquidation Order represents the "commencement of a foreign proceeding" as defined in 11 U.S.C. § 101(24).

31.      As set forth in Section 185(1)(a) of the 2003 Act, a liquidator appointed under the 2003 Act is required to take possession of, protect and realize the assets of the company in liquidation, wherever they may be located, for the benefit of its creditors.

32.      Section 175 of the 2003 Act provides that, upon commencement of a liquidation proceeding, "the directors and other officers of the company remain in office, but they cease to have any powers, functions or duties other than those required or permitted by [Part VI of the 2003 Act]."  Instead, the Liquidator is vested with responsibility for the management of Cinque Terre, subject to the supervision of the BVI Court.

33.      Under the 2003 Law, the Liquidator also is empowered to investigate (i) the causes for the failure of Cinque Terre's business, as well as (ii) generally, the promotion, business, dealings and affairs of Cinque Terre.

34.      BVI liquidation proceedings are fair and equitable. All creditors, whether located in the BVI or elsewhere, have an opportunity to be heard by the BVI Court.  BVI liquidation proceedings also are not for the benefit of any single creditor.  To that end, the 2003 Law operates to resolve and determine the rights of all claimants and stakeholders vis-à-vis the foreign debtor.  In this connection, Section 207 of the 2003 Act provides for the payment of classes of admitted claims and expenses in accordance with statutory priorities, and if the amount available for such claims is insufficient to pay claims in full, directs ratable payment by class. Any person or entity with a claim against Cinque Terre may assert such claim in the BVI Liquidation.

35. The 2003 Law also provides that upon the entry of a winding up order, no suit or other proceeding may be commenced or continued against the company except with leave of the BVI Court and subject to such terms as that Court might impose. This automatic stay mirrors the stay imposed in U.S. bankruptcy proceedings, except in respect of secured creditors, which maintain certain self-help rights under BVI law notwithstanding the liquidation, and serves to promote the Liquidator's ability to deal with claims and creditors collectively and comprehensively.

36. In his capacity as duly appointed Liquidator of Cinque Terre, Mr. Mackellar is empowered to carry out all of the functions and duties of a liquidator enumerated in the 2003 Act and the Liquidation Order, including the power to:

a. Pay any class of creditors in full.

b. Make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the company, whether present or future, certain or contingent, ascertained or not.

c. Compromise, on such terms as may be agreed

    i. Calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the company and any person; and

    ii. Questions in any way relating to or affecting the assets or the liquidation of the company;

    iii. And take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.

d. Commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the company in the British Virgin Islands and elsewhere.

e. Carry on the business of the company so far as may be necessary for its beneficial liquidation.

f. Sell or otherwise dispose of property of the company.

g.  Do all acts and execute, in the name and on behalf of the company, any deeds, receipts or other document.

h.  Use the company's seal.

i.  Prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent, and rateably with the other separate creditors.

j.  Draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company with the same effect with respect to the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

k.  Borrow money, whether on the security of the assets of the company or otherwise.

l.  Take out in his official name letters of administration to any deceased member or past member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate, that cannot conveniently done in the name of the company.

m.  Call meetings of creditors or members for

     i.  The purpose of informing creditors or members concerning the progress of matters arising in the liquidation;

     ii.  The purpose of ascertaining views of creditors or members on any matter arising in the liquidation; or

     iii.  Such other purpose connected with the liquidation as the Liquidator considers fit.

n.  Appoint a solicitor, accountant or other professionally qualified person to assist him in the performance of his duties.

o.  Appoint an agent to do any business that the Liquidators are unable to do themselves, or which can be more conveniently done by an agent.

p.  Apply to the Court for directions concerning any matter arising out of the exercise of the above powers.

q.  Do all other things incidental to the exercise of the above functions and powers.

37.   The powers enumerated in the Liquidation Order may be exercised without specific, prior BVI Court approval, but are always subject to BVI Court review.  However, the

Liquidator is further empowered to continue the operations of Cinque Terre as necessary, including the continuation of any legal actions.

