UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                                         :  Chapter 15
In re:                                                   :
                                                         :  Case No. 16-_____ (___)
CINQUE TERRE FINANCIAL GROUP                             :
LIMITED,                                                 :
                                                         :
         Debtor in a                                     :
         Foreign Proceeding.                             :
                                                         :
---------------------------------------------------------x

# DECLARATION OF STUART MACKELLAR IN SUPPORT OF CHAPTER 15 PETITION OF CINQUE TERRE FINANCIAL GROUP LIMITED FOR RECOGNITION OF FOREIGN INSOLVENCY PROCEEDING

I, Stuart Mackellar, declare as follows:

1. I am the duly appointed liquidator ("**Liquidator**") of Cinque Terre Financial Group Limited ("**Cinque Terre**" or the "**Foreign Debtor**"), a company undergoing liquidation before the Eastern Caribbean Supreme Court, High Court of Justice, Virgin Islands, Commercial Division, in the British Virgin Islands (the "**BVI Court**"), claim number BVIHC (COM) 139 of 2015 (the "**BVI Liquidation**"), pursuant to Section 162 of the British Virgin Islands Insolvency Act of 2003 (the "**2003 Act**").

2. I respectfully submit this declaration ("**Declaration**") in support of the Liquidator's Verified Petition seeking recognition of the BVI Liquidation and certain additional and provisional relief pursuant to the United States Bankruptcy Code (the "**Bankruptcy Code**"), as described in detail below.

3. I am a licensed insolvency practitioner and have served several times as Liquidator appointed by the Courts of the British Virgin Islands under the 2003 Act.

4. I am duly authorized to make this Declaration as the liquidator of Cinque Terre. I have fully participated in and supervised the BVI Liquidation, with my BVI-located staff. Unless otherwise indicated, all statements contained herein are true to the best of my knowledge and based upon my personal knowledge or my review of my relevant documents. I also take the opportunity to note that this application has been prepared on an expedited basis given the preliminary information I have received and reviewed that indicate the potential that a serious fraud has occurred and given the need for provisional relief. As such, I have done my best to verify the accuracy of all statements under the significant time pressures.

5. Pursuant to the 2003 Act, a court-appointed liquidator is an officer of the BVI Court. As such, I make this Declaration as an officer of the BVI Court, and request an extension of comity for the benefit of all of the creditors and investors of Cinque Terre, whose interests I represent.

**The Liquidation Order and My Appointment**

6. On November 17, 2015, Pegasus Oil Trading Limited ("**Pegasus**"), made an application to the BVI Court for an order under the 2003 Act placing Cinque Terre in liquidation and for the appointment of a liquidator.

7. The hearing on Pegasus' application was adjourned until April 11, 2016. During the interim period, another creditor of Cinque Terre, RB International Finance (USA) LLC ("**RB International**"), filed an application to intervene in and be substituted as applicant.

8. The hearing on the Pegasus and RB International applications took place before the BVI Court on April 11, 2016. At that time, the BVI Court directed that Cinque Terre be wound up by the BVI Court in accordance with the provisions of the 2003 Act and I was

appointed as Liquidator of the company (the "**Liquidation Order**"). A true and correct copy of the Liquidation Order is attached hereto as Exhibit 1.

9. As the Liquidator of Cinque Terre, I and my staff perform our duties in and from the BVI.

10. For the reasons discussed below, I submit that: (i) I am a duly appointed "foreign representative" of the BVI Liquidation and that the BVI Liquidation constitutes a "foreign proceeding" within the meaning of sections 101(24) and (23) of the United States Bankruptcy Code, respectively; (ii) the case was properly commenced in accordance with the requirements of Chapter 15 of the Bankruptcy Code; and (iii) the BVI Liquidation satisfies all of the requirements to be recognized as a "foreign main proceeding" pursuant to Sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

