NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 15 |
| CINQUE TERRE FINANCIAL GROUP LIMITED, | Case No. 16-11086 |
| Debtor in a Foreign Proceeding. |  |

MEMORANDUM DECISION ON MOTION TO VACATE, IN PART,
APRIL 29, 2016 ORDER AND TO QUASH THE MAY 2, 2016 SUBPOENA

APPEARANCES:

KELLNER, HERLIHY, GETTY & FRIEDMAN, LLP
470 Park Avenue South
7th Floor North
New York, NY 10016
By:   Eugene Getty, Esq.

ASTIGARRAGA, DAVIS MULLINS & GROSSMAN, PA
1001 Brickell Bay Drive
9th Floor
Miami, FL 33131
By:   Gregory Grossman, Esq.

HARRIS, ST. LAURENT & CHAUDHRY LLP
40 Wall Street, 53rd Floor
New York, NY 10005
By:   Andrew St. Laurent, Esq.

HOLLAND & KNIGHT LLP
Warren E. Gluck, Esq.
Christopher R. Nolan, Esq.
31 West 52nd Street
New York, New York 10019
By:   Warren E. Gluck, Esq.
      Christopher R. Nolan, Esq.

JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE

  Before the Court is the Motion of Richard Rothenberg ("Rothenberg") to Vacate, in Part, This Court's April 29, 2016 Order (the "April Order"), and to Quash the May 2, 2016 Subpoena (the "Subpoena") Issued Thereunder [ECF No. 35] (the "Motion"), in the chapter 15 case (pending recognition) of Cinque Terre Financial Group Limited ("Cinque Terre" or the "Debtor"). By his Motion, Rothenberg seeks to partially vacate this Court's April Order granting certain provisional relief as to Rothenberg, and quash the Subpoena commanding, *inter alia*, the production of various documents and information, on the ground that the mere fact of producing any such documents violates his Fifth Amendment right against self-incrimination. The Liquidator opposes the Motion, contending that Rothenberg, as a custodian of Cinque Terre's books and records, cannot invoke the privilege, and in any case, does not meet the standards required by the privilege.

  Because the Court concludes that Rothenberg was the Debtor's Chief Financial Officer ("CFO") at the time the April Order and Subpoena were issued, and that the Subpoena was issued to Rothenberg in his capacity as a representative of Cinque Terre, such that Rothenberg was a "custodian," within the meaning of the term used in *Braswell v. United States*, 487 U.S. 99 (1988), Rothenberg is not entitled to assert the "act of production" privilege under the Fifth Amendment with respect to the production of Cinque Terre's corporate documents. Accordingly, pursuant to Rule 45 of the Federal Rules of Civil Procedure, made applicable herein by Rule 9016 of the Federal Rules of Bankruptcy Procedure, the Court modifies and limits the scope of the Subpoena to require the production of Cinque Terre's corporate records in Rothenberg's possession, custody or control. In addition, the Court modifies paragraph 2 of the

April Order (discussed below) to direct Rothenberg to immediately provide counsel to the Liquidator with the computer files and/or network stored files of Cinque Terre in his possession, custody or control, and paragraphs 3 and 4 of that order (discussed below) to direct Rothenberg to turnover only the corporate files, documents and emails of Cinque Terre in his possession, custody or control.

Thus, the Motion is granted in part, and denied in part, and the Subpoena and April Order are modified as set forth herein.

### Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§157(a) and 1334(a), and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a "core proceeding" under 28 U.S.C. § 157(b)(2).

### Background[1]

Cinque Terre is a limited liability company formed under the laws of the British Virgin Islands. Prior to the commencement of the BVI Liquidation (defined below), Cinque Terre was purportedly engaged in the business of international energy transactions. The sole shareholder and director of Cinque Terre is an Italian national named Alexander Bazzoni ("Bazzoni"), who had been conducting business from Switzerland, but may have recently relocated to Venezuela.

On November 15, 2015, Pegasus Oil Trading Limited, a creditor of Cinque Terre, applied to the Eastern Caribbean Supreme Court High Court of Justice, Virgin Islands Commercial Division, in the British Virgin Island (the "BVI Court") for an order under the BVI Insolvency Act of 2003 ("2003 Act") placing Cinque Terre in liquidation and appointing a liquidator (the

---

[1]    Except as otherwise noted, the underlying facts are not in dispute.

