UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
http://www.nysb.uscourts.gov/

In re:

CINQUE TERRE FINANCIAL
GROUP LIMITED,

      Debtor in a Foreign Proceeding.

_____/

Case No:   16-11086 (JLG)
Chapter 15

## MOTION FOR SANCTIONS PURSUANT TO 11 U.S.C. §362(k)(1) AND 1520(a)(1)

Stuart Mackellar, not individually but solely in his capacity as the duly appointed liquidator ("**Liquidator**") of Cinque Terre Financial Group Limited ("**Debtor**"), a company undergoing liquidation before the Eastern Caribbean Supreme Court High Court of Justice, Virgin Islands Commercial Division, in the British Virgin Islands (the "**BVI Court**"), claim number BVIHC (COM) 139 of 2015 (the "**BVI Liquidation**"), pursuant to Section 162 of the British Virgin Islands Insolvency Act of 2003 (the "2003 Act"), under 11 U.S.C. §362(k)(1) and 1520(a)(1) and Fed. R. Bankr. P. 9014 and L.R. 9014-1, respectfully moves this Court for sanctions against Elemento, Ltd. ("Elemento"), Alessandro Bazzoni ("Bazzoni"), Richard Rothenberg ("Rothenberg") and Ruben Alejandro Goldstein ("Goldstein") (collectively, "Elemento Parties") for violations of the automatic stay, and states as follows:

1.    On April 11, 2016 the BVI Court directed that Debtor be wound up by the BVI Court in accordance with the provisions of the British Virgin Islands Insolvency Act of 2003.

2.    On May 16, 2016, this Court ordered certain *ex parte* temporary relief and scheduled a further hearing regarding provisional relief under section 1519 of the Bankruptcy Code.  See D.E. 47.  The Court found and ordered:

    D. There is a substantial likelihood of success on the merits that the Liquidator will be able to demonstrate that the BVI Liquidation is a foreign main or non-main proceeding entitled to recognition under 11 U.S.C. § 1517(b)(1)-(2), that the Liquidator is the duly appointed foreign representative of Cinque Terre pursuant to 11 U.S.C. §§ 101(24) and 1509, and the Liquidator, in his capacity as foreign representative of Cinque Terre, is entitled to protections afforded by sections 1520 and 1521 of the Bankruptcy Code.

    \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    1. All persons and entities subject to the jurisdiction of this Court, are enjoined from destroying, secreting, altering, deleting or otherwise disposing of any documents, records, emails, filings, or other information, however stored, concerning or relating to the assets, affairs, rights, obligations or liabilities of Cinque Terre and such persons and entities, and such persons and entities are directed to provide access to such documents, records, emails, or information via the applicable electronic means to the Liquidator;

    2. All persons and entities subject to the jurisdiction of this Court are enjoined from moving or otherwise disposing of Cinque Terre's assets or records in the United States outside the jurisdiction of this Court, including without limitation, to Venezuela except for production to the Liquidator;

See D.E. 47 at 4-5.

3.    On June 21, 2016, this Court granted recognition of the BVI Liquidation. See D.E. 104.

4.    That order states, in pertinent part, as follows:

    11. ORDERED that all persons and entities subject to the jurisdiction of this Court are enjoined from moving or otherwise disposing of Cinque Terre's assets or records within the territorial jurisdiction of the United States outside the jurisdiction of this Court except for production to the Liquidator;

See D.E. 104.

5.    By this Motion, Liquidator seeks sanctions under section 362(k)(1) against the Elemento Parties.

2

**SK, Bazzoni, Rothenberg Goldstein, Elemento. and the Debtor**

6. Bazzoni, Rothenberg and Goldstein are or were the management team of the Debtor. They also appear to be the management team of Elemento.[1]

7. After the commencement of the BVI liquidation, Bazzoni, Rothenberg and Goldstein continued the operations of Debtor, by information and belief, using resources of Debtor through other foreign corporate entities which they controlled, including but not limited to CT Energia Ltd. (later renamed as Elemento) formed in another jurisdiction, Malta.

8. Upon information and belief, Bazzoni, Rothenberg and Goldstein created two other "Cinque Terre" entities, CT Energia Holding Ltd. and CT Energia Oil and Gas Ltd, both also formed in Malta, to continue to carry on business and to avoid paying creditors of Debtor.

