IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
http://www.nysb.uscourts.gov/

In re:

CINQUE TERRE FINANCIAL
GROUP LIMITED,

Case No: 16-11086 (JLG)
Chapter 15

Debtor in a Foreign Proceeding.

_____/

**OBJECTION OF CREDITOR CHEMOIL LATIN AMERICA
TO LIQUIDATOR'S MOTION FOR
<u>APPROVAL OF COMPROMISE</u>**

Creditor Chemoil Latin America ("Chemoil") objects to the Liquidator's motion and to the proposed compromise. This Court now should reject it and deny the motion. "Elemento" (which is debtor/BVI corporation Cinque Terre Financial Group's – CTFG's – alter ego) and its CFO (who also was CTFG's CFO), Richard Rothenberg, still fails to provide the discovery (and facts) that this Court ordered over a year ago. The proposed compromise is unfavorable to the Estate and its creditors. No facts – at least presented to the Court (the Foreign Representative presents no facts at all) – support it.

As detailed herein, the Liquidator (Foreign Representative) proposes to return to "Elemento" – an entity operated or controlled by the same people who looted the Cinque Terre Financial Group Limited ("CTFG") estate ("Estate") - $12,176,311.19 of $12,613,811.19 funds ("Estate Funds") which Chemoil seized for the benefit of the Estate and its creditors.

- 1 -

The proposed compromise – after releasing about 97% of the Estate Funds – would leave the Estate with a net after attorneys fees and costs of about $327,000 – which is nothing for the over $60 million of creditors of the Estate.

This is despite the fact that the Estate Funds have been the only appreciable assets of the Estate, which anyone has been able to recover.

The Foreign Representative (Liquidator) has not proceeded with any compulsory discovery to confirm the underlying facts of the motions he proposes to compromise. The Foreign Representative's Sanctions motion [ECF 133], for example, details a series of corporate shell games by CTFG's principals, Richard Rothenberg and Alessandro Bazzoni. As detailed, Messsrs. Rothenberg and Bazzoni took assets from CTFG (which they created in British Virgin Islands – BVI – a notoriously financially secret jurisdiction), leaving it insolvent. From there they created "CT Energia" in Malta carrying on the same business as CTFG, which they renamed "Elemento" – the entity involved in the proposed compromise, here.

The recovery of the Estate Funds came about only because of the quick action – and investment of resources – of Chemoil. The Estate Funds remain held in the Registry of the United States District Court for the Southern District of Texas. As Chemoil's Amended Complaint (Exhibit A hereto) filed in the United States District Court for the Southern District of Texas (Civil Action No. 4:17-cv-00813, herein, the "Chemoil Garnishment Action") details, CTFG, including its Chief Financial Officer, Richard Rothenberg in 2014, stole an ocean tanker load $3,948,502.41 of marine gas oil (ship fuel) from Chemoil. CTFG took control of Chemoil's marine gas oil at Panama, promising repeatedly to pay for it.

Then, in 2015, CTFG (that is, Mr. Rothenberg and its other officers, including CEO Alessandro Bazzoni) disappeared, the BVI liquidation began, and (as both the Foreign

- 2 -

Representative details in his Sanctions motion, and Chemoil details in the Chemoil Garnishment Action), what had been CTFG reappeared (still led including by Mr. Rothenberg) as Elemento.

Chemoil learned that "Elemento" planned to sell to an entity located in Houston – SK Energy – an ocean tanker load of naphtha (a valuable petroleum distillate used to dilute heavy fuels and to make high octane gasoline). The payments which SK Energy proposed to make to "Elemento" (which really is CTFG) were and are property of the CTFG (Elemento) estate.