38.　　Mr. Mackellar has the statutory authority as Liquidator to petition the Courts of the United States of America in the name of the Liquidator for recognition of the BVI Liquidation.

## Activities Concerning Cinque Terre in the BVI

39.　　As noted above, Cinque Terre was formed under BVI law so its COMI is presumed to be the BVI pursuant to section 1506 of the Bankruptcy Code.  Although it had offices in other locations, before the commencement of the BVI Liquidation Cinque Terre also maintained a continuing presence in the BVI through its registered office at Craigmuir Chambers, Road Town, Tortola, British Virgin Islands.

40.　　Under the law of the BVI, the situs of the shares of a BVI company is the place of its incorporation, *i.e.* the British Virgin Islands.

41.　　Cinque Terre's counterparties must have been aware that it is a BVI company. For example, the agreements between Cinque Terre and Pegasus, RB International and Centauro each refer to and acknowledge that Cinque Terre is a company formed under BVI law. So too, both Pegasus and three of the four secured creditors, led by RB International, turned to the BVI Court as the proper place to file their applications to wind up Cinque Terre when it became apparent that Cinque Terre was not paying its debts as they came due and when representations made by Cinque Terre's management concerning assets were realized to have been potentially fraudulent.  Moreover, in the context of the Centauro Litigation, Centauro served its attached order on Cinque Terre's registered office in the BVI.

42.     Since the entry of the Liquidation Order, the activity of the BVI Liquidation has taken place in and from the BVI.  Although the BVI Liquidation was only recently commenced, a significant amount of work already has been done, all of which is being conducted in or from the BVI by Liquidator, and, ultimately, subject to the supervision of the BVI Court.  It should be noted that the time-lines and scale of the work and investigation performed by the Liquidators has been accelerated in the face of a potential fraud, asset dissipation, and document removal/spoliation.  The currently known indicia of fraud and the importance of immediate action to prevent further dissipation is set forth in greater detail in the provisional relief motion pursuant to 11 U.S.C. 1519 accompanying this application.

43.     Initially, the Liquidator caused the requisite notices and filings concerning the commencement of the BVI Liquidation to be filed and published in the BVI.  On the day of its appointment and the three days following, the Liquidator undertook considerable efforts to contact Cinque Terre entities, banks associated with them, lawyers and counsel representing them, and third-parties with assets associated with them.  The efforts included contact and follow-up with:

    a.  **General Contact**:  Cinque Terre Financial Group Limited, Company; Harneys Corporate Services Limited. Registered Agent; Bazzoni, CEO Cinque Terre; Rothenberg; CFO Cinque Terre; BVI Beacon, Publication; Virgin Islands Official Gazette, Publication; BVI Registrar of Corporate Affairs, Registrar

    b.  **Banks**:   ADM Investment Services; Bancredito; BNP Paribas Suisse; BNP Paribas US; BSI; Credit Suisse; Northern Trust; Royal Bank of Canada, and Societe Generale

   c. **Cinque Terre subsidiaries and connected companies**:  Cinque Terre Holdings, Inc., Subsidiary; CT Energia, Subsidiary; CT Energia SA, Subsidiary; CTEP II C, Subsidiary; CTPT Inc., Subsidiary; CTEP LLC, Subsidiary; Cinque Terre Bunkering, Subsidiary; Melones Oil Terminal, Connected Company; InterQuimica SA, Connected Company; Vopak, Connected Company

   d. **Potential Assets**:  ICC Arbitration proceedings; Nordic Oil

   e. **Lawyers**:  Campbells, Baker McKenzie

44.   In the weeks since the Liquidator's appointment, it has continued to investigate Cinque Terre's business activities, its assets and liabilities.  The Liquidator's BVI-based efforts have resulted in inquiries and investigations for persons and entities in the BVI and around the world including the United States, Switzerland, the Dominican Republic, Panama, and the U.A.E., to name the most substantial.