11. Additionally, my investigation thus far has revealed significant concerns of fraud. In particular, and as detailed herein, (i) the Chief Financial Officer of Cinque Terre, a U.S. resident has stated in writing that the books and records of Cinque Terre have been intentionally moved to Venezuela; (ii) I have been advised that the Chief Executive Officer and Chairman of Cinque Terre has recently relocated to Venezuela; (iii) RB International has provided information to me indicating that a purported marine fuel oil asset of Cinque Terre, which asset was assigned to RB International, may have been dissipated and/or the underlying transaction may be fraudulent; (iv) RB International has provided information to me indicating millions of dollars of receivables that Cinque Terre's management represented to its creditors as existing seem to have disappeared; and (v) there are concerns over intra-corporate dealings between and amongst the various entities in the Cinque Terre group. Under the circumstances, I further

3

submit that provisional relief pursuant to 11 U.S.C. 1519 with the principal purpose of obtaining information, testimony and records is appropriate and warranted here.

**Cinque Terre's Pre-Liquidation Business and Relevant Facts**

12.   Cinque Terre is a limited liability company formed on March 12, 2008 under the laws of the BVI. At all material times, Cinque Terre maintained a continuing presence through its registered office at Craigmuir Chambers, Road Town, Tortola, British Virgin Islands.

13.   I have only recently begun my investigation of the business and operations of Cinque Terre and thus a full picture of its activities is not available. Indeed, a significant impetus for this application is to enable me to investigate Cinque Terre's dealings. However, my understanding is that before the commencement of the BVI Liquidation, Cinque Terre purported to be engaged in the business of international energy transactions. This business seems to have included purchasing and selling oil and bunker (marine) fuel for resale to end users or to brokers, investing in hedging transactions and other derivatives related to fuel/oil sales, and providing trading and logistics support in connection with international oil/bunker fuel sales. In some cases (including according to Pegasus), Cinque Terre appears to have entered into joint ventures with trading partners or investors to finance its activities, while in other cases Cinque Terre appears to have obtained financing for its investments.

14.   Cinque Terre's counterparties and creditors had actual knowledge that it is a BVI company and acknowledged the same in various agreements. Indeed, four major financial institutions registered their security interest in the BVI with respect to assets of Cinque Terre; Pegasus filed the application that resulted in the Liquidation Order at issue here; RB International, the coordinator in respect of several secured financial institution creditors of Cinque Terre pursuant to an intercreditor agreement produced in the BVI, joined the BVI

4

liquidation application in respect of Cinque Terre; and Cinque Terre represented that it was a BVI entity in all agreements I have reviewed.

15. The following are the results of my investigation thus far. The sole director and shareholder of Cinque Terre is an Italian national, Alessandro Bazzoni ("**Mr. Bazzoni**"). It appears that Mr. Bazzoni conducted business from Switzerland and the United States and maintains property in New York and Miami.

16. Richard Rothenberg, a citizen of the United States, was the chief financial officer of Cinque Terre. Mr. Rothenberg apparently operated out of an office located in Fort Lauderdale, Florida, while Mr. Bazzoni worked out Cinque Terre's offices in Zug, Switzerland. It is not presently known how many other persons were employed by Cinque Terre; however, a Feres Dager of Miami, Florida is listed as currently employed by Cinque Terre according to this LinkedIn profile. I am investigating if there are other employees of Cinque Terre.

17. I am currently in the process of assessing the location and extent of Cinque Terre's assets, including tangible assets and receivables that creditors were led to understand existed. Among other critical and time-sensitive tasks, I am attempting to determine the whereabouts and existence of approximately 250,000 barrels of crude oil valued at about $8 million (the "**Bunkers**") that Cinque Terre purportedly purchased from "Nordic Oil and Gas, Ltd. (Dubai)" ("**Nordic Oil**"), a supplier, on September 15, 2015, and which supposedly were located on two barges off the coast of Benin according to a letter sent by Nordic Oil to Cinque Terre CFO Rothenberg on February 15, 2016. RB International advised me that Cinque Terre assigned the Bunkers to it in November, 2015, but RB International has never received the Bunkers or any proceeds thereof.

5

18. In my view, the information provided by former management concerning the Bunkers' whereabouts is inconsistent and there are numerous indicia of fraud associated with the Bunkers transaction.