"BVI Liquidation"). RB International Finance (USA) LLC ("RB International"), another creditor of Cinque Terre, subsequently sought to intervene, and was substituted as the petitioning creditor. On April 11, 2016, the BVI Court heard and granted the application. On the same day, the BVI Liquidation order was entered and Stuart MacKellar (the "Liquidator") was appointed as the Liquidator of the Debtor.

On April 27, 2016 (the "Petition Date"), the Liquidator, acting on behalf of Cinque Terre, filed a voluntary petition under chapter 15 of the Bankruptcy Code in this Court for recognition of the BVI Liquidation as a foreign main or non-main proceeding. The Debtor also filed an Application for Ex Parte Relief For Temporary Restraining Order and for an Order Granting Provisional Relief Under Bankruptcy Code Section 1519 [ECF No. 6] (the "Provisional Relief Motion"), supported by the Declaration of Stuart Mackellar [ECF No. 3] (the "MacKellar Declaration") and Declaration of Andrew Thorp [ECF No. 4] (the "Thorp Declaration"). The Provisional Relief Motion sought, on an *ex-parte* basis, the entry of an order:

a. enjoining all persons and entities subject to the jurisdiction of this Court from destroying, secreting, altering, deleting or otherwise disposing of any documents, records, emails, filings, or other information, however stored, concerning or relating to the assets, affairs, rights, obligations or liabilities of Cinque Terre, and directing them to provide access to such documents, records, emails, or information via the applicable electronic means;

b. enjoining all persons and entities subject to the jurisdiction of this Court from moving or otherwise disposing of Cinque Terre's assets or records outside the jurisdiction of this Court, including without limitation, to Venezuela;

c. staying the pending action by Centauro Liquid Opportunities Master Fund, L.P. against Cinque Terre entitled Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni, 1:15-cv-09003-LTS-SN (S.D.N.Y.) (the "District Court Action");

d. authorizing the Liquidator or technicians acting on his behalf to conduct expedited discovery, including an inspection of the computer(s) and email accounts utilized in relation to Cinque Terre used by Cinque Terre's Chief Financial Officer, Richard Rothenberg, and directing Mr. Rothenberg to provide the necessary access to the same;

    e.    authorizing the Liquidator or technicians acting on his behalf to download and image the contents of Richard Rothenberg's computer hard drive, including to access and download any network-stored files to which Richard Rothenberg's computer or Richard Rothenberg have access, including but not limited to emails;

    f.    directing Richard Rothenberg to furnish any logon-information and passwords necessary for the Liquidator or technicians acting on his behalf to access Richard Rothenberg's computer files and/or the network-stored files to which Richard Rothenberg's computer or Richard Rothenberg have access;

    g.    directing Richard Rothenberg to appear for examination before the Court or alternatively authorizing the Liquidator to issue a subpoena for a Fed. R. Bankr. Proc. 2004 examination duces tecum concerning the records, assets, affairs, rights, obligations or liabilities of Cinque Terre and shortening the number of days to produce responsive documents to seven (7) days from the date of service on Mr. Rothenberg;

    h.    upon written request served by the Liquidator, directing the turnover of any and all documents, records, filings, or other information, however stored, accessible by persons in the United States, regarding the assets, affairs, rights, obligations or liabilities of Cinque Terre from any person or entity subject to this Court's jurisdiction, including but not limited to Cinque Terre's former officers, directors, employees, representatives, legal advisors, shareholders, members, subsidiaries, counterparties, financial institutions, investment advisors and accountants;

    i.    waiving the security provisions of Federal Rules of Civil Procedure 65(c); and

    j.    granting such other relief as may be just and proper.

As support for his request for provisional relief, the Liquidator advised that based upon his investigation of Cinque Terre's affairs since his appointment, he believed that there were "significant indicia of fraud" surrounding Cinque Terre's business, and that Cinque Terre would suffer irreparable harm if the ex-parte relief were not granted because Bazzoni "may cause the transfer of Cinque Terre's remaining records and assets to Venezuela or some other destination outside the jurisdiction of this Court before the Court has the opportunity to rule on the Petition." *See* Provisional Relief Motion ¶¶ 10, 11. Further, with respect to Rothenberg, the Liquidator was "concerned that any documents or other information concerning Cinque Terre's business

and operations that remain in Mr. Rothenberg's possession may be at risk of spoliation if not recovered in the very near term." *Id.* ¶ 14.