9. On January 13, 2016, Rothenberg resigned as director of these entities and Francisco D'Agostino was appointed as a director. On August 18, 2016, Bazzoni and Francisco D'Agostino resigned as directors and Rothenberg was reappointed as a director (along with Carlos Galindez Arias).

10. Bazzoni, Rothenberg and Goldstein later changed the name of CT Energia Ltd. to Elemento by filing documents in Malta on June 21, 2016.

11. Documents in the Malta corporate registry confirm that on December 9, 2015,

---

[1] On October 8, 2014, Richard Rothenberg (using the email address (rr@ctenergia.com – again, the "CT Energia" company later renamed "Elemento, Ltd.") wrote to Chemoil as follows:

> We are aware of the outstanding invoice we have to you. We had asked for the invoice to be sent, but it never came. We understand that there was an switchover in your financing department that caused the delay of the invoice. However, our LC and financing has expired, and we need to arrange new financing which we are doing currently. I will revert with the expected timing on that, but we expect it will be finalized by the middle of next week.
>
> Thanks,
> Richard Rothenberg
> Chief Financial Officer
> CT Energia, Ltd.

3

"CT Energia Holding Ltd" (another Maltese company) purported to transfer 1165 Ordinary shares in Elemento to "CT Energia Oil & Gas Ltd."

12.     Documents in the Malta corporate registry confirm that on February 4, 2016, Bazzoni, as sole owner of CT Energia Oil & Gas Ltd, transferred 1000 Ordinary shares of the company to Francisco D'Agostino.

**Unauthorized Purchase of Naphtha Fuel from Petroperu using Debtor's License Rights**

13.     Debtor holds a license to purchase certain oil products from Petroperu, the state-owned oil production company of Peru ("License"). The License is required to purchase oil from Petroperu and thus, is a valuable asset of the Debtor.

14.     On or about February 10, 2017, Debtor/Elemento made a purchase of 220,000 bbls of Naphtha from Petroperu, the state oil company of Peru, at a price that is US$2/bbl above the market price, using the License ("Purchase"). A copy of the Petroperu confirmation of this purchase is **Exhibit A** hereto, naming Goldstein as the contact for Debtor.

15.     Debtor/Elemento has a contract with SK to, in turn, sell the Naphtha fuel that is the subject of the Purchase to SK. SK received the Naphtha fuel that is the subject of the Purchase, but as explained below has interpleaded the purchase price in the garnishment proceeding.

16.     In negotiating the transaction with Petroperu, Debtor/Elemento and by information and belief, Goldstein and/or Jesus Pereyra Arizola ("Arizola"), General Manager of Cinque Terre-Peru, misrepresented that Bazzoni was then the Chief Executive Officer of Debtor and authorized to negotiate the contract, despite that Debtor was in liquidation and no such authority was given by the Liquidator.

17.     In conjunction with the Purchase, a bill of lading ("Bill of Lading") was issued.

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

18. Debtor/Elemento, and by information and belief, Goldstein and/or Arizola, requested that the Bill of Lading for the transaction be issued in the name of Elemento, which Goldstein and/or Arizola represented to Petroperu to be the financial arm of Debtor Arizola wrote to Petroperu on or about February 10, 2017 as follows:

> 1.- On Friday, the CEO of Cinque Terre, Mr. Alessandro Bazzoni, will send the formal acceptance of the last tender of Virgin Naphtha won by Cinque Terre, to your direction. Please confirm your receipt of the same. Thank you.
>
> 2.- Also, for any formal communication between both parties, the new fax number of the company is the following: +44 207 691 7889.
>
> 3.- And lastly and to communicate by instructions of the CEO Sr. Alessandro Bazzoni that the foreign counterpart, outside myself and Mr. Joaquin Garcia, who will be in charge of coordinating and necessary details of the operations of the Virgin Naphtha with you or any persons within PetroPeru, in this case will be Mrs. Dolly Mendoza (Direct Phone: 00-58-416-8250694). She will also have your cell number to communicate directly with you. I await your further comments.
>
> Best regards,
> Atte
>
> Jesus Pereyra Arizola
> Cinque Terre
> Representante en Lima Peru
> Cel (51) 947-169893

19. Debtor/Elemento, by information and belief, sent Petroperu original documentary instructions for the Bill of Lading to be made out to Debtor's name. Later, Debtor/Elemento requested Petroperu to issue the Bill of Lading to Elemento, however, Petroperu refused. This was because the sale of the Naphtha fuel could only be made by Petroperu to the holder of the License, namely, Debtor. Both Bazzoni and Joaquin Garcia corresponded with Petroperu as being affiliated with "CTE Ltd."