The Foreign Representative lacked the means to seize the SK Energy payment, and so agreed that Chemoil should do that; thus, Chemoil proceeded with the Chemoil Garnishment Action. The U.S. District Court issued a garnishment writ to SK Energy, and SK Energy held the Estate Funds, depositing them into the Registry of the United States District Court for the Southern District of Texas, which holds them now. As the Foreign Representative's Sanctions motion [ECF 133] states (at 28), "Chemoil is acting in the interests of the Liquidator and the creditors by litigating the Chemoil Garnishment Action."[1]

Significantly, discovery which SK Energy has provided in the Chemoil Garnishment Action, confirms that Elemento is in fact the alter ego of CTFG. Exhibit B hereto is the bill of lading for the SK cargo – the proceeds for which Chemoil successfully preserved for the Estate (

---

[1] *See also*, the Foreign Representative's unopposed Motion for Stay Relief [ECF 134, April 7, 2017]:

> 30. The Liquidator and Chemoil discussed the Chemoil Garnishment Action prior to its filing and Debtor is in agreement with Chemoil's view of the merits of the same.
>
> 31. Chemoil has agreed that should it prevail in the Chemoil Garnishment Action, the Funds would be returned to the Liquidator to be disbursed to Debtor's creditors, minus Chemoil's costs and reasonable attorneys' fees expended in litigating the Chemoil Garnishment Action.
>
> 32. Thus, Chemoil is acting in the interests of the Liquidator and the creditors by litigating the Chemoil Garnishment Action.

that is, the Estate Funds). Petroperu issued the bill of lading to - - CTFG. Someone ( and Chemoil understands from the Foreign Representative it was CTFG's Richard Rothenberg or on his orders) rubber stamped the endorsement, "TO THE ORDER OF ELEMENTO LTD." on the bill of lading. Then, Richard Rothenberg – now acting as "CFO – Director" of Elemento – purported to endorse the bill of lading to SK Energy.[2]

Unquestionably, the SK payment was for naphtha titled to CTFG, for which CTFG never received direct consideration (as confirmed by the Foreign Representative). But it makes sense, since again, as both Chemoil and the Foreign Representative have detailed to the U.S. District

---

[2] On April 29, 2016 [ECF 9] the Court entered its injunction preceding its recognition of the Foreign Main Proceeding, including the following:

> g. directing Richard Rothenberg to appear for examination before the Court or alternatively authorizing the Liquidator to issue a subpoena for a Fed. R. Bankr. Proc. 2004 examination duces tecum concerning the records, assets, affairs, rights, obligations or liabilities of Cinque Terre and shortening the number of days to produce responsive documents to seven (7) days from the date of service on Mr. Rothenberg; . . .

Mr. Rothenberg resisted providing the discovery, and appealed this Court's order to the U.S. District Court, Civil Action No. 16-11086-jlg. On November 30, 2016 [16-11086-jlg, ECF 128], the District Court substantially affirmed this Court, and Mr. Rothenberg then appealed the District Court's Order to the U.S. Court of Appeals, where his appeal is pending.

The Foreign Representative's original affidavit, supporting the Estate's Chapter 15 Recognition Petition [ECF 3] details that"

> 16. Richard Rothenberg, a citizen of the United States, was the chief financial officer of Cinque Terre. Mr. Rothenberg apparently operated out of an office located in Fort Lauderdale, Florida, while Mr. Bazzoni worked out Cinque Terre's offices in Zug, Switzerland. It is not presently known how many other persons were employed by Cinque Terre; however, a Feres Dager of Miami, Florida is listed as currently employed by Cinque Terre according to this LinkedIn profile.

Thus, Mr. Rothenberg – CFO of CTFG/Elemento – has never provided discovery in this action. This Court at minimum must not release the Estate Funds, without "Elemento's CFO/Director ( as he wrote on the "endorsed" bill of lading – for the sale to SK of CTFG property), Mr. Rothenberg, providing the discovery that this Court has long ordered.

Court for the Southern District of Texas and to this Court, respectively, CTFG is Elemento and vice versa.

Apparently, although not detailed in the Foreign Representative's motion, "Elemento" now asserts (without the benefit of discovery ) that the source of the Estate Funds was investors in "Elemento" not related to Mr. Rothenberg or CTFG's and Elemento's (now recently former) CEO, Alessandro Bazzoni. Even if that is true, the Estate Funds are at best, investments in the CTFG/Elemento enterprise and property of the Estate. Potentially the "Elemento" (CTFG) investors might make a claim to the Estate ( in BVI), but they have no right to receive back the Estate Funds as a matter of settlement or otherwise. The naphtha belonged to CTFG, the SK payments for it are CTFG property ( whether CTFG or its alter ego Elemento), and it must not be returned. Instead, it should be held to the benefit of the Estate and creditors, including Chemoil, whose efforts provided for the custody of the Estate Funds in the first place and without whose efforts ( as the Foreign Representative credits) there would be no Estate Funds.