45.   The most significant efforts and initial findings resulting from the Liquidator's actions necessitated seeking the chapter 15 and in particular provisional relief.  They are as follows:

   a. **General Contact**:

      i.  Cinque Terre Financial Group Limited, Company and Harneys Corporate Services Limited. Registered Agent: it provided Liquidators corporate documents, including Registers and incorporation documents.

      ii.  Bazzoni, CEO Cinque Terre: Email exchanges with Bazzoni and Liquidators as to the Liquidator's authority and providing basic information.  Has not completed the Statement of Affairs sent to him.

iii.   Rothenberg; CFO Cinque Terre:   Email exchanges with Bazzoni and Liquidator's as to the Liquidator's authority and providing basic information.  Has not completed the Statement of Affairs sent.  In a letter dated April 15, 2016, Rothenberg stated documents of Cinque Terre were in a customs warehouse in Caracas Venezuela, including Files, Books of account, papers, Registers, and Other documents.   Rothenberg did not disclose the date these items were sent to Venezuela, why they were sent to Venezuela (when Cinque Terre has no company or offices there), or by whose authority the documents were sent to Venezuela.   In regard to the Bunkers and Nordic Oil, Rothenberg further stated he was not aware of their location.  "Nordic Oil and Gas has not told us of the exact location and condition of the Product; however they have told us that they have it and also have costs associated with holding the Product for over 8 months. They want that cost paid before releasing the Product, which I understand they have said they will do. Further, on or around April 1st they informed the Company that their company was formally closed. We were trying to confirm this in Dubai, but we do not have anyone in Dubai that we can get that information from."  Rothenberg continued by stating he was making further inquiries concerning the Bunkers with the contact information he had.

b.   **Banks**:   Emails, faxes, letters and phone calls continue to be made seeking updated information.

i.   Northern Trust:   By letter dated April 21, 2016, the Chicago, Illinois branch of the Bank responded to the Liquidator's Request and Order dated April 13, 2016, by stating the liquidation order is not enforceable against the bank due to a lack of jurisdiction and it will take "no further action."

c.   **Cinque Terre subsidiaries and connected companies**:

19

i. CT Energia SA and InterQuimica SA:  For the Dominican Republic companies, search costs for banking records are $387 per company for a registry certificate and the agent confirmed the searches are being obtained.

ii. CTPT Inc. and Cinque Terre Bunkering:  For the Panamanian companies, search costs for banking records are $250 per company for a registry certificate and the agent completed the searches and just sent the information to the Liquidator for analysis.

iii. Melones Oil Terminal and Vopak, Connected Company:  Internet research undertaken and results being reviewed and considered further.

d. Potential Assets:

i. ICC:  Inquires with counsel for CTFG in Switzerland confirms CTFG is a party to an international arbitration where Cinque Terre is defending a claim of $30,000,000 and asserting a counterclaim of $48,000,000.

ii. Nordic Oil:  The Liquidator has been unable to confirm the location or existence of the Bunkers.  Serious irregularities concerning the documentation as to the Bunker transaction points to the existence of a potential fraud.

46.    In regard to recent travel activity of Cinque Terre principals, two of Cinque Terre's secured creditors advised the Liquidator that Mr. Bazzoni has recently relocated to Venezuela, having formerly worked in Switzerland and New York.  Although Mr. Rothenberg appears to still be in the United States and has responded to the Liquidator's initial inquiry, he has not agreed to turn over documents or other information in his possession and recently stated he was "traveling" and recently suffered a bereavement so his responses may be delayed.  He has not stated that he is unable to access files of Cinque Terre electronically.  He has not provided all web-based and accessible emails of Cinque Terre.  The Liquidator is concerned that any

documents or other information concerning Cinque Terre's business and operations that remain in Mr. Rothenberg's possession may be at risk of spoliation if not recovered in the very near term.

47.     Finally, the Liquidator and his BVI based staff are communicating with Cinque Terre's creditors toward arriving at a consensus for a liquidation strategy.   All such communications have been conducted from the BVI.

48.     All of the foregoing activities are being conducted and supervised by the Liquidator and his BVI based staff from the BVI.