19. Other known assets of Cinque Terre consist of bank accounts at BSI Bank, Switzerland, Bancredito Bank, Puerto Rico, and Northern Trust Bank, Illinois, with alleged balances ranging from several thousand dollars to hundreds of dollars. I have yet to verify the amounts and base this information on documents produced by pre-liquidation counsel for Cinque Terre on April 11, 2016 in connection with the Centauro Litigation (discussed below). Portions of Cinque Terre's assets are expected to include potential claims against third parties. Cinque Terre's liabilities, which include in excess of $80 million in known creditor claims, are believed to be in excess of its current assets.

### Events Leading up to the BVI Liquidation

20. On November 17, 2015, Pegasus made an application to the BVI Court for an order under the 2003 Act placing Cinque Terre in liquidation and for the appointment of a liquidator. In its application, Pegasus alleged that in May 2013, it had entered into a memorandum of understanding with Cinque Terre and another party for the purpose of selling bunker fuel in the area of the Panama Canal. Thereafter, in April 2014, the parties allegedly entered into a joint venture agreement regarding their transactions.

21. According to Pegasus, Cinque Terre defaulted on its obligation to pay invoices associated with the storage of the fuel that was to be delivered pursuant to the joint venture, and then defaulted on its obligations to fund a portion of the losses of the joint venture. Pegasus filed its liquidation application asserting Cinque Terre was not paying its debts as they came due.

22. The hearing on Pegasus' application was adjourned until April 11, 2016. During the interim period, RB International, filed an application to intervene in and be substituted as applicant.

23. According to RB International, on July 21, 2014, Cinque Terre and RB International had entered into: (i) a line letter agreement; (ii) a continuing agreement for letters of credit; (iii) a promissory note in the original face amount of $20 million; (iv) and a general security agreement by which RB International provided Cinque Terre with a credit facility of up to $20 million usable for short term advances or the issuance of standby and commercial letters of credit (the "**RB International Loan**").

24. According to RB International, the RB International Loan was secured by a perfected security interest in all of Cinque Terre's personal and fixed assets. RB International, BNPP Suisse S.A. ("**BNPP**"), and Credit Suisse S.A. ("**Credit Suisse**") each registered charges and security interests in respect of Cinque Terre in the BVI Corporate Registry in 2014, and RB International acts on BNPP and Credit Suisse's behalf pursuant to an inter-creditor agreement among RB International, BNPP and Credit Suisse.

25. According to RB International, by October 21, 2015, RB International had advanced in excess of $16.1 million in principal to Cinque Terre under the RB International Loan. On November 18, 2015, Cinque Terre also assigned to RB International all of its interest in the contract to purchase the Bunkers, including all interest in the Bunkers, with the understanding that upon the sale of the Bunkers, the proceeds would be applied to reduce the amount Cinque Terre owed under the RB International Loan.

26. According to RB International, in January 2016, RB International issued notices of default. When RB International requested that Cinque Terre turn over the Bunkers to it,

7

Cinque Terre informed RB International that it was unable to on the account of a purported global prejudgment attachment order issued in connection with a litigation pending in the United States District Court for the Southern District of New York styled *Centauro Liquid Opportunities Master Fund, L.P. v. Alessandro Bazzoni, et al.*, case no. 15-cv-9003 (LTS) (the "**Centauro Litigation**").

27.     The complaint in the Centauro Litigation asserts that in 2009, Cinque Terre and Centauro Opportunities Master Fund, L.P. ("**Centauro**") entered into a joint venture by which it financed oil transactions to be sourced and executed by Cinque Terre, the profits from which were to be shared 50-50 by each party to the joint venture.  The complaint further alleges that Centauro funded a total of 26 transactions between October 2010 and January 2012, but that by January 2014, Cinque Terre had defaulted on its obligation to provide Centauro with returns on completed transactions.