On the same day, this Court held an *ex-parte* hearing on the Provisional Relief Motion, granted, in part, the Liquidator's request for a temporary restraining order, and set a hearing for May 10, 2016 ("First Provisional Relief Hearing") to consider the additional relief sought in the Provisional Relief Motion, upon notice to parties. *See* April Order [ECF No. 9]. Pursuant to the April Order:

1. Richard Rothenberg, the chief financial officer of Cinque Terre, was temporarily enjoined from destroying, secreting, altering, deleting or otherwise disposing of any documents, records, emails, filings, or other information, however stored, concerning or relating to the assets, affairs, rights, obligations or liabilities of Cinque Terre;

2. Mr. Rothenberg was directed to immediately provide counsel to the Liquidator access to and copies of, as well as furnish any logon-information and passwords necessary for the Liquidator or technicians acting on his behalf to access, the computer files and/or the network-stored documents of Cinque Terre;

3. Mr. Rothenberg was directed to immediately turnover and/or provide copies of all files and documents stored on his personal computer that concern Cinque Terre;

4. Mr. Rothenberg was directed to immediately turnover and/or provide copies of any all emails concerning Cinque Terre, whether those emails are stored on his computer, on a server for Cinque Terre, or on any cloud or web-based email service including but not limited to yahoo.com; and

5. The Liquidator was authorized to issue a subpoena (the "Subpoena") for a Fed.R.Bankr. Proc. 2004 oral examination and production of documents concerning the records, assets, affairs, rights, obligations or liabilities of Cinque Terre and shortening the number of days to appear for the examination and produce the documents to seven (7) days from the date of service on Mr. Rothenberg.

Pursuant to the April Order, the Liquidator issued the Subpoena, dated May 2, 2016, on "Richard Rothenberg," commanding his appearance for a Rule 2004 Examination, and the production of the following documents:[2]

1. All documents in your possession, custody or control that concern, relate to, or pertain to Cinque Terre during the Relevant Time Period.[3]

2. All email communications by your or to you that concern, relate to, or pertain to Cinque Terre during the Relevant Time Period.

3. Documents sufficient to identify any logon-information and passwords necessary to access any files or documents of Cinque Terre including but not limited to all computer files or network-stored documents of Cinque Terre.

4. Documents sufficient to identify the location of any documents over which Cinque Terre has possession, custody, or control.

5. Documents sufficient to identify the name and location of all persons employed by Cinque Terre during the Relevant Time Period.

6. Documents sufficient to identify the name and location of all lawyers, accountants, financial managers, auditors, consultants, and agents of Cinque Terre during the Relevant Time Period.

On May 10, 2016, Rothenberg, by his counsel, filed the Motion, seeking to quash the Subpoena and vacating most of the provisional relief (*see* #2 - #4 above) granted in the April Order. As discussed in further detail below, Rothenberg argues that "compliance with the [April] Order and the Subpoena would require [him] to incriminate himself," in violation of his rights against self-incrimination under the Fifth Amendment. *See* Motion at 1.

On the same day, at the First Provisional Relief Hearing, the Court continued the temporary relief under the April Order to the date of the hearing on the Debtor's petition for recognition of the foreign proceeding, granted certain additional provisional relief (including the

---

[2] The Subpoena is attached to the Declaration of Andrew St. Laurent [ECF. No. 37].

[3] Relevant Time Period is defined in the Subpoena as January 1, 2010 to the present.

-6-

stay of the District Court Action as to the Debtor), but carved out the specific relief as to Rothenberg.[4]  The Court then set a hearing date of May 20, 2016 (the "Motion to Quash Hearing") to consider the Motion and the remaining relief sought in the Provisional Relief Motion with respect to Rothenberg.  *See* Order (A) Granting, In Part, Provisional Relief Under Section 1519 of the Bankruptcy Code, (B) Setting Briefing Schedule on Non-Party's Motion to Vacate Order and to Quash Subpoena, and (C) Scheduling Further Hearing on Request for Provisional Relief and Non-Party's Motion [ECF No. 47] (the "Provisional Relief Order").

On May 17, 2016, the Liquidator filed its Opposition to the Motion to Vacate and Quash [ECF No. 46] (the "Liquidator's Opposition").  Rothenberg then filed its Reply in Further Support of His Motion to Vacate and Quash on May 18, 2016 [ECF No. 49] (the "Rothenberg Reply").  The Motion to Quash Hearing was held on May 20, 2016.

### Discussion

*Legal Standards*

The Fifth Amendment of the U.S. Constitution states:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.  This constitutional right against self-incrimination ensures that one cannot be compelled to be a witness against oneself, which has been construed as protecting individuals from compelled testimony.  *See, e.g.*, *Couch v. United States*, 409 U.S. 322, 328 (1973) ("Compulsion upon the person asserting it is an important element of the privilege, and

---

[4]   At that hearing, Rothenberg's counsel agreed that Rothenberg would continue to abide by the temporary injunction against the disposal of Cinque Terre's documents and assets.