20. Despite this, the Bill of Lading was stamped to reflect that the Debtor had endorsed the Bill of Lading to Elemento.

21. Elemento made a contract with SK to sell the Naphtha fuel that is the subject of the Purchase for a price of over $12 million USD.

22. The Naphtha fuel that is the subject of the Purchase is aboard a vessel chartered by SK. Upon information and belief, the Naphtha fuel is being carried under the Bill of Lading issued to Debtor, the holder of the License and recipient of the February 17, 2017 Petroperu award for that purchase, but which Bill of Lading was purportedly endorsed to Elemento.

### Chemoil Garnishment Action

23. Based upon the facts above, on March 14, 2017, Chemoil filed a garnishment action against SK in the United States District Court for the Southern District of Texas, Houston Division, case no.: 4:17-cv-00813 ("Texas Court"), seeking funds SK held that were believed to be owed related to the Naphtha fuel which is the subject of the Purchase ("Chemoil Garnishment Action").

24. SK as garnishee in the Chemoil Garnishment Action filed a motion to interplead the funds it currently holds that are payable to Debtor/Elemento.

25. This District Court granted the motion. See Order Granting SK Energy Americas, Inc.'s Motion for Leave to Deposit Funds into the Registry of the Court, attached hereto as **Exhibit B**.

26. The Liquidator and Chemoil discussed the Chemoil Garnishment Action prior to its filing and Debtor is in agreement with Chemoil's view of the merits of the same.

27. Chemoil has agreed that should it prevail in the Chemoil Garnishment Action, the Funds would be returned to the Liquidator to be disbursed to Debtor's creditors, minus

6

Chemoil's costs and reasonable attorneys' fees expended in litigating the Chemoil Garnishment Action.

28. Thus, Chemoil is acting in the interests of the Liquidator and the creditors by litigating the Chemoil Garnishment Action.

29. However, Elemento is actively contesting the Chemoil Garnishment Action.

**Sanctions in the form of Compensatory and Punitive Damages Are Warranted Against the Elemento Parties for Their Willful Violation of the Automatic Stay**

30. 11 U.S.C. §1520(a)(1) states, in pertinent part, as follows:

> (a) Upon recognition of a foreign proceeding that is a foreign main proceeding—
> (1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;

31. 11 U.S.C. §362(a) states, in pertinent part, as follows:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

32. The License was and is a property right of Debtor and so was, at all times material, property of the Debtor. The Elemento Parties' use of the License to obtain a contract to purchase the Naphtha fuel from Petroperu was a violation of the automatic stay. Alternatively, and in addition, the Elemento Parties caused the Debtor to obtain the Naphtha fuel, and then, by endorsing the Bill of Lading to Elemento, caused the Debtor to transfer the Naphtha fuel (without consideration) to Elemento. Elemento is also actively contesting the Chemoil Garnishment Proceeding and so continuing to attempt to assert rights over what appears to be

Debtor's property, despite that Elemento is aware that the Liquidator agrees with Chemoil's position.

33. Courts have held that a "willful violation" of the automatic stay occurs when a creditor acts intentionally with knowledge of the automatic stay or knowledge of the bankruptcy in general. See In re B. Cohen & Sons Caterers, Inc., 108 B.R. 482, 485 (E.D. Pa. 1989) (holding that a lessor willfully violated the automatic stay where, having obtained relief from the stay in order to regain possession of the premises, it proceeded to dispose of the debtor's property in satisfaction of its claim for rent arrearage); In re AP Industries, Inc., 117 B.R. 789, 803 (Bankr. S.D.N.Y 1990) (sanctions for violating the automatic stay were warranted where, despite having actual knowledge of the Chapter 11 and having been cautioned by debtor's counsel to refrain, creditors commenced state court actions alleging fraudulent transfers of the debtor's assets); In re Covelli, 550 B.R. 256, 270 (Bankr. S.D.N.Y. 2016) (creditor willfully violated the automatic stay when it continued to prosecute a state-court action for a deficiency judgment despite the existence of a discharge injunction given its awareness of the bankruptcy petition evidence by its dischargeability action).