Chemoil understands that the total creditor claims against the Estate (asserted in the Foreign Main Proceedings) could exceed $60 million. The Estate Funds, again, are the only substantial funds which the Estate/Foreign Representative have been able to secure, only with the initiative (and funding) of Chemoil. The Estate Funds must be held pursuant to this Court's Order (and the Order of the U.S. District Court) and not- as the Foreign Representative proposes – 97% released to the same people who looted the Estate in the first place ( or who are, at the very most, investors in CTFG/Elemento who stand in no better position than the other $60 million plus of Estate creditors).

### **The Proposed Compromise Also Overlooks 11 U.S.C. § 543**

11 U.S.C. § 543 ("Turnover of property by a custodian") provides in pertinent part as follows:

> (a)  A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.
>
> (b)  A custodian shall—
>
>> (1)  deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case . . .
>
> \* \* \*
>
> (c)  The court, after notice and a hearing, shall—
>
>> (1)  protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property;
>>
>> (2)  provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian . . .

Chemoil has acted as custodian of the Estate Funds. As the Foreign Representative has recognized, Chemoil acted to preserve the Estate Funds and continues to do so by maintaining the Chemoil Garnishment Action before the U.S. District Court.

The proposed compromise is to turn over 3% of the Estate Funds to the Foreign Representative, and release 97% to "Elemento." Notwithstanding that as Chemoil details above, this is improper, but it is further improper to do without providing for Chemoil's "reasonable compensation for services rendered and costs and expenses incurred by such custodian . . ."

- 6 -

Without the valuable information which Chemoil not only provided to the Foreign Representative/Estate, and then Chemoil's action on that, there would be no Estate Funds – not even the 3% that the Foreign Representative proposed to retain. Section 547 requires that Chemoil be paid reasonable compensation for its services to the Estate, including costs and expenses. Chemoil estimates that for attorneys fees alone it has expended, or will expend at least $60,000 preserving the Estate Funds. This amount does not include the value of the efforts of Chemoil personnel to obtain the information leading to Chemoil's successful preservation of the Estate Funds. The Estate Funds must not be released, including to the Estate without provision to Chemoil as Section 547 requires.

### Neither the Foreign Representative, nor "Elemento" – Presents Facts to the Court Supporting The Proposed Compromise

Fundamentally, however, the Foreign Representative presents no facts to the Court supporting the proposed compromise. Who really is, "Elemento"? What really happened with the naphtha bill of lading (a negotiable instrument of title) issued to CTFG (the Estate) but then "endorsed" to Elemento (and then by Richard Rothenberg, CFO of both CTFG and then Elemento, to SK)? Who are the "investors" and why should they ( in the person of "Elemento") receive a return of the Estate Funds? Why are they not at best, in the same position of Chemoil and any other creditor of CTFG, and not required to claim formally on that same position, in the Foreign Main Proceedings? Why is it that despite the Foreign Representative's very clear allegations of fact of the identity of CTFG and Elemento, does the Foreign Representative so willingly return to "Elemento" (which he has alleged is CTFG's alter ego and operated by the same people who looted the Estate) the only substantial funds – the Estate Funds – which the Estate has and may ever have?

Although the Foreign Representative recites the *Iridium* factors and then concludes that the Foreign Representative (and proposed compromise) meets them, the Foreign Representatives motion lacks entirely any supporting facts. The Court simply cannot conclude that the Proposed Compromise is in the Estate's best interest, without presentation of facts – and particularly from "Elemento" – whose Richard Rothenberg continues to refuse to provide this Court with the discovery that this Court, now for over a year, has ordered him to provide.

This Court therefore should deny the Foreign Representative's motion.

Dated: July 29, 2017.

/s/ J. Stephen Simms

J. Stephen Simms
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
410-783-5795
jssimms@simmsshowers.com

Chemoil Counsel

## **CERTIFICATE OF SERVICE**

I hereby certify that on this July 29, 2017 I caused the foregoing to be filed on this Court's CM/ECF system to be served on all record counsel.

/s/ J. Stephen Simms

J. Stephen Simms