49.     As the Liquidator's investigation continues, the operation of Cinque Terre and potential claims against third parties are expected to become clearer.  Assets recovered will be brought to the BVI and all funds banked within Cinque Terre's BVI based bank account.  Books, records, emails and documentation recovered will similarly be brought to the BVI and, potential claims will be overseen, managed and resolved (by litigation or negotiation) by the Liquidator from the BVI, subject to oversight by the BVI Court.

**Litigation Against Cinque Terre in the United States**

50.     As noted above, Cinque Terre currently is a defendant in the Centauro Litigation, pending in the United States District Court for the Southern District of New York.   The Liquidator was informed by counsel for Cinque Terre and RB International that depositions concerning Cinque Terre assets in connection with the New York order of attachment are scheduled to take place next week, a judicial settlement conference was recently adjourned in light of the BVI Liquidation, and that the presiding judge has asked all counsel to investigate whether the Centauro Litigation will be stayed.  However, it is unclear if absent provisional relief the depositions or other proceedings in the Centauro Litigation will proceed.

51.     As noted above, BVI liquidation proceedings are collective proceedings designed to resolve all claims against the debtor entity for the benefit of all of its creditors and stakeholders.  Cinque Terre's estate and its other creditors thus will be significantly prejudiced if the Liquidator is forced to continue to expend scarce estate resources to defend the Centauro Litigation in New York.  At the same time, the Liquidator seeks provisional relief to take examinations of Mr. Bazzoni and Mr. Rothenberg concerning the assets, affairs, rights, obligations or liabilities of Cinque Terre.

52.     For this reason, the Liquidator seeks to stay the Centauro Litigation insofar as it asserts claims against Cinque Terre, so that all claims against Cinque Terre can be resolved as part of the collective proceeding that is the BVI Liquidation rather than on a piecemeal basis.

53.     The Liquidator currently is not aware of any other litigation pending against Cinque Terre in the United States.

### RELIEF REQUESTED

54.     By this Petition, the Liquidators seek the following relief:

    a.    Recognition of the BVI Liquidation as a foreign main proceeding, or in the alternative, a foreign non-main proceeding, pursuant to chapter 15 of the Bankruptcy Code, and the Liquidator as Cinque Terre's foreign representative under sections 1509 and 1517 of the Bankruptcy Code; and

    b.    Relief pursuant to sections 1520 and 1521(a) of the Bankruptcy Code.

55.     For the reasons set forth above, the Liquidator further requests, that pursuant to 11 U.S.C. § 1521(a)(4), that the Court authorize and permit the Liquidator to commence discovery in the United States concerning Mr. Bazzoni, Mr. Rothenberg, former counsel for Cinque Terre, the various counterparties, financial institutions, accountants and others with information concerning Cinque Terre.

56.     The Liquidator therefore seeks entry of an Order of this Court pursuant to sections 105(a), 1507, 1517, 1520, and 1521(a) of the Bankruptcy Code, substantially in the form attached hereto as Exhibit A (the **"Proposed Recognition Order"**).

## BASIS FOR RECOGNITION

57.     Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a "foreign proceeding" if, after notice and a hearing, it appears that recognition will not undermine U.S. public policy and: "(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a).

**A.      The BVI Liquidation is a Foreign Proceeding
          and the Liquidator is a Foreign Representative**

58.     Section 101(23) of the Bankruptcy Code defines a foreign proceeding as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

59.     This definition incorporates the term foreign representative, which is defined as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The Liquidator and the BVI Liquidation meet all of these requirements.

60.     First, the BVI Liquidation is a judicial proceeding in a foreign country, the BVI, subject to the control and supervision of the BVI Court.  All claims against Cinque Terre may be submitted in the BVI Liquidation and all claimants have the right to access the BVI Court and appeal decisions of the Liquidator.  Moreover, the functions of the Liquidator, including the settlement of claims, distribution of assets and determination of the priority of creditors are subject to the oversight and review by the BVI Court.

61.     Second, the BVI Liquidation is being conducted by the Liquidator, who was appointed by the BVI Court pursuant to the 2003 Act to wind up the business and affairs of Cinque Terre according to the provisions of the 2003 Act.  As such the Liquidator is a "person authorized in a foreign proceeding to administer the reorganization or the liquidation of [Cinque Terre's] assets or affairs," within the meaning of section 101(24).