28.     The complaint also alleged that on or about May 21, 2015, Cinque Terre executed a promissory note in favor of Centauro in the amount of $21,092,213 plus interest for amounts due to Centauro, and agreed to make monthly payments of $500,000, but immediately thereafter defaulted when it failed to make the first payment when it came due.  The complaint alleges claims for breach of contract, fraud, fraudulent inducement, conversion and unjust enrichment against Cinque Terre and certain other companies that the plaintiff Centauro alleges are alter egos of Mr. Bazzoni.  A true and correct copy of the complaint in the Centauro Litigation is attached hereto as Exhibit 2.

29.     A single New York law firm has represented Cinque Terre, a Cinque Terre affiliate and Mr. Bazzoni in the Centauro Litigation since its inception.

8

30. On March 29, 2016, RB International filed a motion to intervene in the Centauro Litigation. In its April 4, 2016 response to RB International's motion, Centauro confirmed that its attachment did not apply to the Bunkers. According to RB International, when it confirmed to Cinque Terre that it had resolved the purported global attachment issue in regard to the Bunkers and sought the immediate turnover of them, Cinque Terre failed to provide RB International with any information concerning the current location and status of the Bunkers, or turn over the Bunkers or their proceeds.

### The BVI Liquidation Order and Subsequent Liquidator Activities

31. The hearing on the Pegasus and RB International applications took place before the BVI Court on April 11, 2016. The BVI Court directed that Cinque Terre be wound up by the BVI Court in accordance under the provisions of the 2003 Act and I was appointed as the Liquidator of the company.

32. Since the Liquidation Order was entered, all activity related to the BVI Liquidation has taken place in and from the BVI. Although the BVI Liquidation was only recently commenced, my staff and I have already done a significant amount of work on an expedited basis, all of which is being conducted in or from the BVI and ultimately subject to the supervision of the BVI Court.

33. Initially, I caused the requisite notices and filings concerning the commencement of the BVI Liquidation to be filed and published in the BVI.

34. On the day of my appointment and during the days thereafter, I undertook considerable efforts to contact Cinque Terre affiliates, banks associated with Cinque Terre and its affiliates, lawyers and counsel representing them, and third-parties associated with Cinque Terre. The efforts included contact and follow-up with:

9

a. **General Contact**: Cinque Terre Financial Group Limited, Company; Harneys Corporate Services Limited, Registered Agent; Bazzoni, CEO of Cinque Terre; Rothenberg; CFO of Cinque Terre; BVI Beacon, Publication; Virgin Islands Official Gazette, Publication; BVI Registrar of Corporate Affairs, Registrar;

b. **Banks**: ADM Investment Services; Bancredito; BNP Paribas Suisse; BNP Paribas US; BSI; Credit Suisse; Northern Trust; Royal Bank of Canada; Societe Generale;

c. **Cinque Terre subsidiaries and connected companies**: Cinque Terre Holdings, Inc., Subsidiary; CT Energia, Subsidiary; CT Energia SA, Subsidiary; CTEP II C, Subsidiary; CTPT Inc., Subsidiary; CTEP LLC, Subsidiary; Cinque Terre Bunkering, Subsidiary; Melones Oil Terminal, Connected Company; InterQuimica SA, Connected Company; Vopak, Connected Company;

d. **Potential Assets**: ICC Arbitration proceedings; Nordic Oil; and

e. **Lawyers**: Campbells; Baker McKenzie

35. Since my appointment, I have continued to investigate Cinque Terre's business activities, its assets and liabilities. These BVI-based efforts have resulted in inquiries and investigations of persons and entities in the BVI and around the world, including the United States, Switzerland, the Dominican Republic, Panama, and the UAE, to name the most substantial. The most significant efforts and initial findings resulting from these actions have necessitated seeking the chapter 15 recognition immediately, including the requested provisional relief. They are as follows:

f. **General Contact**:

10

    i. Cinque Terre Financial Group Limited, Company and Harneys Corporate Services Limited, Registered Agent: Provided corporate documents, including Registers and incorporation documents.

    ii. Bazzoni, CEO of Cinque Terre: Email exchanges with Mr. Bazzoni and I as to my authority and providing basic information. Mr. Bazzoni has not completed the Statement of Affairs I sent to him.