-7-

prohibition of compelling a man … to be witness against himself is a 'prohibition of the use of physical or moral compulsion to extort communications from him.'") (quoting *Holt v. United States*, 218 U.S. 245, 252-53 (1910)); *see also In re Grand Jury Subpoenas Deuces Tecum Dated June 13, 1983 and June 22, 1983*, 722 F.2d 981 (2d Cir. 1983) ("The rationale [of the Fifth Amendment privilege] has been that a person's papers represent his personal communications and that without such protection he could be subjected to coercion designed to extract the evidence from him in the same manner as if he were forced to testify against himself."). As the language of the Fifth Amendment makes plain, such right is personal to the individual, and may not be raised by a corporate entity. *See Couch*, 409 U.S. at 328 ("It is important to reiterate that the Fifth Amendment privilege is a personal privilege; it adheres basically to the person…."); *Curcio v. United States*, 354 U.S. 118, 125 (1957) ("It is settled that a corporation is not protected by the constitutional privilege against self-incrimination.").

The protection against testimonial self-incrimination has been extended to the context of responding to subpoenas and summonses by the "act of production" doctrine, the contours of which were principally established in three leading Supreme Court cases: *Fisher v. United States*, 425 U.S. 391 (1976), *United States v. Doe*, 465 U.S. 605 (1984), and *Balt. City Dep't of Social Servs. v. Bouknight*, 493 U.S. 549 (1990). The act of production doctrine is based upon the principle that:

> The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the [respondent]. It would also indicate the [respondent's] belief that the papers are those described in the subpoena.

*Fisher*, 425 U.S. at 410 (citing *Curcio,* 354 U.S. at 125). *See also Doe*, 465 U.S. at 613 ("[B]y producing documents in compliance with a subpoena, the witness would admit that the papers

-8-

existed, were in his possession or control, and were authentic.").

In the Second Circuit, the cases generally hold that this "act of production" privilege applies in two situations: (1) if the existence and location of the subpoenaed papers are unknown to the government, then the [respondent's] compelled production of those documents 'tacitly concedes the existence of the papers demanded and their possession or control by the [respondent]' and (2) where the [respondent's] production of documents may 'implicitly authenticate' the documents and in so doing provide a link in the chain of incrimination." *United States v. Fox*, 721 F.2d 32, 36 (2d Cir. 1983); *In re Grand Jury Subpoena Deuces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993) ("1992 Subpoena") (same); *In re Grand Jury Subpoena Dated July 6, 2005*, 256 Fed. App'x. 379, 381 (2d Cir. 2007) (same); *accord In re DG Acquisition Corp.*, 208 B.R. 323 (Bankr. S.D.N.Y. 1997) ("The rule in the Second Circuit to determine whether individuals may invoke the "Act of Production" doctrine uses a two part test. First, the court must determine whether the production of documents would be testimonial. Second, the subpoenaed party must demonstrate that the summoned documents are incriminating.") (internal citation omitted).

Stated another way, "it is now settled that an individual may claim an act of production privilege to decline to produce documents, the contents of which are not privileged, where the act of production is, itself, (1) compelled, (2) testimonial, and (3) incriminating." *In re Three Grand Jury Subpoenas Duces Tecum Dated Jan. 29, 1999*, 191 F.3d 173, 178 (2d Cir. 1999) (citing *Doe*, 465 U.S. at 612-14); *see also United States v. Gendreau*, No. 12-Misc-303, 2014 WL 464754, at *2 (S.D.N.Y. Jan. 22, 2014) (same); *SEC v. Forster*, No. 15-MC-246, 2015 WL 7960386, at *3 (S.D.N.Y. Dec. 5, 2015) (same).

The caselaw is also settled that there are exceptions to the act of production privilege

where (1) the existence and location of the subpoenaed papers are known, such that the production is not testimonial[5] — *see, e.g.*, *In re Grand Jury Subpoena Duces Tecum Dated Nov. 13, 1984*, 616 F. Supp. 1159, 1161 (E.D.N.Y. 1984) ("1984 Subpoena") ("If the government can demonstrate with *reasonable particularity* that it knows of the existence and location of subpoenaed documents, no privilege to refuse production on the first ground exists.") (citing *Fox*, 721 F.2d at 37) (emphasis added); and (2) where the documents subpoenaed may be authenticated by other means—*see id.* ("Conversely, when the government can authenticate the documents without relying on any act by petitioner, then production by petitioner does not implicate the Fifth Amendment."); *see also In re Hyde*, 235 B.R. 539, 546 (S.D.N.Y. 1999) ("[I]n those cases that did not hold production privileged, there were means of authenticating the documents other than directly through the production sought.").