34. The intent of the violator is not a consideration for determining whether a creditor violated the automatic stay. See In re Ampal-Am. Israel Corp., 502 B.R. 361, 373 (Bankr. S.D.N.Y. 2013) ("'Willful' in this context means 'any deliberate act taken in violation of the stay, which the violator knows to be in existence." A 'specific intent to violate the stay is not required; instead, general intent in taking actions which have the effect of violating the automatic stay is sufficient to warrant damages.'") (internal citations omitted).

35. Instead, it is enough that the violator knows of the bankruptcy filing when it engages in deliberate conduct that is a violation of the stay. See In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1105 (2d Cir. 1990).

36. Punitive damages are appropriate as a sanction when the stay violation is oppressive, outrageous, intentional, fraudulent, reckless, with malice, in bad faith and/or egregious. See, e.g., In re B. Cohen & Sons Caterers, Inc., 108 B.R. 482, 485 (E.D. Pa. 1989) (holding that a lessor's conduct was not only willful, but also oppressive and outrageous when it disposed of the debtor's property in satisfaction of its claim for rent arrearage after obtaining stay relief only to regain possession of the premises); In re Covelli, 550 B.R. 256, 270 (Bankr. S.D.N.Y. 2016) (punitive damages for stay violation were appropriate where the creditor deliberately pursued the same in knowing violation of a bankruptcy court's multiple orders on the subject, and while attempting to mislead the state court that its actions were permissible); In re Jean-Francois, 532 B.R. 458 (Bankr. E.D.N.Y. 2015) (creditor's conduct in evicting a Chapter 13 debtor from his home well after it learned of the petition and while the stay was in effect, along with the actions of its agents in physically assaulting the debtor's wife for allegedly screaming at the agents and refusing to get up from a chair that the agents were trying to move, were sufficient to support punitive damages to debtor); In re Haemmerle, 529 B.R. 17, 31 (Bankr. E.D.N.Y. 2015) (punitive damages were appropriate against the creditor for a willful violation of a discharge injunction where the creditor's conduct in making 137 phone calls to the debtor and sending two letters regarding the debt exhibited a clear disregard for the bankruptcy process and the sanctity of debtor's discharge).

37. Here, the Elemento Parties' conduct merits the award of both compensatory as well as punitive damages.

9

38. Each of the Elemento Parties was aware of BVI Liquidation as well as this Chapter 15 Proceeding. Notwithstanding, the Elemento Parties, formed other entities, and used the License (which is property of the Debtor) to obtain contracts to sell petroleum products, including the Naphtha fuel. Alternatively, the Elemento Parties caused the Debtor to obtain the Naphtha fuel, and then, by virtue of the endorsement of the Bill of Lading to Elemento, caused the Debtor to transfer the Naphtha fuel to Elemento. Elemento is also continuing to contest the Chemoil Garnishment Proceeding despite that the Liquidator stated that it agrees with Chemoil's position.

39. Compensatory damages are therefore warranted, including, but not limited to, the Liquidator's attorneys' fees and costs involved in prosecuting the stay violations by the Elemento Parties.

40. In addition, the conduct of the Elemento Parties was also outrageous, fraudulent, egregious and in bad faith.

41. The Elemento Parties devised a scheme to secrete millions of dollars from the Debtor. This scheme involved forming an offshore entity (Elemento), (which may be so closely-related to Debtor that it is an alter-ego or successor to the Debtor) for the purpose of using the License (which is property of the Debtor) to obtain favorable contracts to sell petroleum products such as the Naphtha fuel.

42. The Elemento Parties misrepresented to third parties the identity and nature of Elemento, fraudulently obtained an endorsement on the Bill of Lading in favor of Elemento, and also changed Elemento's name to attempt to conceal the scheme.

43. This conduct rises to the level of conduct required to support punitive damages as described by the case law discussed, above.

WHEREFORE, the Liquidator respectfully requests this Court award compensatory damages, including, but not limited to attorneys' fees and costs, along with punitive damages, all against the Elemento Parties. The Liquidator requests any other relief this Court deems appropriate.