62.     Third, the law governing the BVI Liquidation, the 2003 Act, specifically relates to "insolvency or adjustment of debt." 11 U.S.C. §101(23).  The full name of the 2003 Act is the "Virgin Islands Insolvency Act of 2003," and it is a law relating to insolvency and adjustment of debts under BVI Law.

63.     Finally, the BVI Liquidation is "collective" because it "considers the rights and obligations of all creditors."  *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009).

64.     It is well established that a BVI Liquidation proceeding is a foreign proceeding. Indeed, this Court and other courts have entered orders recognizing similar liquidation proceedings of BVI entities as foreign main proceedings.  *See In re Fairfield Sentry Ltd.*, 440 B.R. 60 (recognizing the BVI liquidations of various BVI financial entities as foreign main proceedings upon the application of the joint liquidators of those entities) *aff'd*, 714 F.3d 127 (2d Cir. 2013; *In re Pioneer Freight Futures*, No. 13-12324 (Bankr. S.D.N.Y. Aug. 23, 2013)

(recognizing BVI liquidation proceeding); *In re Transfield ER Cape Ltd.*, No. 10-106270 (MG) (Bankr. S.D.N.Y. Jan. 13, 2011); *see also In re British American Isle of Venice (BVI), Ltd.*, 441 B.R. 713 (Bankr. S.D. Fla. 2010); *In re Grand Prix Assocs., Inc.,* No. 09-16545 (DHS), 2009 WL 1410519 (Bankr. D.N.J. May 18, 2009) (recognizing BVI liquidation as foreign main proceeding); *In re Lawndale Group S.A.,* No. 15-11352 (SCC) (Bankr. S.D.N.Y. July 6, 2015) (recognizing liquidation of British Virgin Islands entity as foreign main proceeding).

65.    For these reasons, this Court should find that the BVI Liquidation at issue here qualifies as a foreign proceeding and that the Liquidator qualifies as a foreign representative for purposes of chapter 15.

**B.    The BVI Liquidation is a Foreign Main Proceeding**

66.    A foreign main proceeding is one that is pending in the country where a foreign debtor's center of main interests or COMI is located, and section 1516(c) provides that a foreign debtor's COMI is presumed to be the country of its registered office. *See* 11 U.S.C. §§ 1502(4), 1516(c).

67.    A foreign debtor's COMI is determined at the time the Chapter 15 petition is filed. The Second Circuit held in *In re Fairfield Sentry Ltd.* "that a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests. But . . . a court may consider the period between the commencement of the foreign insolvency proceeding and the filing of the Chapter 15 petition to ensure that a debtor has not manipulated its COMI in bad faith." 714 F.3d 127, 137 (2d Cir. 2013).

68.    In addition to the presumption provided under section 1516, courts consider any relevant factors, including: (i) the location of the debtor's assets; (ii) the location of the debtor's books and records; (iii) the location of the majority of the debtor's creditors; (iv) the commercial expectations and knowledge of the debtor's creditors; and (v) the location of those who actually

manage the debtor. *See, e.g., In re Suntech Power Holdings Co., Ltd.,* 520 B.R. at 416 (recognizing Cayman **provisional** liquidation as a foreign main proceeding and finding that COMI had shifted to the Cayman Islands as a result of the provisional liquidators' work in the few days leading up to the application since their appointment, even when China-based directors retained some residual powers. *See also In re Grand Prix Assocs.*, No. 09-16545, 2009 WL 1410519, at *22 (Bankr. D.N.J. May 18, 2009). These factors, however, are not dispositive or exclusive, and none of the factors are required. *See Fairfield Sentry Ltd.*, 714 F.3d at 137-38. Further, courts have also looked to whether a chapter 15 debtor's COMI would have been readily ascertainable to parties in interest, such as the debtor's creditors. *See Grand Prix Assocs.*, 2009 WL 1410519, at *6.