    iii. Rothenberg, CFO of Cinque Terre: Email exchanges with Mr. Rothenberg and I as to my authority and providing basic information. Mr. Rothenberg has not completed the Statement of Affairs I sent to him. In a letter dated April 15, 2016, Mr. Rothenberg stated that documents of Cinque Terre were in a customs warehouse in Caracas, Venezuela, including files, books of account, papers, registers, and other documents. Mr. Rothenberg did not disclose the date these items were sent to Venezuela, why they were sent to Venezuela (when Cinque Terre has no company or offices there), or by whose authority the documents were sent to Venezuela. A copy of Mr. Rothernberg's letter in this regard is attached as <u>Exhibit 3</u>. In respect of the Bunkers and Nordic Oil, Mr. Rothenberg further stated he was not aware of their location. Mr. Rothenberg further stated he was making further inquiries concerning the Bunkers with the contact information he had.

g. **Banks**: Emails, faxes, letters and phone calls continue to be made seeking updated information.

    iv. Northern Trust: By letter dated April 21, 2016, the Chicago, Illinois branch of the Bank responded to my Request and Order dated April 13, 2016, by stating the Liquidation Order is not enforceable against the bank due to a lack of jurisdiction and it will take "no further action."

  h. **Cinque Terre subsidiaries and connected companies**:

    v. CT Energia SA and InterQuimica SA: For the Dominican Republic companies, our agent has confirmed the searches are being obtained.

    vi. CTPT Inc. and Cinque Terre Bunkering: For the Panamanian companies, registry certificates have been obtained, and the agent completed the searches and sent the information to me for analysis.

    vii. Melones Oil Terminal and Vopak, Connected Company: Internet research has been undertaken and results are being reviewed and considered further.

  i. **Potential Assets**:

    viii. ICC Arbitration proceedings: Inquires with counsel for Cinque Terre in Switzerland confirms Cinque Terre is a party to an international arbitration where it is defending a claim of $30,000,000 and asserting a counterclaim of $48,000,000.

    ix. Nordic Oil: I have been unable to confirm the location or existence of the Bunkers. To the contrary, serious irregularities concerning the documentation as to the Bunker transaction points to the existence of a potential fraud.

36. In regard to recent travel activity of Cinque Terre principals, I understand that Mr. Bazzoni having formerly worked in Switzerland and New York has relocated to Venezuela.

37. Although Mr. Rothenberg appears to still be in the United States and has responded to my initial inquiries, he has not agreed to turn over documents or other information in his possession and recently stated he was "traveling," and has since suffered a recent bereavement so his responses may be delayed. Mr. Rothenberg has not stated that he is unable to access files of Cinque Terre electronically. He also is yet to provide all web-based and accessible emails of Cinque Terre. I am concerned that any documents or other information concerning Cinque Terre's business and operations that remain in Mr. Rothenberg's possession may be at risk of spoliation if not recovered in the very near term.

38. Some of Cinque Terre's books and records are in the BVI and I am in the process of collecting the remaining books and records and moving them to the BVI. As I said earlier, I have learned from Mr. Rothenberg the location of documents and records that are in a warehouse in Venezuela. An examination of him may result in learning his personal knowledge of Cinque Terre's dealings and how I can begin to assert control over the documents allegedly transferred from the United States to Venezuela so that they can be sent to the BVI for analysis. Moreover he continues to correspond in respect of Cinque Terre by computer and as a practical matter, it may be possible for him to obtain and access emails via web-based servers.

39. Former BVI counsel for Cinque Terre in the BVI Liquidation initiated by Pegasus has already sent me information concerning Cinque Terre bank statements, invoices, reports, and other documents in Cinque Terre.

40. Finally, I, along with my BVI-based staff, since my appointment nearly three weeks ago, have been communicating with Cinque Terre's creditors toward arriving at a

13

consensus for a liquidation strategy, including the RB International-led consortium of financial institutions that are funding my investigation and this application. All such communications have been conducted from the BVI.