*The Parties' Arguments*

In the Motion, Rothenberg asserts that compliance with the April Order and the Subpoena violates his "act of production" privilege because all three elements required under this privilege—compulsion, testimony and incrimination—are triggered by the required production. Specifically, Rothenberg contends that, first, as to compulsion, "it is self-evident that the [April] Order and Subpoena are compulsory." Motion at 6.[7] Second, as to the production being

---

[5]  This is also referred to as the "foregone conclusion" exception. *See, e.g.*, *1992 Subpoena*, 1 F.3d at 93 ("Since Doe produced a copy of the calendar to the SEC and testified about his possession and use of it, its existence and location are 'foregone conclusion[s],' and his production of the original 'adds little or nothing to the sum total of the Government's information.'") (citing *Fisher*, 425 U.S. at 411); *accord In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011*, 670 F.3d 1335 (11th Cir. 2012) ("2011 Subpoena") ("[U]nder the 'foregone conclusion' doctrine, an act of production is not testimonial—even if the act conveys a fact regarding the existence or location, possession, or authenticity of the subpoenaed materials—if the Government can show with 'reasonable particularity' that, at the time it sought to compel the act of production, it already knew of the materials, thereby making any testimonial aspect a 'foregone conclusion.'").

[7]  At the Motion to Quash Hearing, counsel for the Liquidator conceded that this first prong of compulsion has been met because compliance with the April Order and Subpoena is necessarily compulsory.

-10-

testimonial, Rothenberg argues that the Subpoena is so broad, he is effectively compelled to provide testimonial information in the form of responsive documents—for example, the April Order requires him to provide "all files and documents stored on his personal computer that concern Cinque Terre," and the Subpoena requires production of "[a]ll emails communications by you or to you that that concern, relate to, or pertain to Cinque Terre during the Relevant Time Period," such that Rothenberg is required to "demonstrate the existence of, his possession of, and the authenticity of using the 'contents of his own mind.'" *Id.* (citing *United States v. Hubbell*, 530 U.S. 27 (2000)[8]) Third, "the potentially incriminatory aspect of such a production is made evident by the Liquidator's own statements that his investigation 'revealed significant concerns of fraud.'" Rothenberg also argues that "[b]oth the [April] Order and the Subpoena are directed at [him] personally." *Id.*

The Liquidator counters that Rothenberg was not subpoenaed in his personal capacity; rather, the April Order was directed to Rothenberg "in his capacity as CFO of Cinque Terre." Further, he contends that Rothenberg "as the Chief Financial Officer of Cinque Terre, is a custodian of Cinque Terre's records," and as such, is not entitled to invoke the Fifth Amendment privilege because of the "collective entity" rule. *See* Liquidator's Opposition at 4.

The Liquidator also asserts that the act of production doctrine does not apply because Rothenberg has not established the testimonial and incriminatory elements. According to the Liquidator, Rothenberg's act of producing is not testimonial because the Liquidator is "already aware of the existence and possession of the computer, bank accounts, the email accounts, and

---

[8] *See also 2011 Subpoena*, 670 F.3d at 1345 ("[T]he Fifth Amendment privilege is not triggered where the Government merely compels some physical act, i.e., where the individual is not called upon to make sure of the contents of his mind.") (citing *Hubbell*); *In re Welsh*, No. 13-02457, 2013 Bankr. LEXIS 4716, at *15 (Bankr. E.D.N.C. Nov. 7, 2013) ("In determining whether the act of production itself compelled testimonial communications, the Court has looked to whether the respondent was required to use 'the contents of his own mind' in order to comply with the request.").

-11-

certain files that were requested." Liquidator Opposition at 9. Additionally, he says that Rothenberg has not met his burden of proving that the act of producing the documents requested would be incriminating. Liquidator's Opposition at 10.

In reply, Rothenberg asserts that neither the April Order nor the Subpoena designated Rothenberg as the Debtor's CFO, indicating that the production was directed at Rothenberg in a personal capacity. Moreover, Rothenberg claims that he had been "separated" from Cinque Terre by the Liquidator since at least since April 27, 2016. Rothenberg Reply at 4.