        ASTIGARRAGA DAVIS
        MULLINS & GROSSMAN P.A.

        By:   */s/ Gregory S. Grossman*
              Gregory S. Grossman, Esq.

Admitted *Pro Hac Vice*
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Tel: (305) 372-8282
Fax: (305) 372-8202
E-Mail: ggrossman@astidavis.com

Local Counsel:
Eugene F. Getty, Esq.
KELLNER HERLIHY GETTY
& FRIEDMAN, LLP
470 Park Avenue South, 7th Floor
New York, New York 10016-6819
Tel. No. (212) 889-2121
E-Mail: efg@khgflaw.com

Attorneys for the Foreign Representative

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was filed and sent via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case and via regular US mail to all participants who are not on the list to receive e-mail notice/service for this case as set forth below. In addition, a true and correct copy of the foregoing was sent via First Class Mail postage prepaid to the following:

Ruben A. Goldstein, a/k/a Alessandro Goldstein
3431 N. Park Road
Hollywood, FL 33021

Richard Rothenberg
258 Country Club Rd., Palm Beach, FL 33480 and
500 East Broward Blvd., Suite 2400, Fort Lauderdale, FL 33394

Elemento Ltd.
c/o Richard Rothenberg
258 Country Club Rd., Palm Beach, FL 33480
500 East Broward Blvd., Suite 2400, Fort Lauderdale, FL 33394

Alessandro Bazzoni
Address to be determined[1]

F:\WDOX\CLIENTS\50130\1001\00261284.DOC

---

[1] The Liquidator is still attempting to locate an address for service on Bazzoni and reserves the right to seek leave from the Court to effectuate service by alternative means to those specified in Fed. R. Bankr. P., if necessary.

12

*EXHIBIT "A"*

Petróleos del Perú - PETROPERÚ S.A.   



SSVI-0445-2017
FEBRUARY 10TH, 2017

**CINQUE TERRE FINANCIAL GROUP LTD.**
**ATTN.: ALEX GOLDSTEIN**

REF:   PETROPERU TENDER INVITATION SSVI-0364-2017/TENDER-009-2017 DATED FEBRUARY 06TH, 2017; AND YOUR OFFER DATED FEBRUARY 09TH, 2017.

WE ARE PLEASED TO INFORM CINQUE TERRE FINANCIAL GROUP LTD. THAT PETROPERU HAS AWARDED CINQUE TERRE FINANCIAL GROUP LTD. THE FOLLOWING FOB SALE:

1. **PRODUCT AND QUANTITY:** ONE CARGO OF 220,000 BBLS +/- 10% (AT PETROPERU'S OPTION) OF VIRGIN NAPHTHA TO BE DELIVERED FOB TALARA (INCOTERMS 2000).

2. BUYER: CINQUE TERRE FINANCIAL GROUP LTD.

3. **LOADPORT & LAYCAN:** TALARA, PERU DURING MARCH 08TH/12TH, 2017. A THREE DAY LAYCAN WILL BE NARROWED BY CINQUE TERRE FINANCIAL GROUP LTD. BY MARCH 02ND, 2017.

   **IMPORTANT NOTE:**
   THIS PRODUCT MUST BE EXPORTED FROM PERU. IT IS NOT PERMITTED TO DELIVER THIS CARGO TO ANY PERUVIAN PORT.

   THE DELAY IN THE ARRIVAL OF THE VESSEL IN REGARD TO CONTRACTUAL LAYCAN, EXCEPT IN CASE OF FORCE MAJEURE, AS PER ITEM 20 OF PETROPERU'S TENDER TERMS AND CONDITIONS FOR FOB EXPORTS AND CFR/FOB IMPORTS OF CRUDE OIL AND PETROLEUM PRODUCTS, IS IMPUTABLE TO THE BUYER, PETROPERU S.A WILL CHARGE THE AMOUNT OF US$ 1,200 PER HOUR OR FRACTION. SUCH CALCULATION SHALL START FROM 00:00 HOURS OF THE DAY FOLLOWING THE LAST DATE OF THE CONTRACTUAL LAYCAN. ADDITIONALLY, BUYER WILL RECOGNIZE PETROPERU S.A ALL THE OPERATIVE COSTS INCURRED FOR SUCH DELAY AND PETROPERU S.A RESERVES THE RIGHT TO EXECUTE THE INDEMNITY CLAUSE OF THE AWARD.