69.    In this case, Cinque Terre was formed under BVI law so its COMI is presumed to be there.  Under BVI law, the situs of a BVI company's shares are located in the BVI.

70.    Some of Cinque Terre's books and records are in the BVI and the Liquidator is in the process of collecting the remaining books and records and moving them to the BVI.  In particular, the Liquidator has learned from Mr. Rothenberg that some documents and records are in a warehouse in Venezuela.  Further, BVI counsel for Cinque Terre in the BVI Liquidation initiated by Pegasus sent the Liquidator information concerning Cinque Terre bank statements, invoices, reports, and other documents in Cinque Terre.

71.    Cinque Terre's counterparties were aware that it is a BVI company and acknowledged same in their agreements.

72.    The Liquidator expects that Cinque Terre's most valuable assets may prove to be arbitration and litigation claims, which will be managed by the Liquidator from the BVI.  Cinque Terre has a $48,000,000 claim in arbitration and the Liquidator has been in contact with counsel

for Cinque Terre in that matter (who is located in Switzerland and is now taking instructions

from the Liquidator).  Hence, the situs of Cinque Terre's intangible property - the majority of its

ongoing business - is in the BVI.

73.    Since their appointment, the Liquidators have been in communication with

Cinque Terre's creditors from the BVI.

74.    Judge Lifland's decision in *In re Fairfield Sentry* is instructive.  440 B.R. 60, 63-

65.  In that case, he explicitly considered the following activities of the Fairfield debtors' joint

liquidators in the BVI: (i) board meetings conducted telephonically by the debtor's counsel in the

BVI; (ii) the presence in the BVI of the liquidators' employees and offices, as well as the foreign

debtors' books and records; and (iii) the fact that liquidator created an "administrative nerve

center" in the BVI for the foreign debtor.  *See also Grand Prix Associates,* 2009 WL 1410519 at

*8 (BVI was "clearly" the foreign debtors' COMI where debtors had no place of business outside

the BVI, the debtors' books and records were located in the BVI and the "necessary operating

expenses for entities [was] held in a bank account in the BVI"); *In re Saad Invs. Fin. Co. (No. 5)

Ltd.,* No. 09-13985 (KG) (Bankr. D. Del. Dec. 17, 2009) (main recognition was appropriate

based upon post-insolvency activities in the Cayman Islands, including creditor involvement,

substantial asset management and Cayman-based oversight by the administrator and creditor's

committee).

75.    Here, the Liquidator is engaging and will engage in substantial post-liquidation

activity from offices in the BVI including: (i) displacing and assuming the duties of the board of

directors and voting necessary company shares; (ii) assessing the merits of Cinque Terre's and its

creditors' potential claims, and gathering information on Cinque Terre's past operations; (iii)

27

investigating Cinque Terre's business; (iv) establishing bank accounts; and (v) engaging in discussions with creditors.

76.     Cinque Terre's intangible assets are located in the BVI, as are some of its books and records.  Furthermore, Cinque Terre's counterparties and creditors knew Cinque Terre was a BVI entity.  *See In re Chiang,* 437 B.R. 397, 403 (Bankr. C.D. Cal. 2010) ("[t]he location of the COMI is an objective determination based on the viewpoint of third parties (usually creditors)").

77.     In *In re Culmer*, 25 B.R. 621, 632 (Bankr. S.D.N.Y. 1982), Judge Lifland recognized a Bahamas liquidation pursuant to chapter 15's predecessor, 11 U.S.C. § 304, where the entities' creditors similarly had actual knowledge they were dealing with a Bahamas entity. He reasoned:  "this result is altogether just and appropriate as these creditors dealt freely with [the foreign debtor] and were undoubtedly aware that they were dealing with a [company] incorporated under and subject to foreign law when they first began doing business with [the foreign debtor]."  Judge Lifland quoted at length from the Supreme Court's "declaration" in *Canada Railway Co. v. Gebhard* as follows:

> [E]very person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. To all intents and purposes, he submits his contract with the corporation to such a policy of the foreign government, and whatever is done by that government in furtherance of that policy, which binds those in like situation with himself, who are subjects of the government, in respect to the operation and effect of their contracts with the corporation, will necessarily bind him. He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them, and it has no power to contract with a view to any other laws with which they are not in entire harmony.