41. All of the foregoing activities are being conducted and supervised by myself and my BVI-based staff from the BVI.

**42.** As my investigation continues, the operations of Cinque Terre and potential claims against third parties are expected to become clearer. Assets recovered will be brought to the BVI and deposited within Cinque Terre's BVI based bank account for that purpose. Books, records, emails and documentation recovered will similarly be brought to the BVI and I will oversee, manage and resolve (by litigation or negotiation) potential claims from the BVI, subject to oversight by the BVI Court.

### My Investigation Concerning the Bunkers and the Significant Indicia of Fraud

43. In addition to the fact that the books and records of Cinque Terre have been sent to Venezuela, investigation regarding the Bunkers has revealed troubling issues:

   a. The Bunkers were allegedly stored in the MT Ainos and MT Camoli. These were represented to be "barges" but the designation "MT" means "motor tanker" which is not consistent with it being a barge;

   b. We have not been able to trace the location of the alleged vessels or barges storing the Bunkers.

   c. The names MT Ainos and MT Camoli do not appear on any vessel registries, shipping databases, or web registries we have found;

    d. The vessel associated with the purported owner of the barges, General Shipping and Trading, Ghana, Ltd., was reportedly seized by German authorities recently regarding stolen oil allegations;

    e. The numbering on the bills of lading associated with the Bunkers indicate that these are transactions "1 & 2," which appears highly unlikely for any shipping or energy entity that has conducted business for any length of time;

    f. There are typographical errors in the "letterhead" of Nordic Oil & Gas, indicating that the letterhead may have been forged and is non-standard;

    g. The purported Nordic Oil and Gas website is defunct;

    h. The registrant of the Nordic Oil & Gas Website, Nicholas Laursen of Bosch 80A, Hunnenbur, Zug, Switzerland, maintains a LinkedIn profile that lists his employer as Apfoss Renewables;

    i. In the Nordic documents' letterhead, there are typographical errors regarding the company number and Nicholas Laursen's name is spelled incorrectly (highly unusual for letterhead, which is ordinarily standardized and pre-printed);

    j. The telephone contact for Nordic Oil & Gas (Dubai) is Danish and is associated with an insolvency practitioner and otherwise unconnected entity.

44. In view of all of the foregoing, and in conjunction with the movement of documents and persons associated with Cinque Terre to Venezuela, I am concerned that a serious fraud is in progress.

### Litigation against Cinque Terre in the United States

45. As noted above, Cinque Terre currently is a defendant in the Centauro Litigation, pending in the United States District Court for the Southern District of New York. The

15

Liquidator was informed by counsel for Cinque Terre and RB International that depositions concerning Cinque Terre assets in connection with the New York order of attachment are scheduled to take place next week, a judicial settlement conference was recently adjourned in light of the BVI Liquidation, and that the presiding judge has asked all counsel to investigate whether the Centauro Litigation will be stayed. However, it is unclear if absent provisional relief the depositions or other proceedings in the Centauro Litigation will proceed.

46. As noted above, BVI liquidation proceedings are collective proceedings designed to collect, assess and resolve all claims against the debtor entity for the benefit of all of its creditors and stakeholders. Cinque Terre's estate and its other creditors thus will be significantly prejudiced if I am forced to continue to expend scarce estate resources to defend the Centauro Litigation in New York. At the same time, I have not determined whether the Centauro Litigation ought to be defended, or their claim simply admitted. There is an attachment order applicable to Cinque Terre's assets currently in effect and seizure of any Cinque Terre assets by a single unsecured creditor would prejudice the estate. At the same time, I seek emergency relief so that _complete_ examinations of Mr. Bazzoni and Mr. Rothenberg can be undertaken concerning the assets, affairs, rights, obligations or liabilities of Cinque Terre.

47. For this reason, I seek to stay the Centauro Litigation insofar as it asserts claims against Cinque Terre, so that all claims against Cinque Terre can be resolved as part of the collective proceeding that is the BVI Liquidation rather than on a piecemeal basis. At the same time, I will continue my investigation of Cinque Terre, its business, and it management.