Rothenberg also dismisses the Liquidator's foregone conclusion exception—of "already [being] aware" of the existence of the information sought as having "no evidentiary support" and bearing no relationship to the broad requests in the April Order and Subpoena. In addition, he contends that under the analysis in *In re Hyde*, 235 B.R. at 544, "the assertion that a given production would be incriminating should be credited by the Court," and no further showing on the incrimination prong need be made. Rothenberg Reply at 9.

*Analysis*

The Court begins its analysis by considering the capacity in which Rothenberg was subpoenaed and directed under the April Order to produce the documents and information because, as a threshold matter, if Rothenberg was a custodian of the books and records of the Cinque Terre, the Supreme Court has long held that a custodian in a representative capacity of a corporate entity cannot resist a subpoena for the production of such corporate documents on Fifth Amendment grounds. *See Braswell v. United States*, 487 U.S. 99 (1988); *accord Armstrong v. Guccione*, 470 F3d 89 (2d Cir. 2006).

In *Braswell*, the petitioner was served with a grand jury subpoena issued to "Randy Braswell, President Worldwide Machinery Sales, Inc. [and] Worldwide Purchasing, Inc." that

-12-

required him to produce the books and records of the two named corporations. 487 U.S. at 100. In addressing the issue before it of "whether the custodian of corporate records may resist a subpoena for such records on the ground that the act of production would incriminate him in violation of the Fifth Amendment," the Supreme Court undertook an extensive analysis of the applicable jurisprudential precedents, beginning with the "collective entity" rule established under *Doe*, 465 U.S. at 613. The *Braswell* Court noted that:

> [W]e have long recognized that, for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals. This doctrine – known as the collective entity rule – has a lengthy and distinguished pedigree.

487 U.S. at 104. The Court then continued to discuss the line of cases following *Doe* that have expanded this principle to apply to corporate officers acting in a custodian capacity from asserting a personal Fifth Amendment privilege, concluding:

> The plain mandate of these decisions is that without regard to whether the subpoena is addressed to the corporation, or as here, to the individual in his capacity as a custodian… a corporate custodian such as petitioner may not resist a subpoena for corporate records on Fifth Amendment grounds.

*Id.* at 109 (citing *Dreier v. United States*, 221 U.S. 394 (1911); *Bellis v. United States*, 471 U.S. 85 (1974)). *See also Hale v. Henkel*, 201 U.S. 43 (1906); *Wilson v. United States*, 221 U.S. 361 (1911); *Curcio*, 354 U.S. at 122 ("The foregoing cases stand for the principle that the books and records of corporations cannot be insulated from reasonable demands of governmental authorities by a claim of personal privilege on the part of their custodian.").

The holding in *Braswell* was recently reinforced by the Second Circuit in *Armstrong*, 470 F.3d 89, and *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155 (2d Cir. 2010) (per curiam) ("2009 Subpoena"). In *Armstrong*, the Second Circuit addressed the issue of "whether Armstrong's Fifth Amendment right against compelled self-incrimination protects him from being compelled by court order to produce corporate records and assets, which he holds as a

-13-

custodian for the corporation." 593 F.3d at 93. There, Armstrong, a former corporate officer, had refused to comply with a turnover order that directed "Armstrong and the Corporate Defendants … turn over to the court-appointed receiver all corporate books, records, and 'assets of the Corporate Defendants [that the defendants had] in their current possession, custody or control." Initially noting that "*Braswell* controls here," and that the case was a "routine application of *Braswell*," the Second Circuit went on to address Armstrong's contention that the Supreme Court's decision in *United States v. Hubbell*, 530 U.S. 27 (2000)[9] undermined the holding in *Braswell*. The Second Circuit then concluded that the Court remained "bound by the Supreme Court's holding in *Braswell*." *Id.* at 98.

Similarly, in *2009 Subpoena*, the Second Circuit again affirmed the holding in *Braswell*, this time in the context of a sole-propriertorship. 593 F.3d at 156-57. The Court noted, that:

> Under the long established "collective entity rule," however, corporations cannot avail themselves of the Fifth Amendment privilege. A corollary of this rule is that the custodian of corporate records, who acts as a representative of the corporation, cannot refuse to produce corporate records on Fifth Amendment grounds. This is true (1) whether the subpoena is directed to the corporation itself or to the custodian in his representative capacity, and (2) "regardless of how small the corporation may be."

*Id.* at 157-58.