4. **PRICE:**

   THE FOB TALARA (INCOTERMS 2000) PRICE TO BE DETERMINED UPON THE AVERAGE OF THE MEAN POSTINGS AS PUBLISHED BY PLATT'S OILGRAM U.S. MARKETSCAN FOR + UNL. 87 (CURRENT RVP) (DATA CODE: PGACU00) + UNDER + GULF COAST WATERBORNE + AND EFFECTIVE ON B/L DATE OF THE CARGO, THE QUOTATION PUBLISHED IMMEDIATELY BEFORE THE B/L DATE AND THE QUOTATION PUBLISHED IMMEDIATELY AFTER THE B/L DATE, CONVERTED TO US DOLLARS PER BARREL, MINUS A DISCOUNT OF **11.20 US DOLLARS PER BARREL** (ELEVEN POINT TWENTY US DOLLARS PER BARREL).

   IN THE EVENT THE BILL OF LADING DATE FALL ON A DAY WHEN PLATT'S DOES NOT PUBLISH, THEN FOR PRICING PURPOSES ONLY THE PRICE WILL BE CALCULATED UTILIZING THE TWO EFFECTIVE PUBLISHED PRICE QUOTES IMMEDIATELY PRIOR TO THE BILL OF LADING DATE AND ONE EFFECTIVE PUBLISHED PRICE QUOTE IMMEDIATELY FOLLOWING THE BILL OF LADING DATE. THREE SEPARATE EFFECTIVE PUBLISHED PRICE QUOTES SHALL ALWAYS BE USED.

5. **PAYMENT TERMS:**

   PAYMENT IN ADVANCE AT LEAST TWO (02) DAYS BEFORE START LOADING OPERATION, BASED ON MAX. CONTRACTUAL VOLUME (240 MB).

   NOTE: ADJUST PAYMENT WILL BE DONE NO MORE EIGHT (08) WORKING DAYS AFTER BILL OF LADING DATE.

" ISO 9001:2008, AT THE FOREFRONT IN CUSTOMER SATISFACTION AND INDUSTRY STANDARDS"
Av. Enrique CanavalMoreyra N° 150,Lima 27 - Perú
Telfs.: (511) 630-4000 / 614-5000
Portal empresarial:www.petroperu.com.pe
Sociedad inscrita en la Partida N°11014754 del Registro de Personas Jurídicas



SSVI-0445-2017

6. **DOCUMENTATION REQUIREMENTS:**

   AS PER ITEM 15 OF PETROPERU'S TENDER TERMS AND CONDITIONS FOR FOB EXPORTS AND CFR/FOB IMPORTS OF CRUDE OIL AND PETROLEUM PRODUCTS.

7. **QUALITY VIRGIN NAPHTHA :**

| QUALITY | MIN. | MAX. | PROM. | ASTM METHOD |
|---|---|---|---|---|
| SPECIFIC GRAVITY AT 60 FD | 0,699 | 0,751 | 0,721 | D-1298 |
| RVP AT 100 FD, PSI | -- | 10,0 | 9,1 | D-323 / D-5191 |
| COPPER STRIP CORROSION | -- | 1 | 1a | D-130 |
| SULPHUR, WT. PCT. | -- | 0,015 | 0,003 | D-4294 / D-2622 |
| LEAD, PPB | -- | 40 | 15.0 | IP-224 / D-3116 |
| SAYBOLT COLOR | +20 | -- | +29 | D-156 / D-6045 |
| HYDROC. TYPE, VOL PCT |  |  |  |  |
| OLEFINS | -- | 1,0 | 1,0 | D-6730 |
| N+A | 41,0 | -- | 42,7 | D-6730 |
| DISTILLATION, CD |  |  |  | D-86 |
| IBP | 33 | -- | 38,0 |  |
| 10 PCT | 60 | -- | 67,0 |  |
| 50 PCT | -- | 120 | 100,0 |  |
| 90 PCT | -- | 160 | 125,0 |  |
| FBP | -- | 170 | 142,0 |  |
| Vol. RECOVERED | 96,0 | -- | 97,5 |  |
| Vol. RESIDUE | -- | 2,0 | 1,4 |  |

*AVERAGE QUALITY FROM JANUARY SINCE DECEMBER 2016

**IMPORTANT NOTE:**
THE QUALITY OF THE PRODUCT MUST BE DETERMINATED BY A REPRESENTATIVE COMPOSITE SHORE TANK.

8. **INSPECTION**

   AS PER ITEM 8 OF PETROPERU'S TENDER TERMS AND CONDITIONS FOR FOB EXPORTS AND CFR/FOB IMPORTS OF CRUDE OIL AND PETROLEUM PRODUCTS.