25 B.R. at 632 (quoting *Canada Railway Co. v. Gebhard*, 109 U.S. 527, 537-538 (1883)).

78.     In sum, the Liquidator submits that there is ample evidence and precedent to support the recognition of the BVI Liquidation as a foreign main proceeding.

**C.**   **Alternatively, the BVI Liquidation Should Be Recognized as Foreign Non-Main Proceeding**

79.     Section 1502(5) of the Bankruptcy Code defines a foreign non-main proceeding as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment."  In turn, "establishment" is defined by 11 U.S.C. § 1502(2) as being "any place of operations where the debtor carries out non-transitory economic activity."

80.     The Liquidator respectfully submits that at a minimum, the Liquidator's activities in the BVI constitute non-transitory economic activity.   The Liquidator is continuing the remaining business of Cinque Terre as part of the winding-up of its affairs from offices in the BVI.

81.     There is no foreign or domestic insolvency proceeding other than the BVI Liquidation.

82.     The BVI Liquidation is a legitimate insolvency proceeding.   Under the circumstances and given that winding up and any remaining business activities are being conducted from the BVI, there are sufficient grounds for this Court to grant non-main recognition to the BVI Liquidation pursuant to chapter 15 and further, to grant the Liquidator the discretionary relief requested.

**D.**   **The BVI Liquidation Meets All Other Requirements for Recognition**

83.     In addition, the BVI Liquidation meets all other requirements for recognition under section 1515.  The Petition is accompanied by evidence supporting the existence of a foreign proceeding and a foreign representative, including a copy of the Liquidation Order issued by the BVI Court in English.  *See* 11 U.S.C. § 1515(b).

84.     The Petition is accompanied by a declaration containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a

statement indicating that there are no other persons or entities known to the Liquidator that are authorized to administer foreign proceedings with respect to Cinque Terre, and a list of all known parties to litigation with Cinque Terre in the United States.  The documents supporting the Petition all are in English.  *See* 11 U.S.C. § 1515(d).

85.     Under these circumstances, the Liquidator and the Petition satisfy all of the requirements for recognition respectively as a foreign representative and as a foreign main proceeding under chapter 15.

**E.     Chapter 15 Authorizes Turnover of Books, Records
        and Other Information For Main and Non-Main Proceedings**

86.     The Liquidator requests that upon filing this Petition, and/or later upon recognition, this Court order the turnover of all records, books, documents, papers, electronic correspondence, banking information, and information relating to Cinque Terre, its property or financial affairs by those entities subject to the jurisdiction of this Court.

87.     Based on filings reflected on the electronic docket for the Centauro Litigation, it is highly likely that relevant information concerning Cinque Terre's property and financial affairs is in the possession of attorneys who formerly acted as U.S. legal counsel for Cinque Terre in this District.

88.     This relief is contemplated under sections 1519(a)(2) and (a)(3), 1521 (a)(5) and (a)(7).  *See In re Gee*, 53 B.R. 891, 905 (Bankr. S.D.N.Y. 1985) (under former section 304, Court issued order "directing all persons and entities within the Southern District of New York which now have or may hereinafter obtain books and records, to forthwith turn over all such books and records to [Cayman Island Liquidator]"); *see also In re 47-49 Charles Street, Inc.*, No. 93 B 42821(CB), 1999 WL 177432 (S.D.N.Y. Mar. 30, 1999) ("Title 11, section 521 (4) of the Bankruptcy Code clearly requires the Debtor to surrender its books and records to the trustee,

and title 11, section 542(e) extends that requirement to attorneys, accounts and other persons who may hold such books and records").

## F.   Chapter 15 Authorizes Discovery For Main and Non-Main Proceedings

89.   Irrespective of whether the BVI Liquidation is recognized as a main or as a non-main proceeding, the discovery and turnover relief requested herein is authorized by section 1521(a)(4) of the Bankruptcy Code.