48. I am currently not aware of any other litigation pending against Cinque Terre in the United States.

49. There is no foreign or domestic insolvency proceeding other than the BVI Liquidation and there are no other parties or entities known to me that are authorized to administer foreign proceedings with respect to Cinque Terre.

## **RELIEF REQUESTED**

50. By the petition, as the Liquidator, I seek the following relief:

    a. The recognition of the BVI Liquidation as a foreign main proceeding, or in the alternative, a foreign non-main proceeding, pursuant to chapter 15 of the Bankruptcy Code, and recognition of my role as the Liquidator as Cinque Terre's foreign representative under sections 1509 and 1517 of the Bankruptcy Code; and

    b. Relief pursuant to sections 1507, 1520 and 1521(a) of the Bankruptcy Code, including but not limited to the right to conduct examinations of relevant witnesses and entities pursuant to 11 U.S.C. 1521(a)(4) and Rule 2004 of the Federal Rules of Bankruptcy Procedure.

51. It seems clear that Cinque Terre's counterparties were aware that it is a BVI company. For example, the agreements between Cinque Terre and Pegasus, RB International and Centauro each refer to and acknowledge that Cinque Terre is a company formed under BVI law. So too, both Pegasus and three of the four secured creditors, led by RB International, turned to the BVI Court as the proper place to file their applications to wind up Cinque Terre when it became apparent that Cinque Terre was not paying its debts as they came due and when they realized that Cinque Terre's management may have made misrepresentations about the company's assets. Likewise, Centauro served the attachment order entered in the Centauro Litigation on Cinque Terre's registered office in the BVI.

52. As set forth above, discovery as to the nature of Cinque Terre's business and its transactions is critical to the efforts of my staff and I to collect and administer Cinque Terre's assets, investigate and assess potential claims, and obtain a recovery for all of Cinque Terre's creditors. Such information is located in the United States in the hands of Mr. Rothenberg and

other individuals and entities, including Cinque Terre's former counsel and other witnesses to be determined. Based on filings reflected on the electronic docket for the Centauro Litigation, it is highly likely that relevant information concerning Cinque Terre's property and financial affairs is in the possession of attorneys who formerly acted as U.S. legal counsel for Cinque Terre in this District.

53. Accordingly, I respectfully request, pursuant to 11 U.S.C. § 1521(a)(4) and Rule 2004 of the Federal Rules of Bankruptcy Procedure, that the Court authorize and permit the commencing of discovery in the United States against Mr. Bazzoni, Mr. Rothenberg, Cinque Terre's former counsel, and the various counterparties, financial institutions, accountants and others with information concerning Cinque Terre. Obtaining this information will substantially assist me in realizing any assets of Cinque Terre and determining whether Cinque Terre should commence actions against third parties and potentially hinder or stop any ongoing fraud.

54. For the reasons discussed above, the BVI is the center of main interest ("**COMI**") for Cinque Terre as I understand it to be defined and interpreted under the Bankruptcy Code.

55. Cinque Terre is formed under the laws of the BVI and maintains its registered office there. Its shares, some of its books and records, and intangible assets are also located in the BVI.

56. I expect that Cinque Terre's most valuable assets may prove to be claims that I will manage from the BVI. We are in contact with counsel for Cinque Terre located in Switzerland who acts in a pending arbitration where Cinque Terre has a $48,000,000 claim and he is taking instructions from me. In my view, the situs of Cinque Terre's intangible property - the majority of its ongoing business - is in the BVI.

18

57. In sum, I am engaging and will engage in substantial post-liquidation activity from offices in the BVI including: (i) displacing and assuming the duties of the board of directors and voting necessary company shares; (ii) assessing the merits of Cinque Terre's and its creditors' potential claims, and gathering information on Cinque Terre's past operations; (iii) investigating Cinque Terre's business; (iv) establishing bank accounts; and (v) engaging in discussions with creditors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated:        April __, 2016

_____
**STUART MACKELLAR**
*Liquidator of Cinque Terre Financial Group Limited*

F:\WDOX\CLIENTS\10250\1001\00254225.DOCX

#40875858_v1