Applying these cases here, the parties do not dispute that the act of production privilege is unavailing to a custodian who responds to a subpoena in a representative capacity for the production of corporate documents. The crux of the parties' dispute is whether Rothenberg is such a custodian. To that end, Rothenberg asserts that the Subpoena and April Order were

---

[9]  The issue in *Hubbell* was whether the government had made "derivative use" of the testimonial aspect of the respondent's production in obtaining the respondent's indictment and preparing for trial even though the government did not intend to use the act of production at trial. 530 U.S. at 41-44. Except as part of a string cite, the *Hubbell* Court did not otherwise mention *Braswell*. In *Armstrong*, the Second Circuit noted *Hubbell's* impact on *Braswell* in that "Hubbell recognized that the compelled production of documents can be testimonial to the extent that such production communicates a statement of fact…." The Second Circuit then found that "*Braswell* is not wholly inconsistent with *Hubbell*." 470 F.3d at 98.

-14-

addressed to him personally, not as CFO or custodian of Cinque Terre. *See* Rothenberg Reply at 2. Rothenberg further claims that he is not the CFO of Cinque Terre and "has not been since at least April 27, 2016." *See* Rothenberg Reply at 4. In support of this contention, Rothenberg cites to a reference to himself as the former CFO of Cinque Terre, and other references to former officers and directors of Cinque Terre, by the Liquidator in the MacKellar Declaration. *Id.* at 4-5. The Liquidator disputes this position, arguing that Rothenberg himself has acknowledged his position as Cinque Terre's CFO in an email exchange with the Liquidator. *See* Liquidator's Opposition at 5 (citing to MacKellar Declaration, ECF No. 3-3 at 3). The Liquidator also argues that no such "magic words" are necessary to denote Rothenberg's representative capacity as custodian. *See* Motion to Quash Hearing Tr.

In the first instance, it matters not whether the Liquidator addressed the subpoena to Rothenberg in his capacity of a corporate officer or custodian of the Debtor's records, or individually. *See In re Teknek, LLC*, No. 05 B 27545, 2006 WL 2136046, at *4 (Bankr. N.D. Ill. June 30, 2006). ("[A]s long as a subpoena is addressed to a specific person who would have sufficient control and power to physically produce specified documents in the event that such person desired to do so, the person must comply with the subpoena; there is no capacity defense to a subpoena that requires the party serving it to speculate as to which hat the compelled person mush garnish in order to conjure up the ability and power to produced certain documents and information.") The distinction is important here due to Rothenberg's argument that his status as custodian impacts his ability to assert a Fifth Amendment privilege in seeking to quash the subpoena. "[T]he party invoking a privilege [under Fed. R. Civ. P. 45(d)(3)(A)(iii)] bears the burden of establishing its applicability to the case at hand." *La Suisse, Societe D'Assuarances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014) (quoting *In re Grand Jury*

*Subpoenas Dated Mar. 19, 2002 & August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003)); *see also HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013) ("[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted."). As a result, the burden is on Rothenberg to establish that he is not a custodian because such distinction is part of his assertion of the privilege in challenging the production.

The Court finds, based on the evidentiary record before it, that Rothenberg has failed to carry his burden in demonstrating that he was not the Debtor's CFO at the time that the April Order and Subpoena were issued.[10] First, as noted by the Liquidator, Rothenberg's own email, dated April 15, 2016, stated: "I am the Chief Financial Officer of the Company." *See* Rothenberg Email dated 4/15/16 [attached as Exhibit 3 to MacKellar Declaration] (the "Rothenberg April Email").

Second, the parties do not dispute, and as also evidenced by the Rothenberg April Email, that under the 2003 Act, commencement of the BVI Liquidation did not displace or otherwise separate Rothenberg from his position as the Debtor's CFO. To the contrary, Section 175(1)(b) of the 2003 Act, provides that upon the commencement of a liquidation proceeding, "the directors and other officers of the company remain in office, but they cease to have any powers, functions or duties other than those required or permitted under [the Act]." *See* Thorp Declaration ¶ 11. *See also* Rothenberg April Email ("I understand that I remain in office at the Company though I cannot exercise my powers otherwise than in accordance with the BVI Insolvency Act, 2003.")

Third, Rothenberg did not submit any documentary evidence, such as a notice of

---

[10]    *See Armstrong*, 470 F.3d at 98-99 (noting that respondent's status as custodian should be evaluated as of the time that the turnover order was issued).

termination or letter of resignation, showing that he had ceased to be Cinque Terre's CFO as of April 27, 2016. Indeed, when asked by the Court at the Motion to Quash Hearing as to the details of Rothenberg's purported separation from the Debtor, counsel for Rothenberg could not provide any.