9. **PORT RESTRICTIONS:**

| PORT | DRAFT (FEET) | LOA (FEET) | MAXIMUM DISPLACEMENT |
|---|---|---|---|
| TALARA (LIQUID CARGO DOCK) | 35.00 | 631.00 | 45,000 MT(*) |

(*) ENTRY OR EXIT OF THE PIER

10. **VESSEL NOMINATION AND DISCHARGE/LOADING PROCEDURES:**

    CINQUE TERRE FINANCIAL GROUP LTD. MUST COMPLY WITH ITEM 12.1 (FOB SALE) OF PETROPERU'S TENDER TERMS AND CONDITIONS FOR FOB EXPORTS AND CFR/FOB IMPORTS OF CRUDE OIL AND PETROLEUM PRODUCTS.

    THE VESSEL MUST COMPLY WITH THE INTERNATIONAL SHIP AND PORT FACILITY SECURITY (ISPS) CODE, EFFECTIVE JULY 01ST, 2004.

11. **DEMURRAGE**

    AS PER ITEM 12.5 OF PETROPERU'S TENDER TERMS AND CONDITIONS FOR FOB EXPORTS AND CFR/FOB IMPORTS OF CRUDE OIL AND PETROLEUM PRODUCTS.

    DEMURRAGE AND POST DEAL EXPENSE CLAIMS

2

SSVI-0445-2017

PLEASE CONTACT PETROPERU'S DEMURRAGE TEAM WITH SUBJECT LINE TO READ: TYPE OF CLAIM E.G. PETROPERU DEMURRAGE, DEVIATION CLAIM. VESSEL NAME/ B/L DATE/ LOADPORT AND/OR DISPORT.

| Contacts | Email |
|---|---|
| Arturo Muñoz Rodriguez | amunoz@petroperu.com.pe |
| Yusko Toscano Ludena | ytoscano@petroperu.com.pe |

12. **FORCE MAJEURE**

AS PER ITEM 20 OF PETROPERU'S TENDER TERMS AND CONDITIONS FOR FOB EXPORTS AND CFR/FOB IMPORTS OF CRUDE OIL AND PETROLEUM PRODUCTS.

13. **OTHER TERMS AND CONDITIONS:**

AS PER PETROPERU TENDER TERMS (REVISION OF JULY 2000)

14. **IMPORTANT NOTES:**

   A. - ANY INFORMATION GIVEN BY CINQUE TERRE FINANCIAL GROUP LTD. AFTER THE AWARD THAT MODIFIES THE CONDITIONS OF THE INVITATION AND/OR OUR AWARD WILL BE CONSIDERED A MATERIAL UNFULFILLMENT OF THE CONTRACT. UNDER THIS SITUATION, PETROPERU RESERVES THE RIGHT TO CANCEL THE CONTRACT AND REQUIRE AN INDEMNITY FROM CINQUE TERRE FINANCIAL GROUP LTD. FOR ANY AND ALL COSTS, DAMAGES OR EXPENSES INCURRED BY PETROPERU AS A RESULT OF CINQUE TERRE FINANCIAL GROUP LTD.'S FAILURE TO FULFIL ITS CONTRACTUAL OBLIGATIONS. ADDITIONALLY, PETROPERU RESERVES THE RIGHT TO SUSPEND OR EXCLUDE FROM OUR TENDER LIST.
   B. - PETROPERU REQUIRES THAT CINQUE TERRE FINANCIAL GROUP LTD. PERFORMS ITS CONTRACTUAL OBLIGATIONS IN A PROFESSIONAL AND RESPONSIBLE WAY; OTHERWISE PETROPERU RESERVES THE RIGHT TO SUSPEND CINQUE TERRE FINANCIAL GROUP LTD. AND REQUIRE AN INDEMNITY FROM CINQUE TERRE FINANCIAL GROUP LTD. FOR ANY AND ALL COSTS, DAMAGES OR EXPENSES INCURRED BY PETROPERU AS A RESULT OF CINQUE TERRE FINANCIAL GROUP LTD.'S FAILURE TO FULFIL ITS CONTRACTUAL OBLIGATIONS.
   C. - THE FAILURE OF THE WINNER TO COMPLY WITH THE THREE DAY LAYCAN, AS PER ITEM 3, WILL BE CONSIDERED A MATERIAL UNFULFILLMENT OF THE CONTRACT. UNDER THIS SITUATION PETROPERU MAY APPLY ITEM 14 OF THIS AWARD.