90.   Section 1521(a) provides that "[u]pon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of creditor, the court may, at the request of the foreign representative, grant any appropriate relief including:"…

> (4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities.

91.   Section 1520 The Southern District of New York has recognized the broad scope of Section 1521(a)(4).  *See In re Millennium Global Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (S.D.N.Y. 2012) ("Section 1521(a)(4) provides specifically that the Court may enter an order providing for 'the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities.' 11 U.S.C. § 1521(a)(4). By its terms, this provision enables a foreign representative to take broad discovery concerning the property and affairs of a debtor.").

92.   Any third party who can be shown to have relationship with debtor can be made subject to investigation by bankruptcy examiner since purpose of investigation is to aid in discovery of assets. *See In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 432 (S.D.N.Y. 1993) (citing *In re Vantage Petroleum Corp,* 34 B.R. 650, 651 (E.D.N.Y. 1983) and *Sachs v. Hadden,* 173 F.2d 929, 931 (2d. Cir. 1949) for the proposition that "[t]he investigation of an examiner in

31

bankruptcy, 'unlike civil discovery under Rule 26(c), is supposed to be a 'fishing expedition,' as exploratory and groping as appears proper to the Examiner. Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation'").

93.     Here, it is clear that Mr. Rothenberg, and Cinque Terre's New York counsel have a sufficient "relationship" with Cinque Terre to merit discovery.  And it is expected that there will be other witnesses that likewise have such a relationship from whom discovery will be sought, such as Feres Dager of Miami, Florida, if it can be confirmed he is/was an employee of Cinque Terre as he indicated on this LinkedIn page.

### REQUEST FOR WAIVER OF LOCAL BANKRUPTCY RULE 9013-1(a)

94.     It is respectfully requested that this Court waive and dispense with the requirement set forth in Rule 9013-l(a) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that any motion filed shall be accompanied by a memorandum of law on the grounds that the relevant authorities in support of the Petition are contained herein.

### HEARING DATES AND NOTICES

95.     Section 1517(c) requires that "[A] petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time."  Bankruptcy Rule 2002 sets forth a twenty-one-day notice requirement to parties in interest with certain exceptions to approve the Petition. If no objections to this Petition are filed by the date ordered for such objections, the Liquidator requests that the Court enter the Proposed Order recognizing the BVI Liquidation as a foreign main proceeding without a hearing pursuant to Local Rule 2002-2.

96.     The Liquidator proposes that once a Hearing Date has been set by the Court, notice will be given as reasonable and appropriate under the circumstances.  Specifically, the

Liquidator proposes serving copies of the Petition and related documents by United States mail, first-class postage prepaid, by overnight courier, by electronic mail, or by hand delivery where practicable, upon all parties against whom relief is sought (or their counsel or registered agent for service of process) within three (3) business days and upon all other creditors within seven (7) business days all in accordance with Bankruptcy Rules 1010 and 7004(a) and (b).

97.   The Liquidator submits that such notice and service is reasonable and proper under the circumstances, and that no other or further notice is necessary or appropriate.

98.   No previous application for the relief requested in this Petition has been made in this or any other court in the United States.

## CONCLUSION

WHEREFORE, the Liquidator respectfully requests that this Court enter an Order, substantially in the form of Exhibit A, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: New York, New York
       April 27, 2016

Respectfully submitted,

KELLNER HERLIHY GETTY & FRIEDMAN, LLP

By: _____
  Eugene F. Getty
470 Park Avenue South, 7th Floor
New York, New York 10016-6819
Tel. No. (212) 889-2121
efg@khgflaw.com

*Attorneys for Foreign Representative*

Counsel:

    Gregory S. Grossman, Esq.
    ASTIGARRAGA DAVIS MULLINS & GROSSMAN P.A.
    1001 Brickell Bay Drive, 9th Floor
    Miami, Florida 33131
    Tel: (305) 372-8282
    ggrossman@astidavis.com

F:\WDOX\CLIENTS\10250\1001\00254182.DOCX