Fourth, the only documentary evidence that is in the record as to Rothenberg's status is Rothenberg's resignation email dated May 19, 2016. *See* Rothenberg Email, dated May 19, 2016 [Liquidator's Exhibit 1] (the "Rothenberg Resignation Email"). Notwithstanding Rothenberg's bald statement therein, that "[he has] not been Chief Financial Officer or Director of Cinque Terre Financial Group, Limited, since at least April 27, 2016," the Rothenberg Resignation Email actually cuts in favor of the Liquidator; not only is the timing of such email self-serving (exchanged just one day before the Motion to Quash Hearing, and after Rothenberg had been served with the April Order and the Subpoena), but would be wholly unnecessary if Rothenberg had, in fact, already been separated from Cinque Terre as of April 27, 2016.

Lastly, although there were several references by the Liquidator to "former employees of Cinque Terre" in the MacKellar Declaration, such statements were not specific to Rothenberg, except for one. But that is contradicted by the Liquidator's statements elsewhere in the MacKellar Declaration referring to Rothenberg as the existing CFO (*see* MacKellar Declaration ¶¶ 17, 34(a), 35(f)), as well as in the April Order directed to Rothenberg, "as Cinque Terre's Chief Financial Officer." April Order at (ordered) ¶ 1.

As Cinque Terre's CFO, Rothenberg acts in a custodian capacity in respect of the corporate documents in his possession, custody or control. Accordingly, the Court further finds

-17-

that the act of production privilege does not apply here.[11]

*Modification of the Subpoena and April Order*

The holdings in *Braswell* and its progeny establish that a custodian may not resist a subpoena for *corporate documents* on Fifth Amendment grounds. 487 U.S. at 119 (emphasis added). Here, the April Order and Subpoena require the production of documents and information beyond the corporate books and records of Cinque Terre.[12] Thus, to the extent that the Liquidator seeks additional information outside of the corporate documents held by Rothenberg as custodian, the production demand must be modified accordingly.

Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure states that:

On a timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i)    fails to allow a reasonable time to comply;
    (ii)    requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii)    requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv)    subjects a person undue burden.

Fed. R. Civ. P. 5(d)(3)(A). Thus, under Rule 45, courts generally have broad discretion to modify subpoenas to fashion appropriate remedies and address parties' concerns. *Cf. Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984) (stating that courts should consider in their discretion "the possibility of modifying the subpoena rather than quashing" it); *Flanagan v. Wyndham Int'l. Inc.*, 231 F.R.D. 98, 102 (D. D.C. 2005) ("A court should be loathe to quash a subpoena if other protection of less absolute character is possible").

---

[11] Because the Court concludes that the act of production privilege is inapplicable, the Court does not need to reach the question of whether the three prongs under the privilege—namely, compulsion, testimony, and incrimination—has been established by Rothenberg.

[12] This point is also conceded to by the Liquidator, stating "Rothenberg cannot seek Fifth Amendment protection from these requests, *at least with respect to Cinque Terre's records*." (emphasis added). Liquidator's Opposition at 6.

Accordingly, the Subpoena is modified to limit Rothenberg's production, as to each category of documents requested, to the corporate books and records and other information of Cinque Terre that Rothenberg possesses in a representative capacity. In addition, paragraphs 2, 3 and 4 of the April Order are modified to reflect that the order is directing Rothenberg's actions as custodian of Cinque Terre's records, as follows:

2. Mr. Rothenberg is directed to immediately turnover and/or provide copies of all computer files and/or network-stored documents of Cinque Terre in his possession, custody or control;

3. Mr. Rothenberg is directed to immediately turnover and/or provide copies of all Cinque Terre's corporate files and documents stored on his personal computer; and

4. Mr. Rothenberg is directed to immediately turnover and/or provide copies of all emails, whether such stored on a server for Cinque Terre, or on any cloud or web-based email service, including but not limited to yahoo.com, that he sent or received in his capacity as Cinque Terre's Chief Financial Officer or Director.

All other provisions of the April Order remain intact.

## Conclusion

Based upon the foregoing, the Motion to Quash is granted in part and denied in part. The Liquidator is to settle an order consistent with this Memorandum Decision.

Dated: New York, New York
       May 24, 2016

/s/ *James L. Garrity, Jr.*
_____
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge

-19-