15. THE CONTRACT WILL BE INTEGRATED BY OUR INVITATION SSVI-0364-2017/TENDER-009-2017 DATED FEBRUARY 06TH, 2017, YOUR OFFER DATED FEBRUARY 09TH 2017, THIS AWARD, AND PETROPERU'S TENDER TERMS AND CONDITIONS FOR FOB EXPORTS AND CFR/FOB IMPORTS OF CRUDE OIL AND PETROLEUM PRODUCTS. IT WILL NOT BE ACCEPTED ANY OTHER DOCUMENT OR AGREEMENT.

16. AFTER THE AWARD AND DURING THE ACTIVITIES BEFORE, DURING OR AFTER THE LOADING IF YOU HAVE ANY COMPLAINT PLEASE WRITE TO THE FOLLOWING ADDRESS: AMUNOZ@PETROPERU.COM.PE SO WE CAN ASSIST YOU.

PLEASE ACKNOWLEDGE THE RECEIPT OF THIS AWARD BY E-MAIL
BEST REGARDS,

AUGUSTO NUÑEZ ZELA – MANAGER
INTERNATIONAL TRADE
PETRÓLEOS DEL PERÚ–PETROPERU S.A.

3

*EXHIBIT "B"*

United States District Court
Southern District of Texas
**ENTERED**
April 04, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHEMOIL LATIN AMERICA, INC. | § | |
| | § | |
| VS | § | C.A. NO. 4:17-cv-00813 |
| | § | |
| Plaintiff | § | |
| | § | |
| CINQUE TERRE FINANCIAL GROUP, LTD., ALEJANDRO GOLDSTEIN (A/K/A GOLDSTEIN) AND ALESSANDRO BAZZONI | § | |
| | § | |
| Defendants, and | § | |
| | § | |
| SK ENERGY AMERICAS, INC. | § | |
| | § | |
| Garnishee | § | |

### ORDER GRANTING SK ENERGY AMERICAS, INC.'S MOTION FOR LEAVE TO DEPOSIT FUNDS INTO THE REGISTRY OF THE COURT

BE IT REMEMBERED that on this day came on for consideration SK Energy America, Inc.'s ("SKEA") Motion for Leave to Deposit Funds into the Registry of the Court (the "Motion"). The Court, having considered the Motion, is of the opinion that it is meritorious and should be granted. It is, therefore,

ORDERED that SKEA's Bill of Interpleader is hereby granted; it is further

ORDERED that SKEA is to deposit funds in the amount of $12,720,271.78 into the registry of the Court (the "Interpled Funds") through an interest bearing account; it is further

ORDERED that SKEA shall withhold from the Interpled Funds the amount of $30,000 as its costs and attorneys' fees; it is further

8

ORDERED that SKEA shall withhold from the Interpled Funds the amount of $61,486.11 as demurrage fees; it is further

ORDERED that SKEA is discharged from this lawsuit; it is further

ORDERED that upon the granting of this Motion, SKEA is found to have complied with the Writ for Maritime Attachment and Garnishment in the amount of $3,948,502.41 plus an additional 50%, which includes the accrual of post-judgment on said amount; it is further

ORDERED that the Garnishor Chemoil Latin America, Inc., Claimant Elemento, Ltd, Defendants Cinque Terre Financial Group Ltd. ("CTFG"), Ruben Alejandro Goldstein, Alessandro Bazzoni and Claimant Stuart Mackellar, the duly appointed liquidated of CTFG, are all enjoined from taking any further action against SKEA.

Signed this __4th__ day of __April__, 2017.

_____
JUDGE PRESIDING

9