# Exhibit B

CONFIDENTIAL

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |  |
|---|---|---|
| In re | : | Chapter 15 |
|  | : |  |
| CINQUE TERRE FINANCIAL | : | Case No. 16-11086 (JLG) |
| GROUP LIMITED, | : |  |
|  | : |  |
| Debtor in a Foreign Proceeding | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DECLARATION OF CARLOS GALINDEZ

CARLOS GALINDEZ, pursuant to 28 U.S.C. § 1746, declares as follows:

1.     Since August 19, 2016, I have been the Director of Elemento, Ltd. ("Elemento").

Accordingly, I am familiar with Elemento's day-to-day operations, business, financial affairs,

and books and records.  I have been designated by Elemento and make this declaration on its

behalf.

2.     In 2015, Alessandro Bazzoni ("Bazzoni") sought to build a new oil and gas

business and he was advised by various banks familiar with the industry that Malta was a better

domicile than British Virgin Islands.  This decision was largely motivated by tax implications.

3.      In late 2015, Bazzoni formed three new entities under the Laws of Malta: CT

Energia Holding, Ltd ("CTEH"), CT Energia, Ltd. ("CTE"), and CT Energia Oil and Gas, Ltd.

("CTEO&G").  Initially, Bazzoni held a 100% ownership interest in CTEH and CTEO&G, and

CTEH in turn held a 100% ownership interest in CTE.  Copies of the Memorandum of

Association and Articles of Association for CTE, dated October 6, 2015, showing CTEH's 100%

ownership of CTE, is attached hereto as **Exhibit A**.  Copies of the Letter from the Malta Registry

of Companies and the Altered Certificate of Registration for CTE, dated March 1, 2017 and July

25, 2016 respectively, are attached hereto as **Exhibit B**.  Copies of the Letter from the Malta

CONFIDENTIAL

Registry of Companies and the Altered Certificate of Registration and for Letter from the Malta

Registry of Companies for CTEO&G, dated October 21, 2016 and August 3, 2016 respectively,

are attached hereto as **Exhibit C**.

4.      On or about December 9, 2015, additional shares of CTEO&G were issued to

Francisco D'Agostino ("D'Agostino"), resulting in each of Bazzoni and D'Agostino holding a

50% ownership interest in CTEO&G.  A copy of Resolution C 73377 for CTEO&G, dated

December 9, 2015, is attached hereto as **Exhibit D**.

5.      On or about January 13, 2016, CTEH transferred its 100% ownership of CTE to

CTEO&G, resulting in each of Bazzoni and D'Agostino holding—through CTEO&G—50%

ownership interests in  CTE.  A copy of the Notice of Transfer or Transmission of Shares

Pursuant to Section 120(3), dated January 13, 2016, is attached hereto as **Exhibit E**.

6.      On or about July 25, 2016, CTE changed its name to Elemento.  Because the

Debtor was in a liquidation proceeding under the insolvency laws of the British Virgin Islands, it

was necessary for CTE to clarify that it was (and always had been) a separate and distinct entity

from CTFG.  "Rebranding" as Elemento was an attempt to avoid confusion among prospective

counterparties.  A copy of the Altered Certificate of Registration certifying that CTE changed its

name to Elemento is attached hereto as **Exhibit B**.

7.      On or about August 3, 2016, CTEO&G changed its name to Elemento Oil &Gas,

Ltd. ("EO&G").  A copy of the Altered Certificate of Registration certifying that CTEO&G

changed its name to EO&G is attached hereto as **Exhibit C**.

8.      On or about August 19, 2016, Richard Rothenberg ("Rothenberg") and Carlos

Galindez Arias ("Galindez") replaced Bazzoni and D'Agostino as directors of CTEO&G.

CONFIDENTIAL

9.      On or about January 29, 2016 and March 8, 2016, Brightpark Investments LLC ("Brightpark") processed two wire transfers, in the amounts of $12,000,000.00 and $18,000,000.00, respectively, on behalf of Cedaridge Investments S.A. ("Cedaridge"), as a working capital unsecured loan to CTEO&G (subsequently EO&G).  Copies of the Suntrust Bank Transaction Report, dated January, 29, 2016, showing the transfer of $12,000,000.00 from Brightpark to CTEO&G, he GNB Sudameris Bank Statement for CTEO&G, dated January 1, 2016 through February 16, 2016, showing the deposit of $12,000,000.00 from Brightpark (and credit of $11,965,000.00 to CTEO&G), the Suntrust Bank Transaction Report dated March 8, 2016, showing the transfer of $18,000,000.00 from Brightpark to CTEO&G, and the GNB Sudameris Bank Statement for CTEO&G dated March 1, 2016 through March 31, 2016, showing the deposit of $18,000,000.00 from Brightpark are attached hereto as **Exhibits F through I**, respectively.

10.     On or about February 4, 2016 and March 10, 2016, CTEO&G (subsequently EO&G) made capital contributions to CTE (subsequently Elemento) in the amounts of $11,965,000.00 and $18,000,000.00, respectively.  Copies of the GNB Sudameris Bank Statement for CTE, dated March 1, 2016 through March 31, 3016, showing the deposit of $18,000,000.00 from CTEO&G,  and the GNB Sudameris Bank Statement for EO&G, dated January 1, 2016 through December 31, 2016, showing credits of $12,000,000.00 and $18,000,000.00 (and corresponding debits of $11,965,000.00 and $18,000,000) to CTE are attached hereto as **Exhibits J and K**, respectively.

11.     On or about February 7, 2017, pursuant to a share purchase and novation agreement, by and between EO&G, Cedaridge and CISA Holdings ("CISA"), EO&G sold, transferred and assigned to CISA 100% of the issued shares, and all voting rights in Elemento.

CONFIDENTIAL

As consideration for such shares, a novation of the $30,000,000.00 debt owed to Cedaridge by

EO&G was executed and CISA assumed all liabilities and obligations related to the debt.  A

copy of the Share Purchase and Novation Agreement between EO&G (the "Seller") and CISA

(the "Purchaser") and Cedaridge (the "Creditor"), dated February 7, 2017, is attached hereto as

**Exhibit L**.

12.     CISA, like Brightpark and Cedaridge, is ultimately 100% beneficially owned by

Ricardo J. Cisneros ("Cisneros").  The entirety of the $30,000,000.00, comprising the initial

working capital unsecured loan to CTEO&G (subsequently EO&G) was processed by Brightpark

on behalf of Cedaridge.  None of the funds comprising the $30,000,000.00 loan came from the

Debtor.

13.     On or about February 10, 2017, Elemento purchased from Petróleos del Perú S.A.

("PetroPeru") 220,000 bbls of naptha fuel (the "Naptha Fuel") (the "PetroPeru Purchase").

14.     At the time of the PetroPeru Purchase, the directors and officers of Elemento were

Richard Rothenberg and Carlos Galindez.

15.     The current directors and officers of Elemento are Richard Rothenberg and Carlos

Galindez.

16.     On or about March 7, 2017, PetroPeru invoiced the Naptha Fuel in the amount of

$12,637,896.00.

17.     On or about March 8, 2017, Elemento made payment to PetroPeru in the amount

of $12,637,896.00, using a portion of the funds comprising the initial working capital unsecured

loan to CTEO&G, processed by Brightpark on behalf of Cedaridge.  Copies of the GNB

Sudameris Bank Statement for Elemento, dated March 1, 2017 through April 7, 2017 and the

TurboSwift Confirmation Report, dated March 8, 2017, confirming the credit transfer in the

CONFIDENTIAL

amount of $12,637,896.00 from Elemento to PetroPeru, are attached hereto as **Exhibits M and N**, respectively.

18.     The shipping company, Maritima Mercantil S.A.C., endorsed the original bill of lading issued by PetroPeru to Elemento in connection with the PetroPeru Purchase, by stamping on the document the words "**TO THE ORDER OF ELEMENTO LTD.**"

19.     Other than for the PetroPeru Purchase, Elemento has not purchased any product or entered into any form of transaction utilizing any registration, concession, license, or permit owned, created, or possessed by the Debtor.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 06 2017.

Carlos V. Galindez
Carlos Galindez
Director of Elemento, Ltd.

6

# Exhibit A



$C\ 72520/1$

**REGISTRY OF COMPANIES
CASH DATE**

- 6 OCT 2015

HSBC ....Chq No.... 8545
**Validity subject to Bank Clearance**

C245  R471023

**MEMORANDUM OF ASSOCIATION**

**A S**

- 6 OCT 2015

**NAME**

1.      The name of the Company shall be CT Energia Ltd.


**REGISTERED OFFICE**

2.      The registered office of the Company shall be at 85, St. John Street, Valletta
        VLT 1165, Malta, or at any other address in Malta as the Board of Directors may
        determine from time to time.


**OBJECTS / POWERS**

3.      The main object of the Company shall be:

        (a)     To purchase or otherwise acquire, under any title whatsoever, to hold,
                manage and dispose of, by any title valid at law, movable or immovable
                property of whatever nature including any rights thereon;

        The other objects of the Company shall be:

        (b)     To receive from the assets referred to in paragraph (a) above dividends,
                capital gains, interest, income derived from investments generally
                including income or gains realised upon their disposal, rents, royalties
                and similar income, whether arising in or outside Malta, and profits or
                gains attributable to a permanent establishment (including a branch)
                whether situated in or outside Malta;

1

**OBJECTS / POWERS** - continued


and

(c)   To do all such other things as may be deemed conducive or ancillary to the attainment of the above objects or any one of them.


4.   In order to achieve its objects, the Company shall have 'inter alia' the following powers:

(a)   To open, close and operate bank accounts for the Company in accordance with applicable laws and regulations;

(b)   To appoint agents of the Company in any part of the world;

(c)   To subcontract any work, engagements, contracts or instructions;

(d)   To apply for, register, purchase, or by other means acquire, hold, develop, exploit, protect and renew any patents, royalties, copyrights, grants, options, protections and concessions and any other exclusive and non-exclusive rights, and to grant licences or rights in respect thereof;

(e)   To enter into partnership or into any arrangements for sharing profits, co-operation, joint venture, reciprocal concession, or otherwise with any person or entity carrying on or engaged in, or about to engage in or carry on any business or transaction which this Company is authorised to carry on, so as directly or indirectly to benefit this Company;

2

**OBJECTS / POWERS** - continued

(f)     To purchase or otherwise acquire and take over any business, property, goodwill, liabilities or undertaking within or related to the objects of the Company and which may be deemed expedient, or to become interested in and to carry on, or dispose or remove, or put an end to the same or otherwise deal with any such business or undertaking;

(g)     To take over and carry on any contract entered into by any person as may be deemed necessary or desirable for carrying on the business of the Company or for the general conduct or management of its affairs and for the doing of such other things as may be deemed conducive to the attainment of the Company's objects;

(h)     To enter into any arrangements with any government or authority that may seem conducive to the attainment of the Company's objects or any of them, and to obtain from any such government or authority any charters, decrees, rights, privileges or concessions which the Company may consider conducive to the attainment of its objects, and to carry out, exercise, and comply with any such charter, decree, right, privilege and concession;

(i)     To invest or hold shares in any other company, partnership or business, and to participate in the management or activities thereof;

(j)     To give loans, advances and credit facilities to third parties, only where necessary in relation to the Company's business;

(k)     To acquire and dispose of, by any title valid at law, movable or immovable property, whether for commercial or other purposes, and the consideration for any such acquisition or disposal can be by credit or in cash or in kind;

3

**OBJECTS / POWERS** - continued

(l)  To hold such property and to invest, lease, hire or in any other manner employ, improve, manage or develop any of its assets in such manner as may from time to time be decided upon by the Company;

(m)  To sell or otherwise dispose of the whole or any part of the undertaking of the Company for such consideration as it may think fit, and in particular for shares or debentures of any company purchasing the same;

(n)  To issue debentures and to borrow and raise money in such amounts and manner and upon such terms and to any limit as the Company shall think fit, subject to the terms of this Memorandum and Articles of Association, and when thought desirable to execute and issue any security of such kind, subject to such conditions, for such amounts, payable in such place and manner and to such persons as the Company shall deem fit, including the power to issue as primary security, or as collateral to any other security, debenture stock (perpetual or otherwise) mortgages, charges, hypothecation, pledge, lien or other security over the whole or any part of its assets present or future (including uncalled capital) as the Company shall deem fit;

(o)  To guarantee, even by hypothecating the Company's property, the payment of any monies, or the honouring of any debentures, debenture stock, bonds, mortgages, charges, obligations, interests, dividends and any other securities issued, granted or entered into, or the performance of any contracts or engagements entered into, by any associated company or any other entity or person, with or to any other company, entity or person, and to give indemnities and guarantees of any kind;

(p)  To sell on hire-purchase terms and to give credit on any products and services provided by the Company under any title or contract, and to draw, make, accept, endorse, discount, execute, issue and negotiate

4

**OBJECTS / POWERS** - continued

promissory notes, bills of exchange, bills of lading or other negotiable or transferable instruments;

(q)   To constitute and form any subsidiary or associate companies and to enter into any mergers, demergers or reconstructions for the furthering and the better attainment of the objects of the Company;

(r)   To pay all expenses incidental to the formation and registration of the Company as well as all expenses connected with the purchase of any properties, businesses, rights and others, which may be required for the purposes of the Company and for the fulfilment and putting into effect of any of its objects;

(s)   To distribute amongst the members any property of the Company including, but not limited to, property 'in specie', whether by way of dividend, upon a return of capital or by any other means, but so that no such distribution shall amount to a reduction of capital of the Company except with the sanction (if any) for the time being required by law;

(t)   To do anything or to carry out such other transactions as may be conducive or incidental to the attainment of the above objects or any one of them.

Nothing in the foregoing shall be construed as enabling or empowering the Company to carry on any activity, business or service which requires a licence or is otherwise regulated under the Banking Act, Chapter 371 of the Laws of Malta, the Financial Institutions Act, Chapter 376 of the Laws of Malta, the Investment Services Act, Chapter 370 of the Laws of Malta, the Financial Markets Act, Chapter 345 of the Laws of Malta, the Insurance Business Act, Chapter 403 of the Laws of Malta, the Insurance Intermediaries Act, Chapter 487 of the Laws of Malta nor the Special Funds (Regulation) Act, Chapter 450 of the Laws of Malta or the Trusts and Trustees Act, Chapter 331 of the Laws of Malta and the Company Services Providers Act, Chapter 529 of the Laws of Malta.

5

**OBJECTS / POWERS** - continued

The exercise by the company of the foregoing objects and powers is subject to such prohibitions and restrictions as are provided by and under the mandatory provisions of any law in force for the time being including the Companies Act, Chapter 386 of the Laws of Malta, the Investment Services Act, Chapter 370 of the Laws of Malta, the Insurance Business Act, Chapter 403 of the Laws of Malta, the Insurance Intermediaries Act, Chapter 487 of the Laws of Malta, the Banking Act, Chapter 371 of the Laws of Malta, the Financial Institutions Act, Chapter 376 of the Laws of Malta, the Financial Markets Act, Chapter 345 of the Laws of Malta, the Special Funds (Regulation) Act, Chapter 450 of the Laws of Malta, the Trusts and Trustees Act, Chapter 331 of the Laws of Malta and the Company Services Providers Act, Chapter 529 of the Laws of Malta and of any regulations or rules issued thereunder and any amendment, modification or substitution of any such laws, regulations or rules"

**CAPITAL**

5.  1.   The Authorised Share Capital of the Company is one thousand one hundred and sixty five Euro (EUR 1,165) divided into one thousand one hundred and sixty five (1,165) Ordinary shares of one Euro (EUR 1) each.

    2.   The Issued Share Capital of the Company is one thousand one hundred and sixty five Euro (EUR 1,165) divided into one thousand one hundred and sixty five (1,165) Ordinary shares of one Euro (EUR 1) each which have been subscribed for and allotted, fully paid up, as follows:-

         CT Energia Holding Ltd.              1,165 Ordinary shares
         (C 66394)
         85,
         St. John Street
         Valletta VLT1165
         Malta

## DIRECTORS

6.  1.   The Board of Directors of the Company (hereinafter referred to as "the
         Board") shall consist of not less than two (2) and not more than five (5)
         Directors.

    2.   The first Directors of the Company shall be Mr. Alessandro Bazzoni
         (holder of Italian Passport Number YA5280551) of Via Cantonale 8A,
         6900 Lugano, Switzerland and Mr. Richard Rothenberg (holder of
         American Passport Number 473468141) of 500 E Broward Blvd, Fort
         Lauderdale, FL 33394 United States of America.

    3.   Directors of the Company shall hold office indefinitely or until they resign
         or are removed from the office of director in terms of law.

## COMPANY SECRETARY

    7.   The first Company Secretary shall be Mr. Richard Rothenberg (holder of
         American Passport Number 473468141) of 500 E Broward Blvd, Fort
         Lauderdale, FL 33394.

## REPRESENTATION

8.  1.   Deeds of whatever nature engaging the Company and all other
         documents purporting to bind the Company, as well as cheques, bills of
         exchange, promissory notes and other negotiable instruments shall be
         signed, made, executed, drawn, accepted and endorsed, as the case
         may be, on behalf of the Company, by any Director.

    2.   Any Director may represent the Company in judicial proceedings;
         provided that no proceedings may be instituted by the Company without
         the Board's authority.  Nothing herein contained shall prevent the Board
         from convalidating any judicial action taken by the Director in anticipation
         of its approval.

7

**REPRESENTATION** - continued

3.    In addition to and without prejudice to paragraphs 1. and 2. above, the Board may from time to time by resolution delegate such powers for a specific purpose or transaction/class of transactions, to any one Director and/or other person or persons, jointly or severally.


**PRIVATE EXEMPT COMPANY**

9.    The Company is a private exempt company.  Accordingly:

(a)    the right to transfer shares in the Company is restricted in the manner hereinafter stipulated;

(b)    the number shareholders or debenture holders of the Company is limited to (50) provided that when two or more persons hold jointly one or more shares or debentures in the Company, they shall be considered as a single person for the purposes of this clause;

(c)    No body corporate is a director of the Company, and neither the Company nor any of the directors is party to an arrangement whereby the policy of the Company is capable of being determined by persons other than the directors, members or debenture holders thereof.

(d)    any invitation to the public to subscribe for any shares or debentures of the Company is hereby prohibited.


**DURATION**

10.    The Company is constituted for an indefinite period of time.

Mr. Adrian Mercieca
F/ CT Energia Holding Ltd.
Duly Authorised

8

**ARTICLES OF ASSOCIATION**

**PRELIMINARY**

1.    The Regulations contained in Part I of the First Schedule (hereinafter referred to as "the First Schedule") to the Companies Act (hereinafter referred to as "the Act") shall apply to the Company save in so far as they are excluded or varied hereby.

2.    The Company is a private company and Part II of the First Schedule shall also apply to the Company with the exception of Regulations 1 and 3 thereof.

**SHARE CAPITAL AND SHARES**

3.    1.    The shares in the original or any increased capital may be divided into several classes and there may be attached thereto respectively any preferential, deferred or other special rights, privileges, conditions or restrictions, whether in regard to voting, dividend, return of capital or otherwise as the Company in General Meeting may from time to time determine by an extraordinary resolution carried in accordance with these Articles.

2.    The Company may, by an extraordinary resolution of the Company in General Meeting carried in accordance with these Articles, and subject to the approval of a simple majority of the holders of the issued shares of that class and of any other class affected thereby, authorise the change of any shares in the Company from one class of shares to another, or the variation of the rights attached to any class of shares in the Company, as well as authorise the removal, whether wholly or in part, of the division of the shares of the Company into several classes.

3.    Regulations 1 to 3 of Part I of the First Schedule shall not apply to the Company.

9

**SHARE CAPITAL AND SHARES** - continued

4.    Any unissued shares of the Company shall be at the disposal of the General Meeting which may by an extraordinary resolution carried in accordance with these Articles allot, grant options over or otherwise dispose of them to such persons, at such time and for such consideration and upon such terms and conditions as may be determined thereby.

5.    Ordinary Shares in the Company shall grant the right of one (1) vote for every Share held; they shall have the right to receive dividends and distributions of assets upon winding up and they may be pledged by the holder or holders thereof.

6.    Where a shareholder is an unemancipated minor, bankrupt, interdicted or otherwise incapacitated, the rights of that shareholder shall vest in and be exercised by his tutor, curator or other legal representative.

7.    Where two or more persons hold one or more shares in the Company jointly, they shall be treated as a single member, and the name of only one of such persons shall be entered in the register of members. Such person shall be elected by the joint holders and shall for all intents and purposes be deemed vis-à-vis the Company to be the member of the Company in respect of all the shares so held.


**TRANSFER AND TRANSMISSION OF SHARES**

8.    1.    Shares may be freely transferred "inter vivos" only as follows:

**TRANSFER AND TRANSMISSION OF SHARES** – continued

    (i)  in favour of any other holder of shares in the Company; and

    (ii)  in favour of any person or persons as may be approved by an extraordinary resolution of the Company taken at a General Meeting.

2.    In all other cases, shares shall be transferred "inter vivos" in accordance with the following procedures:

    (i)    If the holder of any shares (hereinafter referred to as "the transferring member") wishes to transfer his shares or any of them, he shall notify the Board by notice in writing (referred to as a "transfer notice") to the effect that he wishes to transfer the said shares.

    (ii)    The said transfer notice shall specify the number of shares which the transferring member wishes to transfer and the sum estimated by the transferring member to be the value of each such share.  The transferring member shall not be entitled to revoke a transfer notice without the consent in writing of the Board.

    (iii)    The receipt by the Board of a transfer notice shall be deemed for all intents and purposes to constitute the Board agent for the sale of the said shares at a fair value which shall be ascertained as follows:

        a)    If the Board shall approve the value estimated by the transferring member as the value of the shares, that sum shall be the fair value.

        b)    If the Board, at their discretion, shall not approve the value estimated by the transferring member, they shall immediately request the Auditor of the Company to make, in writing, a valuation of the current value of the said

**TRANSFER AND TRANSMISSION OF SHARES** – continued

shares, and the value thus fixed by the Auditor shall be the fair value, which value shall be final and binding and not subject to appeal.

c)    If for any reason the Auditor shall refuse to, or for any other reason shall not make the said valuation, the Board shall request any other person whom they think fit to make the said valuation in the same manner as described in sub-paragraph (b) of this paragraph, and the value fixed by this person shall be the fair value, which value shall also be final and binding and not subject to appeal.

(iv)    When the fair value of the shares to be transferred shall have been determined in the manner described in paragraph (iii) hereof, the Board shall cause a notice in writing to be sent to the transferring member informing him of the fair value of the shares, and shall also cause notice to be sent to every holder of shares in the Company of the same category as those which are to be transferred, stating the number and the fair value of the shares, and shall therein invite each such holder of shares to give notice in writing within thirty (30) days whether he is willing to purchase any, and if so, what maximum number of the said shares.

(v)    At the expiration of the said thirty (30) days, the Board shall allocate the said shares to or amongst the holders of shares in the Company who shall have expressed their willingness to purchase in proportion to their holding of such shares in the Company.

(vi)    The transferring member shall complete and execute transfers of the said shares in accordance with the allocation by the Board, in exchange for the consideration determined as above, and shall surrender to the Board his share certificate.

**TRANSFER AND TRANSMISSION OF SHARES** – continued

(vii)   If the Board shall be unable to find a purchaser for all or any of the shares which the transferring member wishes to transfer amongst the holders of shares in the Company, the Board shall notify the transferring member accordingly who may then transfer the said shares to any person and at any price as may be agreed between the transferring member and the said person.

9.   Shares may be freely transmitted "causa mortis" only in the following cases:

(i)   in favour of any other shareholder;

(ii)   in favour of the spouse of the deceased shareholder;

(iii)   in favour of any ascendant or descendant in the direct line of the deceased shareholder; and

(iv)   in favour of any other person or persons as may be approved by an extraordinary resolution of the Company taken at a General Meeting.

10.   1.   Transmissions of shares "causa mortis" not falling under Article 9 shall be regulated "mutatis mutandis" in the manner set out in Article 8 hereof as if the shares which cannot be freely transmitted were shares which cannot be freely transferred.

2.   Shares subject to a transmission "causa mortis" falling under paragraph 1. hereof shall not have the right to vote until they are registered in the name of other shareholders or of the beneficiaries.

11.   Notwithstanding anything to the contrary, where shares are registered in the name of a person, the benefits, rights and other advantages arising from the ownership thereof shall, unless or until otherwise determined by agreement or Court judgement, continue to be vested in and enjoyed by the said person although such ownership may be affected by the transmission happening on the death of his or her spouse.

12.   No part of a share may form the object of a transfer or a transmission.

**TRANSFER AND TRANSMISSION OF SHARES** – continued

13.     Regulations 14, 17 to 21 (both inclusive) of Part I of the First Schedule shall not
        apply to the Company.


**GENERAL MEETINGS**

14.     No business shall be transacted at any General Meeting of the Company unless
        a quorum is present at the time when the meeting proceeds to business.  One or
        more members, present in person or by proxy, having the right to attend and
        vote at the Meeting and holding in the aggregate at least fifty-one per cent
        (51%) in nominal value of all the shares conferring that right shall be a quorum.

15.     An ordinary resolution shall be deemed to have been validly carried only if
        consented to by a member or members having the right to attend and vote at
        the Meeting and holding in the aggregate at least fifty-one per cent (51%) in
        nominal value of all the shares conferring that right.

16.  1.     An extraordinary resolution can only be taken at a meeting of the
            Company of which notice specifying the intention to propose the text of
            the resolution as an extraordinary resolution and the principal purpose
            thereof has been duly given.

     2.     An extraordinary resolution shall be required for the following: -
            i.     alterations and/or amendments to the Memorandum and Articles
                   of Association, except for the alteration of the registered address
                   of the Company;
            ii.    dissolution of the Company;
            iii.   wherever so required in terms of these Articles.

     3.     All resolutions other than those listed in paragraph 2 shall be ordinary
            resolutions.

**GENERAL MEETINGS** – continued

4.  An extraordinary resolution shall be deemed to have been validly carried only if consented to by a number of members having the right to attend and vote at the Meeting and holding sixty-six per cent (66%) in nominal value of all the shares conferring that right.

17.  A resolution in writing signed by all the members for the time being entitled to receive notice of and to attend and vote at the General Meetings shall be as valid and effective as if the same had been passed at a General Meeting of the Company duly convened and held and the provisions of article 155 of the Act shall not apply. Annual General Meetings of the Company may be held in accordance with this Article, provided that a resolution in writing as aforesaid shall be void if it purports to remove a director or an auditor before the expiration of his term of office, or otherwise purports to deprive the auditors of the right granted to them by virtue of article 155 of the Act.

18.  1.  The provisions of Articles 14 to 18 (both inclusive) shall apply 'mutatis mutandis', as applicable, to meetings of the holders of each class of shares in the Company.

2.  Regulation 36 of Part I of the First Schedule shall not apply to the Company.  Regulation 48 of Part I of the First Schedule shall be read and construed as if the words "not less than twenty four hours", wherever they occur, were omitted.

**DIRECTORS**

19.  The Directors may elect a chairman of their meetings and determine the period for which he is to hold office, provided that if no chairman is elected, or if at any meeting the chairman is not present within half an hour after the time appointed for holding the same, the Directors present may choose one of their number to be chairman of the meeting.

15

**DIRECTORS** – continued

20.     The business of the Company shall be managed by the Board which may
        exercise all such powers of the Company as are not by the Act or by the
        Memorandum and Articles of the Company required to be exercised by the
        Company in General Meeting or in respect of which specific provision is
        otherwise made in these Articles.

21.     Without prejudice to the provisions of article 145 of the Act, no Director shall be
        disqualified by his position as Director from entering into any contract or
        arrangement with the Company, and a Director may vote and be taken into
        account for the purpose of constituting a quorum at meetings in which any
        contract or arrangement in which he may in any way be interested is due to be
        discussed, and he shall be entitled to retain for his own use and benefit all
        profits and advantages accruing to him therefrom.

22.     A Director of the Company may not, in competition with the Company and
        without the approval of the same Company given at a General Meeting, carry on
        business on his own account or on account of others; nor may he be a partner
        with unlimited liability in another partnership or a director of a company which is
        in competition with the Company.

23.     A Director may hold any other office of profit under the Company (other than
        that of Auditor) on such terms as to remuneration and otherwise as the Board
        may determine.

24.     A Director may at any time, generally or for a specified time, appoint any person
        to be his alternate Director. The person so appointed shall have the right to
        attend meetings of the Board and to sign and vote thereat for the Director in his
        absence. Any such appointment must be in writing and must be deposited at the
        registered office of the Company. A Director, who is also an alternate Director,
        shall be entitled, in addition to his own vote, to a separate vote on behalf of the
        Director he is representing. An alternate Director shall "ipso facto" vacate office
        if his principal ceases for any reason to be a Director.

16

**DIRECTORS** – continued

25.     A Director may, and the Company Secretary on requisition of a Director shall, at
any time summon a meeting of the Directors. Notice of a meeting of the Board
shall be given to all Directors at the time, whether or not present in Malta, at
least seven (7) days prior to the meeting, unless all Directors agree to a shorter
period of notice or to waive the right to notice altogether.

26.     The quorum at a board meeting shall be one (1) Director. If there shall be three
(3) or more Directors in office, then the quorum shall be a simple majority of the
total number of Directors in office. Where a Director has been appointed as an
alternate Director in order to attend a particular meeting or meetings of the
Board and to sign and vote thereat, the number of Directors he is so
representing shall also be taken into consideration for the purposes of the
quorum.

27.     The Directors may meet together for the despatch of business, adjourn and
otherwise regulate their meetings as they think fit. Decisions related to all
questions arising at any meeting shall be made by a majority of votes. In case of
an equality of votes, the chairman of the meeting shall not be entitled to a
second or casting vote.

28.     A Director shall be deemed to be present at any meeting other than a Board
meeting if he participates by telephonic or other means and all persons
participating in the Meeting, including said Director, are able to hear each other.

29.     A resolution in writing signed by all the Directors for the time being entitled to
receive notice of a meeting of the Directors shall be as valid and effectual as if it
had been passed at a meeting of the Directors duly convened and held. Any
such resolution may consist in several documents in like form each signed by a
Director, so however that any Director who is also acting in the capacity of an
alternate director appointed in accordance with Article 24 may opt to sign one
(1) such document only.

**DIRECTORS** – continued

30.    Regulations 54, 57 to 63 (both inclusive), 65 and 66 of Part I of the First
       Schedule shall not apply to the Company.  All references in Part I of the First
       Schedule to retirement of Directors by rotation shall be disregarded.


**SINGLE MEMBER COMPANY**

31.    During such time as the Company shall be a single member company in terms
       of and for the purposes of article 212 of the Act, the provisions of article 212(7)
       and (8) of the Act shall apply as and where appropriate and in all cases in the
       event of any conflict between article 212 of the Act and any Article.


**DIVIDENDS**

32.    All dividends shall be declared and paid according to the nominal value of the
       shares. Regulation 76 of Part I of the First Schedule shall not apply to the
       Company.


**COMPANY SECRETARY**

33.    Without prejudice to the provisions of the Act regulating the appointment and
       functions of the Company Secretary, the appointment or replacement of the
       Company Secretary and the conditions under which he shall hold office shall be
       determined by the Directors.

34.    Subject to the above, the Company Secretary shall be responsible for keeping:

       (a)    the minute book of general meetings of the Company;
       (b)    the minute book of meetings of the Board of Directors;
       (c)    the register of members; and
       (d)    the register of debentures.

**COMPANY SECRETARY - continued**

The Company Secretary shall also take all reasonable steps to ensure that proper notices are given of all meetings and to ensure that all returns and other documents of the Company, the preparation or delivery of which falls within the statutory duties of the Company Secretary, are prepared and delivered in accordance with the requirements of the Act.

35.   Regulation 72 of Part I of the First Schedule shall not apply to the Company.

**NOTICE**

36.   Every member shall specify his address to the Company for the giving to him of notices. A notice shall be deemed to have been served by the posting of such notice by registered mail to the said address, and in the case of a notice of a meeting at the expiration of forty-eight hours after the notice is posted, and in any other case at the time at which the notice would be delivered in the ordinary course by post. A member may ask the Company to simultaneously transmit notices by way of fax transmission or e-mail at any number or e-mail address communicated to the Company for this purpose.

37.   Notice of every General Meeting shall only be given, in the manner hereinbefore authorised, to:

(a)   every Director;

(b)   every registered member entitled to attend and vote at the Meeting, who has specified an address to the Company for this purpose; and

(c)   the auditor for the time being of the Company.

19

**NOTICE** – continued

38.    Regulations 81 and 82 of Part I of the First Schedule shall not apply to the
Company.

Mr. Adrian Mercieca
F/ CT Energia Holding Ltd.
Duly Authorised

This ......6ᵗʰ.........Day of...Oct....20..15
filed by.Fenlex...with..............)..........doc/s.

f/Registrar of Companies

ANGELA FENECH ZAMMIT

20

**POWER OF ATTORNEY**

We, the undersigned CT Energia Holding Ltd. hereby appoint Mr Karl Diacono and/or Mr Adrian Mercieca and/or Ms Claire Farrugia, all of 85, St. John Street, Valletta VLT1165 - Malta.

Empowering them jointly and severally to subscribe to shares in our name and to do all that is necessary and incidental to form and constitute a Limited Liability Company under the laws of Malta under the name of:

**CT ENERGIA LTD.**

and under such Memorandum and Articles of Association as they deem fit and appropriate.

Executed this 30th September, 2015.

**Mr. Alessandro Bazzoni**
**F/CT Energia Holding Ltd.**
**Director**

CONFIDENTIAL

# Exhibit B

# *Registrar of Companies*

## MALTA

**Our Ref.:  C 72520**

1st March 2017

## TO WHOM IT MAY CONCERN

This is to certify that Elemento Ltd of 85, St. John Street, Valletta VLT 1165, Malta was registered under the Laws of Malta on the 6th October 2015 and is still so registered.

According to our records the present shareholder of the company is:

| Name | Number of Shares |
|---|---|
| CISA Holdings Limited<br>(Company Reg. No. C 78841) | 1,165 Ordinary Shares of USD 1.1224 each |

The present directors of the company are:

Carlos Galindez Arias (Venezuelan Passport No. 137261792)
Richard Rothenberg (American Passport No. 473468141)

The present secretary of the company is:

Richard Rothenberg (American Passport No. 473468141)

This information is provided on the basis of the documents registered in respect of the company.

MARK SCHEMBRI

f/Registrar of Companies

# COMPANIES ACT, 1995

## MALTA

## ALTERED
## CERTIFICATE OF REGISTRATION
### LIMITED LIABILITY COMPANY

### (PURSUANT TO SECTION 80)

**CT Energia Ltd**

Previous Name of Company

**C 72520**

Registration Number

This is to certify that the above-mentioned Company
has changed its name to

**Elemento Ltd**

New Name of Company

**25th July 2016**

Effective Date of Alteration

**Certified True Copy**

*MARK SCHEMBRI*

Joseph Farrugia

**f/Registrar of Companies
Dated this 2nd March 2017**

*f/Registrar of Companies*

Dated this ........25th........ day of ........July........ 20....16....

# Registry of Companies

## Limited Liability Company

## Memorandum and Articles of Association

### of

### ELEMENTO LTD

Registration No. C 72520

Registered on the 6th day of OCTOBER 2015

*C 72520/12*

**BG**

24 FEB 2017



**REGISTRY**

**RECEIVED**

17 FEB 2017

**OF COMPANIES**

# ⋔ ELEMENTO LIMITED

*Liability Company registered in Malta bearing registration number C72520*
*Registered Office: 85, St. John Street, Valletta VLT1165, Malta*

---

RESOLUTION IN WRITING SIGNED BY THE SOLE MEMBER OF **ELEMENTO LIMITED** (THE "COMPANY") IN TERMS OF THE ARTICLES OF ASSOCIATION OF THE COMPANY.

---

IT IS HEREBY NOTED THAT:

**Transfer of shares**

**Elemento Oil & Gas Ltd.,** with Co. Reg. No. **C73377,** having its registered office address at 85, St. John Street, Valletta VLT1165 transferred and sold **1,165** ordinary shares of 1.122400 US Dollars each, fully paid up to **CISA Holdings Limited,** with Co. Reg. No. **C78841,** having its Registered Office Address at 35, Strait Street, Valletta VLT1434, Malta.

IT IS HEREBY UNANIMOUSLY RESOLVED THAT:

**Substitution of Memorandum and Articles *in toto***

The Memorandum and Articles of Association of the Company are hereby deleted *in toto* and substituted by the attached document "A";

Dated : 7th February 2017

Dr. Jeanelle Cachia
Maltese ID Card No. 511887M
obo GVZH Trustees Ltd
Co. Reg. No. C23095
obo CISA Holdings Ltd
Co. Reg. No. C78841
*Shareholder*

'A'



## MEMORANDUM OF ASSOCIATION

### NAME

1.    The name of the Company is Elemento Ltd.


### REGISTERED OFFICE

2.    The registered office of the Company is at 85, St. John Street, Valletta VLT
1165, Malta, or at any other address in Malta as the Board of Directors may
determine from time to time.


### OBJECTS / POWERS

3.    The main object of the Company is:

(a)    To purchase or otherwise acquire, under any title whatsoever, to hold,
manage and dispose of, by any title valid at law, movable or immovable
property of whatever nature including any rights thereon;

The other objects of the Company shall be:

(b)    To receive from the assets referred to in paragraph (a) above dividends,
capital gains, interest, income derived from investments generally
including income or gains realised upon their disposal, rents, royalties
and similar income, whether arising in or outside Malta, and profits or
gains attributable to a permanent establishment (including a branch)
whether situated in or outside Malta;

1

and

(c)    To do all such other things as may be deemed conducive or ancillary to the attainment of the above objects or any one of them.

4.    In order to achieve its objects, the Company shall have 'inter alia' the following powers:

(a)    To open, close and operate bank accounts for the Company in accordance with applicable laws and regulations;

(b)    To appoint agents of the Company in any part of the world;

(c)    To subcontract any work, engagements, contracts or instructions;

(d)    To apply for, register, purchase, or by other means acquire, hold, develop, exploit, protect and renew any patents, royalties, copyrights, grants, options, protections and concessions and any other exclusive and non-exclusive rights, and to grant licences or rights in respect thereof;

(e)    To enter into partnership or into any arrangements for sharing profits, co-operation, joint venture, reciprocal concession, or otherwise with any person or entity carrying on or engaged in, or about to engage in or carry on any business or transaction which this Company is authorised to carry on, so as directly or indirectly to benefit this Company;

(f)    To purchase or otherwise acquire and take over any business, property, goodwill, liabilities or undertaking within or related to the objects of the Company and which may be deemed expedient, or to become interested in and to carry on, or dispose or remove, or put an end to the same or otherwise deal with any such business or undertaking;

(g)    To take over and carry on any contract entered into by any person as may be deemed necessary or desirable for carrying on the business of the Company or for the general conduct or management of its affairs and

for the doing of such other things as may be deemed conducive to the

2

attainment of the Company's objects;

(h)    To enter into any arrangements with any government or authority that may seem conducive to the attainment of the Company's objects or any of them, and to obtain from any such government or authority any charters, decrees, rights, privileges or concessions which the Company may consider conducive to the attainment of its objects, and to carry out, exercise, and comply with any such charter, decree, right, privilege and concession;

(i)    To invest or hold shares in any other company, partnership or business, and to participate in the management or activities thereof;

(j)    To give loans, advances and credit facilities to third parties, only where necessary in relation to the Company's business;

(k)    To acquire and dispose of, by any title valid at law, movable or immovable property, whether for commercial or other purposes, and the consideration for any such acquisition or disposal can be by credit or in cash or in kind;

(l)    To hold such property and to invest, lease, hire or in any other manner employ, improve, manage or develop any of its assets in such manner as may from time to time be decided upon by the Company;

(m)    To sell or otherwise dispose of the whole or any part of the undertaking of the Company for such consideration as it may think fit, and in particular for shares or debentures of any company purchasing the same;

(n)    To issue debentures and to borrow and raise money in such amounts and manner and upon such terms and to any limit as the Company shall think fit, subject to the terms of this Memorandum and Articles of Association, and when thought desirable to execute and issue any

security of such kind, subject to such conditions, for such amounts, payable in such place and manner and to such persons as the Company shall deem fit, including the power to issue as primary security, or as

3

collateral to any other security, debenture stock (perpetual or otherwise) mortgages, charges, hypothecation, pledge, lien or other security over the whole or any part of its assets present or future (including uncalled capital) as the Company shall deem fit;

(o) To guarantee, even by hypothecating the Company's property, the payment of any monies, or the honouring of any debentures, debenture stock, bonds, mortgages, charges, obligations, interests, dividends and any other securities issued, granted or entered into, or the performance of any contracts or engagements entered into, by any associated company or any other entity or person, with or to any other company, entity or person, and to give indemnities and guarantees of any kind;

(p) To sell on hire-purchase terms and to give credit on any products and services provided by the Company under any title or contract, and to draw, make, accept, endorse, discount, execute, issue and negotiate promissory notes, bills of exchange, bills of lading or other negotiable or transferable instruments;

(q) To constitute and form any subsidiary or associate companies and to enter into any mergers, demergers or reconstructions for the furthering and the better attainment of the objects of the Company;

(r) To pay all expenses incidental to the formation and registration of the Company as well as all expenses connected with the purchase of any properties, businesses, rights and others, which may be required for the purposes of the Company and for the fulfilment and putting into effect of any of its objects;

(s) To distribute amongst the members any property of the Company including, but not limited to, property 'in specie', whether by way of

dividend, upon a return of capital or by any other means, but so that no such distribution shall amount to a reduction of capital of the Company except with the sanction (if any) for the time being required by law;

(t) To do anything or to carry out such other transactions as may be

4

conducive or incidental to the attainment of the above objects or any one of them.

Nothing in the foregoing shall be construed as enabling or empowering the Company to carry on any activity, business or service which requires a licence or is otherwise regulated under the Banking Act, Chapter 371 of the Laws of Malta, the Financial Institutions Act, Chapter 376 of the Laws of Malta, the Investment Services Act, Chapter 370 of the Laws of Malta, the Financial Markets Act, Chapter 345 of the Laws of Malta, the Insurance Business Act, Chapter 403 of the Laws of Malta, and the Insurance Intermediaries Act, Chapter 487 of the Laws of Malta, nor the Special Funds (Regulation) Act, Chapter 450 of the Laws of Malta or the Trusts and Trustees Act, Chapter 331 of the Laws of Malta.

The exercise by the Company of the foregoing objects and powers is subject to such prohibitions and restrictions as are provided by and under the mandatory provisions of any law in force for the time being including the Companies Act, Chapter 386 of the Laws of Malta, the Investment Services Act, Chapter 370 of the Laws of Malta, the Insurance Business Act, Chapter 403 of the Laws of Malta, the Insurance Intermediaries Act, Chapter 487 of the Laws of Malta, the Banking Act, Chapter 371 of the Laws of Malta, the Financial Institutions Act, Chapter 376 of the Laws of Malta, the Financial Markets Act, Chapter 345 of the Laws of Malta, the Special Funds (Regulation) Act, Chapter 450 of the Laws of Malta, and the Trusts and Trustees Act, Chapter 331 of the Laws of Malta, and of any regulations or rules issued thereunder and any amendment, modification or substitution of any such laws, regulations or rules.

In the interpretation of the object and powers clause of this Memorandum of Association, the powers conferred to the Company by each of the foregoing paragraphs shall not be restricted by reference to any other paragraph and in the event of any ambiguity this clause shall be separate and distinct objects construed so as to widen and not restrict the powers of the Company.

**CAPITAL**

5.    1.    The Authorised Share Capital of the Company is one thousand three and seven point sixty US Dollars (USD 1,307.60) divided into one thousand one hundred and sixty five (1,165) Ordinary shares of one point one two two four US Dollars (US 1.1224) each;

2.   The Issued Share Capital of the Company is one thousand three hundred and seven point sixty US Dollars (USD 1,307.60) divided into one thousand one hundred and sixty five (1,165) Ordinary shares of one point one two two four US Dollars (US 1.1224) each which have been subscribed for and allotted, fully paid up, as follows:-

CISA Holdings Limited                     1,165 ordinary shares
Co. Reg. No. C78841
35, Strait Street
Valletta VLT1434
Malta

6.   1.   The Board of Directors of the Company (hereinafter referred to as "the Board") shall consist of not less than two (2) and not more than five (5) Directors.

2.   The Directors of the Company are Mr. Carlos Galindez Arias (holder of Venezuelen Passport Number 137261792) of Estado Miranda Mcpio, Zamora Parr., Guatire 1192, Urb. Castillejo Sector Cjto Re, Fuente, QTA B15-01-29 945100290SN, Ventura, Venezuela and Mr. Richard Rothenberg (holder of American Passport Number 473468141) of 258, Country Club Road, Palm Beach, Florida 33480-3312, United States of America.

3.   Directors of the Company shall hold office indefinitely or until they resign or are removed from the office of director in terms of law.

**COMPANY SECRETARY**

7. The Company Secretary is Mr. Richard Rothenberg (holder of American Passport Number 473468141) of 258, Country Club Road, Palm Beach, Florida 33480-3312, United States of America.

**REPRESENTATION**

6

8.    1.    Deeds of whatever nature engaging the Company and all other documents purporting to bind the Company, as well as cheques, bills of exchange, promissory notes and other negotiable instruments shall be signed, made, executed, drawn, accepted and endorsed, as the case may be, on behalf of the Company, by any Director.

2.    Any Director may represent the Company in judicial proceedings; provided that no proceedings may be instituted by the Company without the Board's authority. Nothing herein contained shall prevent the Board from convalidating any judicial action taken by the Director in anticipation of its approval.

3. In addition to and without prejudice to paragraphs 1. and 2. above, the Board may from time to time by resolution delegate such powers for a specific purpose or transaction/class of transactions, to any one Director and/or other person or persons, jointly or severally.

**PRIVATE EXEMPT COMPANY**

9.    The Company is a private exempt company.  Accordingly:

(a)    the right to transfer shares in the Company is restricted in the manner hereinafter stipulated;

(b)    the number shareholders or debenture holders of the Company is limited to (50) provided that when two or more persons hold jointly one or more shares or debentures in the Company, they shall be considered as a single person for the purposes of this clause;

(c)    No body corporate is a director of the Company, and neither the Company nor any of the directors is party to an arrangement whereby the policy of the Company is capable of being determined by persons other than the directors, members or debenture holders thereof.

(d)    any invitation to the public to subscribe for any shares or debentures of the Company is hereby prohibited.

7

**DURATION**

10.    The Company is constituted for an indefinite period of time.


Certified true copy


Mr. Richard Rothenberg
*Company Secretary*

## ARTICLES OF ASSOCIATION

**PRELIMINARY**

1.    The Regulations contained in Part I of the First Schedule (hereinafter referred to as "the First Schedule") to the Companies Act (hereinafter referred to as "the Act") shall apply to the Company save in so far as they are excluded or varied hereby.

2.    The Company is a private company and Part II of the First Schedule shall also apply to the Company with the exception of Regulations 1 and 3 thereof.

**SHARE CAPITAL AND SHARES**

3.    1.    The shares in the original or any increased capital may be divided into several classes and there may  be attached thereto respectively  any preferential, deferred or other special rights,  privileges,  conditions  or restrictions, whether in regard to voting, dividend, return of capital or otherwise as the Company in General Meeting may from time to time determine by an extraordinary resolution carried in accordance with these Articles.

2.    The Company may, by an extraordinary resolution of the Company in General Meeting carried in accordance with these Articles, and subject to the approval of a simple majority of the holders of the issued shares of that class and of any other class affected thereby, authorise the change of any shares in the Company from one class of shares to another, or the variation of the rights attached to any class of shares in the Company, as well as authorise the removal, whether wholly or in part, of the division of the shares of the Company into several classes.

3.    Regulations 1 to 3 of Part I of the First Schedule shall not apply to the Company.

9

**TRANSFER AND TRANSMISSION OF SHARES** – continued

**SHARE CAPITAL AND SHARES** - continued

4.      Any unissued shares of the Company shall be at the disposal of the General Meeting which may by an extraordinary resolution carried in accordance with these Articles allot, grant options over or otherwise dispose of them to such persons, at such time and for such consideration and upon such terms and conditions as may be determined thereby.

5.      Ordinary Shares in the Company shall grant the right of one (1) vote for every Share held; they shall have the right to receive dividends and distributions of assets upon winding up and they may be pledged by the holder or holders thereof.

6.      Where a shareholder is an unemancipated minor, bankrupt, interdicted or otherwise incapacitated, the rights of that shareholder shall vest in and be exercised by his tutor, curator or other legal representative.

7.      Where two or more persons hold one or more shares in the Company jointly, they shall be treated as a single member, and the name of only one of such persons shall be entered in the register of members. Such person shall be elected by the joint holders and shall for all intents and purposes be deemed vis-à-vis the Company to be the member of the Company in respect of all the shares so held.

**TRANSFER AND TRANSMISSION OF SHARES**

8.      1.      Shares may be freely transferred "inter vivos" only as follows:

                (i)     in favour of any other holder of shares in the Company; and
                (ii)    in favour of any person or persons as may be approved by an extraordinary resolution of the Company taken at a General Meeting.

1

**TRANSFER AND TRANSMISSION OF SHARES** – continued

2.      In all other cases, shares shall be transferred "inter vivos" in accordance
with the following procedures:

(i)      If the holder of any shares (hereinafter referred to as "the
transferring member") wishes to transfer his shares or any of
them, he shall notify the Board by notice in writing (referred to as
a "transfer notice") to the effect that he wishes to transfer the said
shares.

(ii)     The said transfer notice shall specify the number of shares which
the transferring member wishes to transfer and the sum estimated
by the transferring member to be the value of each such share.
The transferring member shall not be entitled to revoke a
transfer notice without the consent in writing of the Board.

(iii)    The receipt by the Board of a transfer notice shall be deemed for
all intents and purposes to constitute the Board agent for the sale
of the said shares at a fair value which shall be ascertained as
follows:

a)      If the Board shall approve the value estimated by  the
transferring member as the value of the shares, that sum
shall be the fair value.

b)      If the Board, at their discretion, shall not approve the value
estimated by the transferring member, they shall
immediately request the Auditor of the Company to make,
in writing, a valuation of the current value of the said

**TRANSFER AND TRANSMISSION OF SHARES** – continued

shares, and the value thus fixed by the Auditor shall be the fair value, which value shall be final and binding and not subject to appeal.

c)    If for any reason the Auditor shall refuse to, or for any other reason shall not make the said valuation, the Board shall request any other person whom they think fit to make the said valuation in the same manner as described in sub-paragraph (b) of this paragraph, and the value fixed by this person shall be the fair value, which value shall also be final and binding and not subject to appeal.

(iv)    When the fair value of the shares to be transferred shall have been determined in the manner described in paragraph (iii) hereof, the Board shall cause a notice in writing to be sent to the transferring member informing him of the fair value of the shares, and shall also cause notice to be sent to every holder of shares in the Company of the same category as those which are to be transferred, stating the number and the fair value of the shares, and shall therein invite each such holder of shares to give notice in writing within thirty (30) days whether he is willing to purchase any, and if so, what maximum number of the said shares.

(v)    At the expiration of the said thirty (30) days, the Board shall allocate the said shares to or amongst the holders of shares in the Company who shall have expressed their willingness to purchase in proportion to their holding of such shares in the Company.

(vi)    The transferring member shall complete and execute transfers of the said shares in accordance with the allocation by the Board, in exchange for the consideration determined as above, and shall surrender to the Board his share certificate.

1

**TRANSFER AND TRANSMISSION OF SHARES – continued**

(vii)    If the Board shall be unable to find a purchaser for all or any of the shares which the transferring member wishes to transfer amongst the holders of shares in the Company, the Board shall notify the transferring member accordingly who may then transfer the said shares to any person and at any price as may be agreed between the transferring member and the said person.

9.    Shares may be freely transmitted "causa mortis" only in the following cases:

(i)    in favour of any other shareholder;

(ii)    in favour of the spouse of the deceased shareholder;

(iii)    in favour of any ascendant or descendant in the direct line of the deceased shareholder; and

(iv)    in favour of any other person or persons as may be approved by an extraordinary resolution of the Company taken at a General Meeting.

10.    1.    Transmissions of shares "causa mortis" not falling under Article 9 shall be regulated "mutatis mutandis" in the manner set out in Article 8 hereof as if the shares which cannot be freely transmitted were shares which cannot be freely transferred.

2.    Shares subject to a transmission "causa mortis" falling under paragraph 1. hereof shall not have the right to vote until they are registered in the name of other shareholders or of the beneficiaries.

11.    Notwithstanding anything to the contrary, where shares are registered in the name of a person, the benefits, rights and other advantages arising from the ownership thereof shall, unless or until otherwise determined by agreement or Court judgement, continue to be vested in and enjoyed by the said person although such ownership may be affected by the transmission happening on the death of his or her spouse.

12.    No part of a share may form the object of a transfer or a transmission.

**TRANSFER AND TRANSMISSION OF SHARES** – continued

13.    Regulations 14, 17 to 21 (both inclusive) of Part I of the First Schedule shall not
       apply to the Company.

**GENERAL MEETINGS**

14.    No business shall be transacted at any General Meeting of the Company unless
       a quorum is present at the time when the meeting proceeds to business. One or
       more members, present in person or by proxy, having the right to attend and
       vote at the Meeting and holding in the aggregate at least fifty-one per cent
       (51%) in nominal value of all the shares conferring that right shall be a quorum.

15.    An ordinary resolution shall be deemed to have been validly carried only if
       consented to by a member or members having the right to attend and vote at
       the Meeting and holding in the aggregate at least fifty-one per cent (51%) in
       nominal value of all the shares conferring that right.

16.    1. An extraordinary resolution can only be taken at a meeting of the Company
          of which notice specifying the intention to propose the text of the
          resolution as an extraordinary resolution and the principal purpose
          thereof has been duly given.

       2.    An extraordinary resolution shall be required for the following: -
             i.     alterations and/or amendments to the Memorandum and Articles
                    of Association, except for the alteration of the registered address
                    of the Company;
             ii.    dissolution of the Company;
             iii.   wherever so required in terms of these Articles.

       3.    All resolutions other than those listed in paragraph 2 shall be ordinary
             resolutions.

**GENERAL MEETINGS** – continued

4.   An extraordinary resolution shall be deemed to have been validly carried only if consented to by a number of members having the right to attend and vote at the Meeting and holding sixty-six per cent (66%) in nominal value of all the shares conferring that right.

17.   A resolution in writing signed by all the members for the time being entitled to receive notice of and to attend and vote at the General Meetings shall be as valid and effective as if the same had been passed at a General Meeting of the Company duly convened and held and the provisions of article 155 of the Act shall not apply. Annual General Meetings of the Company may be held in accordance with this Article, provided that a resolution in writing as aforesaid shall be void if it purports to remove a director or an auditor before the expiration of his term of office, or otherwise purports to deprive the auditors of the right granted to them by virtue of article 155 of the Act.

18.   1. The provisions of Articles 14 to 18 (both inclusive) shall apply 'mutatis mutandis', as applicable, to meetings of the holders of each class of shares in the Company.

2. Regulation 36 of Part I of the First Schedule shall not apply to the Company. Regulation 48 of Part I of the First Schedule shall be read and construed as if the words "not less than twenty four hours", wherever they occur, were omitted.

**DIRECTORS**

19.   The Directors may elect a chairman of their meetings and determine the period for which he is to hold office, provided that if no chairman is elected, or if at any meeting the chairman is not present within half an hour after the time appointed for holding the same, the Directors present may choose one of their number to be chairman of the meeting.

**DIRECTORS – continued**

20.  The business of the Company shall be managed by the Board which may exercise all such powers of the Company as are not by the Act or by the Memorandum and Articles of the Company required to be exercised by the Company in General Meeting or in respect of which specific provision is otherwise made in these Articles.

21.  Without prejudice to the provisions of article 145 of the Act, no Director shall be disqualified by his position as Director from entering into any contract or arrangement with the Company, and a Director may vote and be taken into account for the purpose of constituting a quorum at meetings in which any contract or arrangement in which he may in any way be interested is due to be discussed, and he shall be entitled to retain for his own use and benefit all profits and advantages accruing to him therefrom.

22.  A Director of the Company may not, in competition with the Company and without the approval of the same Company given at a General Meeting, carry on business on his own account or on account of others; nor may he be a partner with unlimited liability in another partnership or a director of a company which is in competition with the Company.

23.  A Director may hold any other office of profit under the Company (other than that of Auditor) on such terms as to remuneration and otherwise as the Board may determine.

24.  A Director may at any time, generally or for a specified time, appoint any person to be his alternate Director. The person so appointed shall have the right to attend meetings of the Board and to sign and vote thereat for the Director in his absence. Any such appointment must be in writing and must be deposited at the registered office of the Company. A Director, who is also an alternate Director, shall be entitled, in addition to his own vote, to a separate vote on behalf of the Director he is representing. An alternate Director shall "ipso facto" vacate office if his principal ceases for any reason to be a Director.

16

**DIRECTORS** -- continued

25.  A Director may, and the Company Secretary on requisition of a Director shall, at
     any time summon a meeting of the Directors. Notice of a meeting of the Board
     shall be given to all Directors at the time, whether or not present in Malta, at
     least seven (7) days prior to the meeting, unless all Directors agree to a shorter
     period of notice or to waive the right to notice altogether.

26.  The quorum at a board meeting shall be one (1) Director. If there shall be three
     (3) or more Directors in office, then the quorum shall be a simple majority of the
     total number of Directors in office. Where a Director has been appointed as an
     alternate Director in order to attend a particular meeting or meetings of the
     Board and to sign and vote thereat, the number of Directors he is so
     representing shall also be taken into consideration for the purposes of the quorum.

27.  The Directors may meet together for the despatch of business, adjourn and
     otherwise regulate their meetings as they think fit. Decisions related to all
     questions arising at any meeting shall be made by a majority of votes. In case of
     an equality of votes, the chairman of the meeting shall not be entitled to a
     second or casting vote.

28.  A Director shall be deemed to be present at any meeting other than a Board
     meeting if he participates by telephonic or other means and all persons
     participating in the Meeting, including said Director, are able to hear each other.

29.  A resolution in writing signed by all the Directors for the time being entitled to
     receive notice of a meeting of the Directors shall be as valid and effectual as if it
     had been passed at a meeting of the Directors duly convened and held. Any
     such resolution may consist in several documents in like form each signed by a
     Director, so however that any Director who is also acting in the capacity of an
     alternate director appointed in accordance with Article 24 may opt to sign one
     (1) such document only.

**DIRECTORS – continued**

30.  Regulations 54, 57 to 63 (both inclusive), 65 and 66 of Part I of the First
     Schedule shall not apply to the Company. All references in Part I of the First
     Schedule to retirement of Directors by rotation shall be disregarded.

**SINGLE MEMBER COMPANY**

31.  During such time as the Company shall be a single member company in terms
     of and for the purposes of article 212 of the Act, the provisions of article 212(7)
     and (8) of the Act shall apply as and where appropriate and in all cases in the
     event of any conflict between article 212 of the Act and any Article.

**DIVIDENDS**

32.  All dividends shall be declared and paid according to the nominal value of the
     shares. Regulation 76 of Part I of the First Schedule shall not apply to the
     Company.

**COMPANY SECRETARY**

33.  Without prejudice to the provisions of the Act regulating the appointment and
     functions of the Company Secretary, the appointment or replacement of the
     Company Secretary and the conditions under which he shall hold office shall be
     determined by the Directors.

34.  Subject to the above, the Company Secretary shall be responsible for keeping:

     (a)    the minute book of general meetings of the Company;
     (b)    the minute book of meetings of the Board of Directors;
     (c)    the register of members; and
     (d)    the register of debentures.

18

**COMPANY SECRETARY** - continued

> The Company Secretary shall also take all reasonable steps to ensure that proper notices are given of all meetings and to ensure that all returns and other documents of the Company, the preparation or delivery of which falls within the statutory duties of the Company Secretary, are prepared and delivered in accordance with the requirements of the Act.

35.    Regulation 72 of Part I of the First Schedule shall not apply to the Company.

**NOTICE**

36.    Every member shall specify his address to the Company for the giving to him of notices. A notice shall be deemed to have been served by the posting of such notice by registered mail to the said address, and in the case of a notice of a meeting at the expiration of forty-eight hours after the notice is posted, and in any other case at the time at which the notice would be delivered in the ordinary course by post. A member may ask the Company to simultaneously transmit notices by way of fax transmission or e-mail at any number or e-mail address communicated to the Company for this purpose.

37.    Notice of every General Meeting shall only be given, in the manner hereinbefore authorised, to:

    (a)    every Director;

    (b)    every registered member entitled to attend and vote at the Meeting, who has specified an address to the Company for this purpose; and

    (c)    the auditor for the time being of the Company.

19

**NOTICE** – continued

38.   Regulations 81 and 82 of Part I of the First Schedule shall not apply to the
      Company.

Certified true copy

Mr. Richard Rothenberg
*Company Secretary*

20

# Exhibit C

# COMPANIES ACT, 1995

## MALTA

## ALTERED
## CERTIFICATE OF REGISTRATION
### LIMITED LIABILITY COMPANY

### (PURSUANT TO SECTION 80)

**CT Energia Oil and Gas Ltd**

Previous Name of Company

**C 73377**

Registration Number

This is to certify that the above-mentioned Company
has changed its name to

**Elemento Oil & Gas Ltd**

New Name of Company

*Tous copy of original
this 25/10/2016*

**3rd August 2016**

Effective Date of Alteration

**Dr. Nathania Tabone** LL.D.
*Notary Public Malta*
**Commissioner for Oaths**
Mob: +356 7937 7844
Email: nutar.tabone@gmail.com
536, St. Joseph High Road, St. Venera, Malta

**Jean Karl Portelli**

*f/ Registrar of Companies*

Dated this ....**3rd**.......... day of ......**August**............................ 20....**16**........

# *Registrar of Companies*

## MALTA

**Our Ref.:  C 72520**

21st October 2016

### TO WHOM IT MAY CONCERN

This is to certify that Elemento Ltd of 85, St. John Street, Valletta VLT 1165, Malta was registered under the Laws of Malta on the 6th October 2015 and is still so registered.

According to our records the present shareholder of the company is:

| Name | Number of Shares |
|------|------------------|
| Elemento Oil and Gas Ltd (Company Reg. No. C 73377) | 1,165 Ordinary Shares of USD 1.1224 each |

*Certified original issued
by the registrar of companies
this 25/10/2016*

The present directors of the company are:

Carlos Galindez Arias (Venezuelan Passport No. 137261792)
Richard Rothenberg (American Passport No. 473468141)

Dr. Nathania Tabone
Notary Public Malta
Commissioner for Oaths
536, St. Joseph High Road, Hamrun
Mob. 79377844

The present secretary of the company is:

Richard Rothenberg (American Passport No. 473468141)

This information is provided on the basis of the documents registered in respect of the company.

ARTHUR PIZZUTO

f/Registrar of Companies

'Doc A'



**MEMORANDUM OF ASSOCIATION**

**NAME**

1.    The name of the Company is Elemento Ltd.

**REGISTERED OFFICE**

2.    The registered office of the Company is at 85, St. John Street, Valletta VLT
      1165, Malta, or at any other address in Malta as the Board of Directors may
      determine from time to time.

**OBJECTS / POWERS**

3.    The main object of the Company is:

      (a)    To purchase or otherwise acquire, under any title whatsoever, to hold,
             manage and dispose of, by any title valid at law, movable or immovable
             property of whatever nature including any rights thereon,

      The other objects of the Company shall be·

      (b)    To receive from the assets referred to in paragraph (a) above dividends,
             capital gains, interest, income derived from investments generally
             including income or gains realised upon their disposal, rents, royalties
             and similar income, whether arising in or outside Malta, and profits or
             gains attributable to a permanent establishment (including a branch)
             whether situated in or outside Malta;

1

'Doc.A'

**OBJECTS / POWERS - continued**

and

(c)    To do all such other things as may be deemed conducive or ancillary to
the attainment of the above objects or any one of them.

4.    In order to achieve its objects, the Company shall have 'inter alia' the following
powers:

(a)    To open, close and operate bank accounts for the Company in
accordance with applicable laws and regulations,

(b)    To appoint agents of the Company in any part of the world,

(c)    To subcontract any work, engagements, contracts or instructions;

(d)    To apply for, register, purchase, or by other means acquire, hold,
develop, exploit, protect and renew any patents, royalties, copyrights,
grants, options, protections and concessions and any other exclusive
and non-exclusive rights, and to grant licences or rights in respect
thereof;

(e)    To enter into partnership or into any arrangements for sharing profits, co-
operation, joint venture, reciprocal concession, or otherwise with any
person or entity carrying on or engaged in, or about to engage in or carry
on any business or transaction which this Company is authorised to carry
on, so as directly or indirectly to benefit this Company;

2



'Doc.A'

**OBJECTS / POWERS** - continued

(f)   To purchase or otherwise acquire and take over any business, property, goodwill, liabilities or undertaking within or related to the objects of the Company and which may be deemed expedient, or to become interested in and to carry on, or dispose or remove, or put an end to the same or otherwise deal with any such business or undertaking;

(g)   To take over and carry on any contract entered into by any person as may be deemed necessary or desirable for carrying on the business of the Company or for the general conduct or management of its affairs and for the doing of such other things as may be deemed conducive to the attainment of the Company's objects,

(h)   To enter into any arrangements with any government or authority that may seem conducive to the attainment of the Company's objects or any of them, and to obtain from any such government or authority any charters, decrees, rights, privileges or concessions which the Company may consider conducive to the attainment of its objects, and to carry out, exercise, and comply with any such charter, decree, right, privilege and concession;

(i)   To invest or hold shares in any other company, partnership or business, and to participate in the management or activities thereof;

(j)   To give loans, advances and credit facilities to third parties, only where necessary in relation to the Company's business;

(k)   To acquire and dispose of, by any title valid at law, movable or immovable property, whether for commercial or other purposes, and the consideration for any such acquisition or disposal can be by credit or in cash or in kind;

3

'Doc.A'

**OBJECTS / POWERS** - continued

(l) To hold such property and to invest, lease, hire or in any other manner
employ, improve, manage or develop any of its assets in such manner as
may from time to time be decided upon by the Company;

(m) To sell or otherwise dispose of the whole or any part of the undertaking
of the Company for such consideration as it may think fit, and in
particular for shares or debentures of any company purchasing the
same;

(n) To issue debentures and to borrow and raise money in such amounts
and manner and upon such terms and to any limit as the Company shall
think fit, subject to the terms of this Memorandum and Articles of
Association, and when thought desirable to execute and issue any
security of such kind, subject to such conditions, for such amounts,
payable in such place and manner and to such persons as the Company
shall deem fit, including the power to issue as primary security, or as
collateral to any other security, debenture stock (perpetual or otherwise)
mortgages, charges, hypothecation, pledge, lien or other security over
the whole or any part of its assets present or future (including uncalled
capital) as the Company shall deem fit;

(o) To guarantee, even by hypothecating the Company's property, the
payment of any monies, or the honouring of any debentures, debenture
stock, bonds, mortgages, charges, obligations, interests, dividends and
any other securities issued, granted or entered into, or the performance
of any contracts or engagements entered into, by any associated
company or any other entity or person, with or to any other company,
entity or person, and to give indemnities and guarantees of any kind,

(p) To sell on hire-purchase terms and to give credit on any products and
services provided by the Company under any title or contract, and to
draw, make, accept, endorse, discount, execute, issue and negotiate

4

'Doc.A'

**OBJECTS / POWERS** - continued

> promissory notes, bills of exchange, bills of lading or other negotiable or transferable instruments;

(q) To constitute and form any subsidiary or associate companies and to enter into any mergers, demergers or reconstructions for the furthering and the better attainment of the objects of the Company;

(r) To pay all expenses incidental to the formation and registration of the Company as well as all expenses connected with the purchase of any properties, businesses, rights and others, which may be required for the purposes of the Company and for the fulfilment and putting into effect of any of its objects;

(s) To distribute amongst the members any property of the Company including, but not limited to, property 'in specie', whether by way of dividend, upon a return of capital or by any other means, but so that no such distribution shall amount to a reduction of capital of the Company except with the sanction (if any) for the time being required by law;

(t) To do anything or to carry out such other transactions as may be conducive or incidental to the attainment of the above objects or any one of them.

Nothing in the foregoing shall be construed as enabling or empowering the Company to carry on any activity, business or service which requires a licence or is otherwise regulated under the Banking Act, Chapter 371 of the Laws of Malta, the Financial Institutions Act, Chapter 376 of the Laws of Malta, the Investment Services Act, Chapter 370 of the Laws of Malta, the Financial Markets Act, Chapter 345 of the Laws of Malta, the Insurance Business Act, Chapter 403 of the Laws of Malta, the Insurance Intermediaries Act, Chapter 487 of the Laws of Malta nor the Special Funds (Regulation) Act, Chapter 450 of the Laws of Malta or the Trusts and Trustees Act, Chapter 331 of the Laws of Malta and the Company Services Providers Act, Chapter 529 of the Laws of Malta.

5



'Doc.A'

**OBJECTS / POWERS** - continued

The exercise by the company of the foregoing objects and powers is subject to such prohibitions and restrictions as are provided by and under the mandatory provisions of any law in force for the time being including the Companies Act, Chapter 386 of the Laws of Malta, the Investment Services Act, Chapter 370 of the Laws of Malta, the Insurance Business Act, Chapter 403 of the Laws of Malta, the Insurance Intermediaries Act, Chapter 487 of the Laws of Malta, the Banking Act, Chapter 371 of the Laws of Malta, the Financial Institutions Act, Chapter 376 of the Laws of Malta, the Financial Markets Act, Chapter 345 of the Laws of Malta, the Special Funds (Regulation) Act, Chapter 450 of the Laws of Malta, the Trusts and Trustees Act, Chapter 331 of the Laws of Malta and the Company Services Providers Act, Chapter 529 of the Laws of Malta and of any regulations or rules issued thereunder and any amendment, modification or substitution of any such laws, regulations or rules"

**CAPITAL**

5.  1.  The Authorised Share Capital of the Company is one thousand three and seven point sixty US Dollars (USD 1,307.60) divided into one thousand one hundred and sixty five (1,165) Ordinary shares of one point one two two four US Dollars (US 1.1224) each;

    2.  The Issued Share Capital of the Company is one thousand three hundred and seven point sixty US Dollars (USD 1,307.60) divided into one thousand one hundred and sixty five (1,165) Ordinary shares of one point one two two four US Dollars (US 1.1224) each which have been subscribed for and allotted, fully paid up, as follows:-

        CT Energia Oil and Gas Ltd.          1,165 Ordinary shares
        (C 72520)
        85,
        St. John Street
        Valletta VLT1165
        Malta

6

'Doc.A'

**DIRECTORS**

6.   1.   The Board of Directors of the Company (hereinafter referred to as "the
          Board") shall consist of not less than two (2) and not more than five (5)
          Directors.

     2.   The Directors of the Company are Mr. Alessandro Bazzoni (holder of
          Italian Passport Number YA5280551) of Via Cantonale 8A, 6900
          Lugano, Switzerland and Mr. Francisco D' Agostino (holder of Spanish
          Passport Number XD359606) of Calle Londres, Entre Nueva York Y
          Caroni, Torre Dayco, PH. Las Mercedes, Caracas 1080, Venezuela.

     3.   Directors of the Company shall hold office indefinitely or until they resign
          or are removed from the office of director in terms of law.

**COMPANY SECRETARY**

     7.   The Company Secretary is Mr. Richard Rothenberg (holder of
          American Passport Number 473468141) of 500 E Broward Blvd, Fort
          Lauderdale, FL 33394 United States of America

**REPRESENTATION**

8.   1.   Deeds of whatever nature engaging the Company and all other
          documents purporting to bind the Company, as well as cheques, bills of
          exchange, promissory notes and other negotiable instruments shall be
          signed, made, executed, drawn, accepted and endorsed, as the case
          may be, on behalf of the Company, by any Director.

     2.   Any Director may represent the Company in judicial proceedings;
          provided that no proceedings may be instituted by the Company without
          the Board's authority.  Nothing herein contained shall prevent the Board
          from convalidating any judicial action taken by the Director in anticipation
          of its approval.

7

'Doc.A'

**REPRESENTATION** - continued

3.  In addition to and without prejudice to paragraphs 1. and 2. above, the Board may from time to time by resolution delegate such powers for a specific purpose or transaction/class of transactions, to any one Director and/or other person or persons, jointly or severally.

**PRIVATE EXEMPT COMPANY**

9.  The Company is a private exempt company Accordingly.

    (a)   the right to transfer shares in the Company is restricted in the manner hereinafter stipulated,

    (b)   the number shareholders or debenture holders of the Company is limited to (50) provided that when two or more persons hold jointly one or more shares or debentures in the Company, they shall be considered as a single person for the purposes of this clause;

    (c)   No body corporate is a director of the Company, and neither the Company nor any of the directors is party to an arrangement whereby the policy of the Company is capable of being determined by persons other than the directors, members or debenture holders thereof.

    (d)   any invitation to the public to subscribe for any shares or debentures of the Company is hereby prohibited.

**DURATION**

10.  The Company is constituted for an indefinite period of time.

Mr. Alessandro Bazzoni
F/CT Energia Oil and Gas Ltd.
Shareholder

True copy of original
this 25/11/2016

8

Dr. Nathania Tabone
Notary Public Malta
Commissioner for Oaths
536 St. Joseph High Road, Hamrun

'Doc.A'

## ARTICLES OF ASSOCIATION

### PRELIMINARY

1.   The Regulations contained in Part I of the First Schedule (hereinafter referred to as "the First Schedule") to the Companies Act (hereinafter referred to as "the Act") shall apply to the Company save in so far as they are excluded or varied hereby.

2.   The Company is a private company and Part II of the First Schedule shall also apply to the Company with the exception of Regulations 1 and 3 thereof.

### SHARE CAPITAL AND SHARES

3.   1.   The shares in the original or any increased capital may be divided into several classes and there may be attached thereto respectively any preferential, deferred or other special rights, privileges, conditions or restrictions, whether in regard to voting, dividend, return of capital or otherwise as the Company in General Meeting may from time to time determine by an extraordinary resolution carried in accordance with these Articles

2.   The Company may, by an extraordinary resolution of the Company in General Meeting carried in accordance with these Articles, and subject to the approval of a simple majority of the holders of the issued shares of that class and of any other class affected thereby, authorise the change of any shares in the Company from one class of shares to another, or the variation of the rights attached to any class of shares in the Company, as well as authorise the removal, whether wholly or in part, of the division of the shares of the Company into several classes.

3.   Regulations 1 to 3 of Part I of the First Schedule shall not apply to the Company.

9

'Doc.A'

**SHARE CAPITAL AND SHARES** - continued

4      Any unissued shares of the Company shall be at the disposal of the General
       Meeting which may by an extraordinary resolution carried in accordance with
       these Articles allot, grant options over or otherwise dispose of them to such
       persons, at such time and for such consideration and upon such terms and
       conditions as may be determined thereby.

5.     Ordinary Shares in the Company shall grant the right of one (1) vote for every
       Share held; they shall have the right to receive dividends and distributions of
       assets upon winding up and they may be pledged by the holder or holders
       thereof.

6.     Where a shareholder is an unemancipated minor, bankrupt, interdicted or
       otherwise incapacitated, the rights of that shareholder shall vest in and be
       exercised by his tutor, curator or other legal representative.

7.     Where two or more persons hold one or more shares in the Company jointly,
       they shall be treated as a single member, and the name of only one of such
       persons shall be entered in the register of members. Such person shall be
       elected by the joint holders and shall for all intents and purposes be deemed vis-
       à-vis the Company to be the member of the Company in respect of all the
       shares so held.

**TRANSFER AND TRANSMISSION OF SHARES**

8.     1.     Shares may be freely transferred "inter vivos" only as follows·

10

'Doc.A'

**TRANSFER AND TRANSMISSION OF SHARES** – continued

     (i)   in favour of any other holder of shares in the Company; and

     (ii)  in favour of any person or persons as may be approved by an extraordinary resolution of the Company taken at a General Meeting.

2.     In all other cases, shares shall be transferred "inter vivos" in accordance with the following procedures:

     (i)   If the holder of any shares (hereinafter referred to as "the transferring member") wishes to transfer his shares or any of them, he shall notify the Board by notice in writing (referred to as a "transfer notice") to the effect that he wishes to transfer the said shares.

     (ii)  The said transfer notice shall specify the number of shares which the transferring member wishes to transfer and the sum estimated by the transferring member to be the value of each such share  The transferring member shall not be entitled to revoke a transfer notice without the consent in writing of the Board.

     (iii)  The receipt by the Board of a transfer notice shall be deemed for all intents and purposes to constitute the Board agent for the sale of the said shares at a fair value which shall be ascertained as follows:

          a)   If the Board shall approve the value estimated by the transferring member as the value of the shares, that sum shall be the fair value.

          b)   If the Board, at their discretion, shall not approve the value estimated by the transferring member, they shall immediately request the Auditor of the Company to make, in writing, a valuation of the current value of the said

11

'Doc.A'

**TRANSFER AND TRANSMISSION OF SHARES** – continued

shares, and the value thus fixed by the Auditor shall be the fair value, which value shall be final and binding and not subject to appeal.

c)  If for any reason the Auditor shall refuse to, or for any other reason shall not make the said valuation, the Board shall request any other person whom they think fit to make the said valuation in the same manner as described in sub-paragraph (b) of this paragraph, and the value fixed by this person shall be the fair value, which value shall also be final and binding and not subject to appeal.

(iv)  When the fair value of the shares to be transferred shall have been determined in the manner described in paragraph (iii) hereof, the Board shall cause a notice in writing to be sent to the transferring member informing him of the fair value of the shares, and shall also cause notice to be sent to every holder of shares in the Company of the same category as those which are to be transferred, stating the number and the fair value of the shares, and shall therein invite each such holder of shares to give notice in writing within thirty (30) days whether he is willing to purchase any, and if so, what maximum number of the said shares.

(v)  At the expiration of the said thirty (30) days, the Board shall allocate the said shares to or amongst the holders of shares in the Company who shall have expressed their willingness to purchase in proportion to their holding of such shares in the Company.

(vi)  The transferring member shall complete and execute transfers of the said shares in accordance with the allocation by the Board, in exchange for the consideration determined as above, and shall surrender to the Board his share certificate.

12

'Doc.A'

**TRANSFER AND TRANSMISSION OF SHARES** – continued

(vii)   If the Board shall be unable to find a purchaser for all or any of the shares which the transferring member wishes to transfer amongst the holders of shares in the Company, the Board shall notify the transferring member accordingly who may then transfer the said shares to any person and at any price as may be agreed between the transferring member and the said person.

9.   Shares may be freely transmitted "causa mortis" only in the following cases:

(i)   in favour of any other shareholder;

(ii)   in favour of the spouse of the deceased shareholder;

(iii)   in favour of any ascendant or descendant in the direct line of the deceased shareholder; and

(iv)   in favour of any other person or persons as may be approved by an extraordinary resolution of the Company taken at a General Meeting.

10.   1.   Transmissions of shares "causa mortis" not falling under Article 9 shall be regulated "mutatis mutandis" in the manner set out in Article 8 hereof as if the shares which cannot be freely transmitted were shares which cannot be freely transferred.

2.   Shares subject to a transmission "causa mortis" falling under paragraph 1. hereof shall not have the right to vote until they are registered in the name of other shareholders or of the beneficiaries.

11   Notwithstanding anything to the contrary, where shares are registered in the name of a person, the benefits, rights and other advantages arising from the ownership thereof shall, unless or until otherwise determined by agreement or Court judgement, continue to be vested in and enjoyed by the said person although such ownership may be affected by the transmission happening on the death of his or her spouse.

12.   No part of a share may form the object of a transfer or a transmission.

13

'Doc.A'

**TRANSFER AND TRANSMISSION OF SHARES – continued**

13.    Regulations 14, 17 to 21 (both inclusive) of Part I of the First Schedule shall not apply to the Company.

**GENERAL MEETINGS**

14.    No business shall be transacted at any General Meeting of the Company unless a quorum is present at the time when the meeting proceeds to business. One or more members, present in person or by proxy, having the right to attend and vote at the Meeting and holding in the aggregate at least fifty-one per cent (51%) in nominal value of all the shares conferring that right shall be a quorum.

15.    An ordinary resolution shall be deemed to have been validly carried only if consented to by a member or members having the right to attend and vote at the Meeting and holding in the aggregate at least fifty-one per cent (51%) in nominal value of all the shares conferring that right.

16.    1.    An extraordinary resolution can only be taken at a meeting of the Company of which notice specifying the intention to propose the text of the resolution as an extraordinary resolution and the principal purpose thereof has been duly given.

       2.    An extraordinary resolution shall be required for the following: -
             i.    alterations and/or amendments to the Memorandum and Articles of Association, except for the alteration of the registered address of the Company;
             ii.   dissolution of the Company;
             iii   wherever so required in terms of these Articles.

       3.    All resolutions other than those listed in paragraph 2 shall be ordinary resolutions.

14

'Doc.A'

**GENERAL MEETINGS – continued**

4.   An extraordinary resolution shall be deemed to have been validly carried
     only if consented to by a number of members having the right to attend
     and vote at the Meeting and holding sixty-six per cent (66%) in nominal
     value of all the shares conferring that right.

17.  A resolution in writing signed by all the members for the time being entitled to
     receive notice of and to attend and vote at the General Meetings shall be as
     valid and effective as if the same had been passed at a General Meeting of the
     Company duly convened and held and the provisions of article 155 of the Act
     shall not apply. Annual General Meetings of the Company may be held in
     accordance with this Article, provided that a resolution in writing as aforesaid
     shall be void if it purports to remove a director or an auditor before the expiration
     of his term of office, or otherwise purports to deprive the auditors of the right
     granted to them by virtue of article 155 of the Act

18.  1.   The provisions of Articles 14 to 18 (both inclusive) shall apply 'mutatis
          mutandis', as applicable, to meetings of the holders of each class of
          shares in the Company.

     2.   Regulation 36 of Part I of the First Schedule shall not apply to the
          Company. Regulation 48 of Part I of the First Schedule shall be read and
          construed as if the words "not less than twenty four hours", wherever
          they occur, were omitted.

**DIRECTORS**

19.  The Directors may elect a chairman of their meetings and determine the period
     for which he is to hold office, provided that if no chairman is elected, or if at any
     meeting the chairman is not present within half an hour after the time appointed
     for holding the same, the Directors present may choose one of their number to
     be chairman of the meeting.

15

'Doc.A'

## DIRECTORS – continued

20.   The business of the Company shall be managed by the Board which may exercise all such powers of the Company as are not by the Act or by the Memorandum and Articles of the Company required to be exercised by the Company in General Meeting or in respect of which specific provision is otherwise made in these Articles.

21.   Without prejudice to the provisions of article 145 of the Act, no Director shall be disqualified by his position as Director from entering into any contract or arrangement with the Company, and a Director may vote and be taken into account for the purpose of constituting a quorum at meetings in which any contract or arrangement in which he may in any way be interested is due to be discussed, and he shall be entitled to retain for his own use and benefit all profits and advantages accruing to him therefrom.

22.   A Director of the Company may not, in competition with the Company and without the approval of the same Company given at a General Meeting, carry on business on his own account or on account of others; nor may he be a partner with unlimited liability in another partnership or a director of a company which is in competition with the Company.

23.   A Director may hold any other office of profit under the Company (other than that of Auditor) on such terms as to remuneration and otherwise as the Board may determine.

24.   A Director may at any time, generally or for a specified time, appoint any person to be his alternate Director. The person so appointed shall have the right to attend meetings of the Board and to sign and vote thereat for the Director in his absence Any such appointment must be in writing and must be deposited at the registered office of the Company. A Director, who is also an alternate Director, shall be entitled, in addition to his own vote, to a separate vote on behalf of the Director he is representing. An alternate Director shall "ipso facto" vacate office if his principal ceases for any reason to be a Director.

16

'Doc A'

**DIRECTORS – continued**

25.    A Director may, and the Company Secretary on requisition of a Director shall, at
       any time summon a meeting of the Directors. Notice of a meeting of the Board
       shall be given to all Directors at the time, whether or not present in Malta, at
       least seven (7) days prior to the meeting, unless all Directors agree to a shorter
       period of notice or to waive the right to notice altogether.

26.    The quorum at a board meeting shall be one (1) Director. If there shall be three
       (3) or more Directors in office, then the quorum shall be a simple majority of the
       total number of Directors in office. Where a Director has been appointed as an
       alternate Director in order to attend a particular meeting or meetings of the
       Board and to sign and vote thereat, the number of Directors he is so
       representing shall also be taken into consideration for the purposes of the
       quorum.

27.    The Directors may meet together for the despatch of business, adjourn and
       otherwise regulate their meetings as they think fit. Decisions related to all
       questions arising at any meeting shall be made by a majority of votes. In case of
       an equality of votes, the chairman of the meeting shall not be entitled to a
       second or casting vote.

28.    A Director shall be deemed to be present at any meeting other than a Board
       meeting if he participates by telephonic or other means and all persons
       participating in the Meeting, including said Director, are able to hear each other.

29.    A resolution in writing signed by all the Directors for the time being entitled to
       receive notice of a meeting of the Directors shall be as valid and effectual as if it
       had been passed at a meeting of the Directors duly convened and held. Any
       such resolution may consist in several documents in like form each signed by a
       Director, so however that any Director who is also acting in the capacity of an
       alternate director appointed in accordance with Article 24 may opt to sign one
       (1) such document only.

17

'Doc A'

**DIRECTORS – continued**

30.   Regulations 54, 57 to 63 (both inclusive), 65 and 66 of Part I of the First
Schedule shall not apply to the Company. All references in Part I of the First
Schedule to retirement of Directors by rotation shall be disregarded.

**SINGLE MEMBER COMPANY**

31   During such time as the Company shall be a single member company in terms
of and for the purposes of article 212 of the Act, the provisions of article 212(7)
and (8) of the Act shall apply as and where appropriate and in all cases in the
event of any conflict between article 212 of the Act and any Article.

**DIVIDENDS**

32.   All dividends shall be declared and paid according to the nominal value of the
shares. Regulation 76 of Part I of the First Schedule shall not apply to the
Company.

**COMPANY SECRETARY**

33.   Without prejudice to the provisions of the Act regulating the appointment and
functions of the Company Secretary, the appointment or replacement of the
Company Secretary and the conditions under which he shall hold office shall be
determined by the Directors

34.   Subject to the above, the Company Secretary shall be responsible for keeping:

(a)   the minute book of general meetings of the Company,

(b)   the minute book of meetings of the Board of Directors;

(c)   the register of members; and

(d)   the register of debentures.

18

'Doc.A'

## COMPANY SECRETARY - continued

The Company Secretary shall also take all reasonable steps to ensure that proper notices are given of all meetings and to ensure that all returns and other documents of the Company, the preparation or delivery of which falls within the statutory duties of the Company Secretary, are prepared and delivered in accordance with the requirements of the Act.

35.  Regulation 72 of Part I of the First Schedule shall not apply to the Company.

## NOTICE

36.  Every member shall specify his address to the Company for the giving to him of notices. A notice shall be deemed to have been served by the posting of such notice by registered mail to the said address, and in the case of a notice of a meeting at the expiration of forty-eight hours after the notice is posted, and in any other case at the time at which the notice would be delivered in the ordinary course by post. A member may ask the Company to simultaneously transmit notices by way of fax transmission or e-mail at any number or e-mail address communicated to the Company for this purpose.

37.  Notice of every General Meeting shall only be given, in the manner hereinbefore authorised, to:

(a)   every Director;

(b)   every registered member entitled to attend and vote at the Meeting, who has specified an address to the Company for this purpose, and

(c)   the auditor for the time being of the Company.

19

'Doc A'

**NOTICE** – continued

38.   Regulations 81 and 82 of Part I of the First Schedule shall not apply to the
Company.

Mr. Alessandro Bazzoni
F/CT Energia Oil and Gas Ltd.
Shareholder

True copy of original.
this 25|10|2016

Dr. Nathania Tabone
Notary Public Malta
Commissioner for Oaths
536, St. Joseph High Road, Hamrun
Mob, 79377844

20



C 72520

C 72520/8.

## CT ENERGIA LTD.

Extraordinary Resolution in Writing signed by the Sole Member of CT ENERGIA LTD., a
limited liability company registered under the laws of Malta with registration number C
72520 (the "Company"), for the time being entitled to receive notice of and to attend and
vote at General Meetings of the Company in accordance with the Articles of Association of
the Company.

MF

2 5 JUL 2016

IT IS HEREBY RESOLVED that it being expedient and in the best interest of the Company to
do the following;

1.    To change the name of the Company from 'CT Energia Ltd.' to
'Elemento Ltd.'

FURTHER RESOLVED that the Memorandum and Articles of Association be hereby
substituted in its entirety by the attached annex marked "Doc A".

Thus resolved and signed this the 21st June, 2016

Mr. Alessandro Bazzoni
F/CT Energia Oil and Gas Ltd.
Sole Member

I am a copy of original
this 25/01/2016

Dr. Nathania Tabone
Notary Public Malta
Commissioner for Oaths
536, St. Joseph High Road, Hamrun
Mob. 79377844

# Exhibit D

C 73377

### CT ENERGIA OIL AND GAS LTD.

Extraordinary Resolution in writing signed by the Sole Shareholder of **CT ENERGIA OIL AND GAS LTD.** a limited liability company registered under the laws of Malta with registration number C 73377 (the" Company"), for the time being entitled to receive notice of and to attend and vote at General Meetings of the Company in accordance with the Articles of Association of the Company.

**IT IS HEREBY RESOLVED that it is in the best interests of the Company to do the following;**

1.   To appoint Mr. Francisco D' Agostino holder of Spanish passport number; XD359606 of Calle Londres, Entre Nueva York Y Caroni. Torre Dayco, PH. Las Mercedes, Caracas, 1080, Venezuela, as Director, Legal and Judicial Representative of the Company with immediate effect;

2.   To acknowledge and approve the transfer of one thousand (1,000) Ordinary Shares fully paid up and having a nominal value of one US Dollar (1USD) each, by an existing shareholder of the Company, namely Mr. Alessandro Bazzoni (holder of Italian passport number; YA5280551) of Via Cantonale 8A, Lugano 6900, Switzerland to Mr. Francisco D' Agostino holder of Spanish passport number; XD359606 of Calle Londres, Entre Nueva York Y Caroni. Torre Dayco, PH. Las Mercedes, Caracas, 1080,  Venezuela for the price of one thousand US Dollars (USD 1,000).

3.   Further to the above changes and transfer of shares following which the Company ceased in being a single member company, it is hereby resolves to substitute the Memorandum and Articles in its entirety by the attached annex marked "Doc. A"

Thus resolved and signed this day the 9th December, 2015.

Mr. Alessandro Bazzoni

Sole Shareholder

# Exhibit E

Form T

*C 72520/6*

No. of Company **C 72520**

REGISTRY
RECEIVED

- 5 JAN 2016

OF COMPANIES

**COMPANIES ACT, 1995**

**Notice of transfer or transmission of shares**

Pursuant to Section 120 (3)

**RD**

**1 3 JAN 2016**

Name of Company:   **CT ENERGIA LTD.**

Delivered by:   Mr. Alessandro Bazzoni

To the *Registrar of Companies:*

**CT ENERGIA LTD.** hereby gives notice in accordance with Section 120 (3) of the Companies Act, 1995 that (b) one thousand one hundred and sixty-five (1165) Ordinary shares having a nominal value of one point one two four US Dollars (USD 1.1224) per share (100% paid up) have been transferred as indicated hereunder.

| Name and Address of transferor | Name and Address of transferee/ person entitled to shares transmitted | No. of shares transferred / transmitted | Type and Class of shares |
|---|---|---|---|
| CT Energia Holding Ltd. (Registration Number: C 66394) of 85, St. John Street, Valletta, VLT 1165, Malta | CT Energia Oil and Gas Ltd. (Registration Number: C 73377) of 85, St. John Street, Valletta VLT 1165, Malta | 1165 | Ordinary |

The above transfer of shares has been registered with the company on the 9th December, 2015.

Signature .......................................
Mr. Alessandro Bazzoni
Director

Dated this the 9th December, 2015

# Exhibit F

```
0175 SUNTRUST BANK                                                              WTR0620D  RUN 29-JAN-2016 20:39  PAGE  4179
FULL TRANSACTION REPORT                                                                             FOR 29-JAN-2016


RCVD FROM BRIGHTPARK INVESTMENTS LLC   C/O CT CORP CORPORATION TRUST CTR
SENDER'S DDA # 1000148121824


TRN REF #: 20160129-00004179
--------------------------------------------------------------------------------
  **** MESSAGE ENVELOPE ****              ( BANK : 175 )

                                          SND DATE: 16/01/29
SRC:S1I CALLER:PERLICZ, RAUL              EXT:

RPT#       AMT:12,000,000.00              CUR:USD                   TRDR#
TEST: DUE:                                TYP:FTR/1000 FNDS:S CHG:DB:A CD:N COM:N CBL:N
--------------------------------------------------------------------------------
DBT D/1000148121824/                      CDT *A/026002561             ADV:FED
DEBIT VAL: 16/01/29                        CREDIT VAL: 16/01/29
DEPT:175                                   DEPT:175
BRIGHTPARK INVESTMENTS LLC                 STANDARD CHARTERED BANK LIMITED
C/O CT CORP CORPORATION TRUST CTR          NEW YORK, NY
1209 ORANGE STREET
WILMINGTON DE 19801                        COUNTRY OF RESIDENCY: US
SPECIAL INSTRUCTIONS:                      BNF:/3544063642001          CHG: BK?N
S1P K-HIGHPARK INVESTMENTS LLC             GNB SUDAMERIS BANK, S.A.


SNDR REF NUM:33983441                      ORIG TO BNF INFO:
                                           FURTHER CREDIT TO:
                                           CT ENERGIA OIL & GAS, LTD
                                           ACCT. # 24355467
                                           OBO CEDARIDGE INVESTMENTS S.A.


     **** CREDIT PAYMENT MESSAGE TEXT ****


(1510) TYPE/SUBTYPE CODE:
        TYPE CODE:                         10 (TRANSFER OF FUNDS)
        SUBTYPE CODE:                      00 (REGULAR TRANSFER)

(2000) AMOUNT:                             $12,000,000.00

(3100) SENDING BANK:
        ABA NUMBER:                        061000104
        SHORT NAME:                        STB ATLANTA GA
        ABA LOOKUP (AUX):                  SUNTRUST BANK
                                           ATLANTA, GA

(3320) SENDER REFERENCE:                   2016012900004179

(3400) RECEIVING BANK:
        ABA NUMBER:                        026002561
        SHORT NAME:                        STANDARD CHART
        ABA LOOKUP (AUX):                  STANDARD CHARTERED BANK LIMITED
                                           NEW YORK, NY

(3600) BUSINESS FUNCTION CODE:             CTP (CUSTOMER TRANSFER PLUS)

(4200) BENEFICIARY:                        D/3544063642001
                                           GNB SUDAMERIS BANK, S.A.

(4320) REFERENCE FOR BENEFICIARY:          33983441

(5000) ORIGINATOR:                         D/1000148121824
                                           BRIGHTPARK INVESTMENTS LLC
                                           C/O CT CORP CORPORATION TRUST CTR
                                           1209 ORANGE STREET
                                           WILMINGTON DE 19801

(6000) ORIGINATOR TO BENEFICIARY INFO: FURTHER CREDIT TO:
                                           CT ENERGIA OIL & GAS, LTD
                                           ACCT. # 24355467
                                           OBO CEDARIDGE INVESTMENTS S.A.


     *** MESSAGE TEXT ***


*FTR   00052333983441          NRF    000012000000.00S           175NN
2FTR 160128160129160129160129FED
3FTR
5FTR                                                           S1I
OBI=FURTHER CREDIT TO:
-CT ENERGIA OIL & GAS, LTD
```

```
-ACCT. # 24355467
-OBO CEDARIDGE INVESTMENTS S.A.
DBT=D/1000148121824
-BRIGHTPARK INVESTMENTS LLC
BBK=A/026002561
-STANDARD CHARTERED BANK LIMITED
-NEW YORK
-NEW YORK NY UNITED STATES
BNF=D/3544063642001
-GNB SUDAMERIS BANK, S.A.


*****REMITTANCE DATA UNAVAILABLE*****

    MESSAGE HISTORY SEQUENCE
--------------------------------
175 IS THE OWNING BANK. PRIORITY:
        REF_INDEX        REF #: 2016012900004179  29-JAN-2016 08:50:13.19
        S1IS_IN          SEQ #: 523 29-JAN-2016 08:50:13.19 INFO:  *FTR
|414D512050524F44575430303020202205676709F20463C22
        MEMO: EXTERNAL SYSTEM REFERENCE: 33983441
        CMS_MAPQ       DEQ
        *SYS_MEMO        CHANNEL FED WAS IMPOSED.
        *SYS_MEMO        *CVD:--- DVD:949 PSD:--- SSD:--- DBD:1 CBD:1
        S1I_SENDREF      KEY: 33983441
        *DDA_INQ_DBT     INQ_DBT  AMOUNT: 12000000.00   USD
        *GL__INQ_CDT
        *ADR_MSG_QUE     TEXT: 2016012900004179
        MEMO: DBT/660234
        NKI_OUTQ       DEQ
        NKI_PNDDLVQ    DEQ
        NKI1_SRF         KEY: 2900004179347343
        NKI1_OUT         SEQ #: 347343 29-JAN-2016 08:50:16.66 INFO:
2900004179347343         F
        NKI1_SND         SEQ #: 347343 29-JAN-2016 08:50:16.66 INFO:
2900004179347343         F
        NKI1_ACK         SEQ #: 347343 29-JAN-2016 08:50:17.17 INFO:
2900004179347343         +
        NKI1_RCV         SEQ #: 226 29-JAN-2016 08:50:18.23
        *SYS_MEMO                               ALERTS DETECTED. USER
CONFIRMATION REQUIRED
        *SYS_MEMO         AGENT NAME FRAUD :
        *SYS_MEMO        1----IINFORMATIONAL DATA
        NKI1_RCV         SEQ #: 736 29-JAN-2016 09:08:10.17
        *SYS_MEMO                               USER CONFIRMED.
        *SYS_MEMO         AGENT NAME FRAUD :ATIYAH SALAHUDDIN
        *SYS_MEMO        1----PFRAUD:  USER BEATRIZ RIVERA VER VALID 305 755
5108 AT 9 06AM
        *SYS_MEMO        STOP_CHECK MATCH - 29-JAN-2016 09:08:10.17
        *SYS_MEMO        MATCH REF: JMA/668388(OFAC)
        *SYS_MEMO        GAS A IN ORIG TO BNF INFO
        *SYS_MEMO        ACTUAL: GAS LTD ACCT. # 24355467 OBO CEDARIDGE
INVESTMENTS S.A
        *SYS_MEMO        MATCH REF: JMA/789853(OFAC)
        *SYS_MEMO        GAS OIL IN ORIG TO BNF INFO
        *SYS_MEMO        ACTUAL: OIL & GAS
        *SYS_MEMO        MATCH REF: JMA/668388(OFAC)
        *SYS_MEMO        GAS A IN FLD OBI=
        *SYS_MEMO        ACTUAL: GAS LTD ACCT. # 24355467 OBO CEDARIDGE
INVESTMENTS S.A
        *SYS_MEMO        MATCH REF: JMA/789853(OFAC)
        *SYS_MEMO        GAS OIL IN FLD OBI=
        *SYS_MEMO        ACTUAL: OIL & GAS
        *SYS_MEMO        MULTIPLE WARNINGS - SEE HISTORY
        *SYS_MEMO        *MRSTOP/*MR/FRD/PSS/ /$$$IS2
        FED_OFACQ      DEQ
        STOP_PAY_LOG     OPRID: UGJR37 P20  TIME: 29-JAN-2016 09:26:24.22
        MEMO: APPROVAL BY CT ENERGIA OIL & GAS, LTD=MISMATCH/RANDOM
        DDA_AUTQ       DEQ
        DDA_PDM_01       SEQ #: 4272 29-JAN-2016 09:26:24.32 INFO: PD
        MEMO:                                    1601290041790000001 D
        *SYS_MEMO        MESSAGE FROM IBM HOST: CODE: 00,
        *DDA             SAM_DBT  AMOUNT: 12000000.00   USD
        DDA_POST_01      SEQ #: 4272 29-JAN-2016 09:26:24.57 INFO: PD
        MEMO: DBT POSTED - TC: 71603|1601290041790|0000001||
        PAYADVQ        DEQ
        PAYADV_LOG       OPRID: $$$PAY  TIME: 29-JAN-2016 09:26:24.59
        SYSPRFBAL        PRF_DDA_DBT  AMOUNT: 12000000.00   USD
* BEGIN DESTINATION *DST(1), DLV STATE: Q
    RTE: D/1000148121824/
    DST: CMS/S1I//////
        BRIGHTPARK INVESTMENTS LLC
        C/O CT CORP CORPORATION TRUST CTR
        1209 ORANGE STREET
```

```
        WILMINGTON DE 19801
        *DBT_CNF
        S1I_MSGQ        DEQ
        S1IS_ACKPNDQ    DEQ
        MEMO: >>>ISIACKPND00313320160129000004179S1IS_OUT|*DBT
        *SYS_MEMO        EXTERNAL SYSTEM REFERENCE: 33983441
        S1IS_OUT        SEQ #: 3133 29-JAN-2016 09:27:00.13 INFO:  *DBT
* END DESTINATION
        *FED_GL          SAM_CDT AMOUNT: 12000000.00   USD
* BEGIN DESTINATION *DST(2) ROUTE:026002561, DLV STATE: D
   RTE: /
   DST: FED///////
        *CDT
        FED_LOQ         DEQ
        FEDOUT_LOG      AMT: 12000000.00   TIME: 29-JAN-2016 09:26:24.63
        FEDLO_10_Q      DEQ
        FLASHSND        ABA: 026002561  FED REF: 2016012900004179
                        IMAD: 0129F1QCZ68C001103
        FEDDUT1         SEQ #: 1103 29-JAN-2016 09:26:26.43
        FEDMQOUT1       SEQ #: 1124 29-JAN-2016 09:26:26.44 INFO: WT0.FEDLINE
.REQUEST.WMQ.00||||20160129
        FEDPNDSACKQ1    DEQ
        *SYS_MEMO        FED/ACK -- 2016/01/29 0000000009:0000000026
* END DESTINATION
        ABA_INDEX       KEY: 026002561
        DDA_BACKEND     TEXT: 2016012900004179  AMOUNT: 12000000.00   USD
        GL_BACKEND      TEXT: 2016012900004179  AMOUNT: 12000000.00   USD
* BEGIN DESTINATION *DST(3), DLV STATE: Q
   RTE: /
   DST: ENQ///////
        QUEUE: 175//RGW_OUTQ
        RGW_OUTQ        TEXT: 2016012900004179  AMOUNT: 12000000.00   USD
                        OPRID: $$$PAY
* END DESTINATION
* BEGIN DESTINATION *DST(4), DLV STATE: Q
   RTE: /
   DST: ENQ///////
        QUEUE: 175//RGW_OUTQ
        RGW_OUTQ        TEXT: 2016012900004179  AMOUNT: 12000000.00   USD
* END DESTINATION
        *SYS_MEMO        UVTH36  S2 29-JAN-2016 TR-O RCVD VIA WEB FORM FROM
MARIA QUEVEDO 305-789-7354
        *SYS_MEMO        UVTH36  S2 29-JAN-2016 // IMAD 0129F1QCZ68C001103//
BNF CNR
        *SYS_MEMO        UVTH36  S2 29-JAN-2016 1ST TR-O SENT ON TRAN 20160129
-00009731
```

# Exhibit G

```
-RCGPNC03- GNB SUDAMERIS BANK, S. A.                                          Fecha  : 16/02/16
                                                                             Hora   : 12:03:29
                                  ESTADO DE CUENTA                            Página :      1


     Sucursal . :    1  GNB SUDAMERIS BANK
     Cuenta . . :   24355467    CT ENERGIA OIL & GAS LTD        -  1     Moneda . . :    1  USD
     C.Contable :         213202102  DEP.VISTA CLIE.NO FIN.DISP.NO REM.


     Desde  . . :   1/01/16      Hasta . . :   16/02/16


     CUENTA CORRIENTE                      Saldo anterior . . :           0,00


+--------+--------+------------------------+----------------+----------------+-------------+-------------+-----------------+
  Fecha   F/Valor      Concepto              Nuestra Refer.   Su Referencia     Débitos       Créditos        Saldo
+--------+--------+------------------------+----------------+----------------+-------------+-------------+-----------------+
 29/01/16 29/01/16 107 Orden de Pago recibi BRIGHTPARK INVESTM //061-010-0012               12.000.000,00   12.000.000,00
  4/02/16  4/02/16 11 Por Nota de Debito    A/F CT ENERGIA LTD //060-065-0001 11.965.000,00                     35.000,00
```

# Exhibit H

```
0175 SUNTRUST BANK                                                        WTR0620D  RUN 08-MAR-2016 19:43  PAGE  9900
FULL TRANSACTION REPORT                                                                            FOR 08-MAR-2016



RCVD FROM BRIGHTPARK INVESTMENTS LLC   C/O CT CORP CORPORATION TRUST CTR
SENDER'S DDA # 1000148121824


TRN REF #: 20160308-00009900
-------------------------------------------------------------------------------
  ****  MESSAGE ENVELOPE ****                ( BANK : 175 )

                                         SND DATE: 16/03/08
SRC:S1I CALLER:AGUIRRE, JAVIER             EXT:

RPT#      AMT:18,000,000.00          CUR:USD                    TRDR#
TEST: DUE:                           TYP:FTR/1000 FNDS:S CHG:DB:A CD:N COM:N CBL:N
-------------------------------------------------------------------------------
DBT D/1000148121824/                 CDT *A/026002561             ADV:FED
DEBIT VAL: 16/03/08                   CREDIT VAL: 16/03/08
DEPT:175                             DEPT:175
BRIGHTPARK INVESTMENTS LLC           STANDARD CHARTERED BANK LIMITED
C/O CT CORP CORPORATION TRUST CTR    NEW YORK, NY
1209 ORANGE STREET
WILMINGTON DE 19801                  COUNTRY OF RESIDENCY: US
SPECIAL INSTRUCTIONS:                BNF:/3544063642001          CHG:  BK?N
S1P K-HIGHPARK INVESTMENTS LLC       GNB SUDAMERIS BANK, S.A.


SNDR REF NUM:34575109                ORIG TO BNF INFO:
                                     FURTHER CREDIT TO:
                                     CT ENERGIA OIL & GAS, LTD
                                     ACCT. # 24355467
                                     OBO CEDARIDGE INVESTMENTS S.A.


   ****  CREDIT PAYMENT MESSAGE TEXT ****


(1510) TYPE/SUBTYPE CODE:
          TYPE CODE:                 10 (TRANSFER OF FUNDS)
          SUBTYPE CODE:              00 (REGULAR TRANSFER)

(2000) AMOUNT:                       $18,000,000.00

(3100) SENDING BANK:
          ABA NUMBER:                061000104
          SHORT NAME:                STB ATLANTA GA
          ABA LOOKUP (AUX):          SUNTRUST BANK
                                     ATLANTA, GA

(3320) SENDER REFERENCE:             2016030800009900

(3400) RECEIVING BANK:
          ABA NUMBER:                026002561
          SHORT NAME:                STANDARD CHART
          ABA LOOKUP (AUX):          STANDARD CHARTERED BANK LIMITED
                                     NEW YORK, NY

(3600) BUSINESS FUNCTION CODE:       CTP (CUSTOMER TRANSFER PLUS)

(4200) BENEFICIARY:                  D/3544063642001
                                     GNB SUDAMERIS BANK, S.A.

(4320) REFERENCE FOR BENEFICIARY:    34575109

(5000) ORIGINATOR:                   D/1000148121824
                                     BRIGHTPARK INVESTMENTS LLC
                                     C/O CT CORP CORPORATION TRUST CTR
                                     1209 ORANGE STREET
                                     WILMINGTON DE 19801

(6000) ORIGINATOR TO BENEFICIARY INFO: FURTHER CREDIT TO:
                                     CT ENERGIA OIL & GAS, LTD
                                     ACCT. # 24355467
                                     OBO CEDARIDGE INVESTMENTS S.A.


   *** MESSAGE TEXT ***

*FTR   00198134575109       NRF      000018000000.00S           175NN
2FTR 160308160308160308FED
3FTR
5FTR                                                     S1I
OBI=FURTHER CREDIT TO:
-CT ENERGIA OIL & GAS, LTD
```

```
-ACCT. # 24355467
-OBO CEDARIDGE INVESTMENTS S.A.
DBT=D/1000148121824
-BRIGHTPARK INVESTMENTS LLC
BBK=A/026002561
-STANDARD CHARTERED BANK LIMITED
-NEW YORK
-NEW YORK NY UNITED STATES
BNF=D/3544063642001
-GNB SUDAMERIS BANK, S.A.


*****REMITTANCE DATA UNAVAILABLE*****

    MESSAGE HISTORY SEQUENCE
-------------------------------
175 IS THE OWNING BANK. PRIORITY:
        REF_INDEX        REF #: 2016030800009900   8-MAR-2016 14:35:52.26
        S1IS_IN          SEQ #: 1981  8-MAR-2016 14:35:52.26 INFO:  *FTR
|414D512050524F445754303030202020205676709F2084F638
        MEMO: EXTERNAL SYSTEM REFERENCE: 34575109
        CMS_MAPQ     DEQ
        *SYS_MEMO        CHANNEL FED WAS IMPOSED.
        *SYS_MEMO        *CVD:--- DVD:949 PSD:--- SSD:--- DBD:1 CBD:1
        S1I_SENDREF      KEY: 34575109
        *DDA_INQ_DBT     INQ_DBT  AMOUNT: 18000000.00   USD
        *GL__INQ_CDT
        *ADR_MSG_QUE     TEXT: 2016030800009900
        MEMO: DBT/660234
        NKI_OUTQ     DEQ
        NKI_PNDDLVQ  DEQ
        NKI1_SRF         KEY: 0800009900749738
        NKI1_OUT         SEQ #: 749738  8-MAR-2016 14:35:53.84 INFO:
0800009900749738        F
        NKI1_SND         SEQ #: 749738  8-MAR-2016 14:35:53.84 INFO:
0800009900749738        F
        NKI1_ACK         SEQ #: 749738  8-MAR-2016 14:35:54.03 INFO:
0800009900749738         ·+
        *SYS_MEMO        SCANNING BYPASSED  8-MAR-2016 15:09:50.16
        *SYS_MEMO        STOP_CHECK MATCH -  8-MAR-2016 15:09:50.16
        *SYS_MEMO        MATCH REF: JMA/668388(OFAC)
        *SYS_MEMO        GAS A IN ORIG TO BNF INFO
        *SYS_MEMO        ACTUAL: GAS LTD ACCT. # 24355467 OBO CEDARIDGE
INVESTMENTS S.A
        *SYS_MEMO        MATCH REF: JMA/789853(OFAC)
        *SYS_MEMO        GAS OIL IN ORIG TO BNF INFO
        *SYS_MEMO        ACTUAL: OIL & GAS
        *SYS_MEMO        MATCH REF: JMA/668388(OFAC)
        *SYS_MEMO        GAS A IN FLD OBI=
        *SYS_MEMO        ACTUAL: GAS LTD ACCT. # 24355467 OBO CEDARIDGE
INVESTMENTS S.A
        *SYS_MEMO        MATCH REF: JMA/789853(OFAC)
        *SYS_MEMO        GAS OIL IN FLD OBI=
        *SYS_MEMO        ACTUAL: OIL & GAS
        *SYS_MEMO        MULTIPLE WARNINGS - SEE HISTORY
        *SYS_MEMO        *MRSTOP/*MR/FRO/PSS/ /$$$ISZ
        FED_OFACQ    DEQ
        NKI1_RCV         SEQ #: 148  8-MAR-2016 15:11:44.54
        *SYS_MEMO                    ALERTS DETECTED. USER
CONFIRMATION REQUIRED
        *SYS_MEMO           AGENT NAME FRAUD :
        *SYS_MEMO        1----IINFORMATIONAL DATA
        STOP_PAY_LOG     OPRID: UGLL0 P20 TIME:  8-MAR-2016 15:30:17.33
        MEMO: APPROVAL BY CT ENERGIA OIL & GAS, LTD
        *SYS_MEMO        MONITOR PHISHING-S1I. ATTN: PHISHING - CHECK FOR OTM
FRAUD
        RISK_Q       DEQ
        MEMO: RSN: MONPT
        RISK_LOG         OPRID: UGDB103 TIME:  8-MAR-2016 16:23:12.59
        MEMO: UGDB103 - PRV PAYMENT HISTORY IN JAN 2016
        *MEMO            ALL NON-BALANCE CONDITIONS OVERRIDDEN FOR TRN
Z0160308-00009900; ROUTED.
        DDA_AUTQ     DEQ
        DDA_PDM_01       SEQ #: 10839  8-MAR-2016 16:23:12.61 INFO: PD
        MEMO:                            1603080099000000001 D
        *SYS_MEMO        MESSAGE FROM IBM HOST: CODE: 00,
        *DDA             SAM_DBT  AMOUNT: 18000000.00   USD
        DDA_POST_01      SEQ #: 10839  8-MAR-2016 16:23:12.87 INFO: PD
        MEMO: DBT POSTED - TC: 71603|1603080099000|0000001||
        PAYADVQ      DEQ
        PAYADV_LOG       OPRID: $$$PAY TIME:  8-MAR-2016 16:23:12.89
        SYSPRFBAL        PRF_DDA_DBT AMOUNT: 18000000.00   USD
* BEGIN DESTINATION *DST(1), DLV STATE: Q
   RTE: D/1000148121824/
```

```
    DST: CMS/S1I//////
        BRIGHTPARK INVESTMENTS LLC
        C/O CT CORP CORPORATION TRUST CTR
        1209 ORANGE STREET
        WILMINGTON DE 19801
        *DBT_CNF
        S1I_MSGQ      DEQ
        S1IS_ACKPNDQ  DEQ
        MEMO: >>>ISIACKPND00759520160308000009900S1IS_OUT|*DBT
        *SYS_MEMO        EXTERNAL SYSTEM REFERENCE: 34575109
        S1IS_OUT         SEQ #: 7595  8-MAR-2016 16:23:28.91 INFO:  *DBT
* END DESTINATION
        *FED_GL          SAM_CDT  AMOUNT: 18000000.00   USD
* BEGIN DESTINATION *DST(2) ROUTE:026002561, DLV STATE: D
    RTE: /
    DST: FED//////
        *CDT
        FED_LOQ       DEQ
        FEDOUT_LOG       AMT: 18000000.00    TIME:  8-MAR-2016 16:23:12.91
        FEDLO_l0_Q    DEQ
        FLASHSND         ABA: 026002561  FED REF: 2016030800009900
                         IMAD: 0308F1QCZ68C004365
        FEDOUT1          SEQ #: 4365  8-MAR-2016 16:23:14.94
        FEDMQOUT1        SEQ #: 4470  8-MAR-2016 16:23:14.94 INFO: WTO.FEDLINE
.REQUEST.WMQ.00||||20160308
        FEDPMDSACKQ1  DEQ
        *SYS_MEMO        FED/ACK -- 2016/03/08 0000000016:0000000023
* END DESTINATION
        ABA_INDEX        KEY: 026002561
        DDA_BACKEND      TEXT: 2016030800009900  AMOUNT: 18000000.00   USD
        GL_BACKEND       TEXT: 2016030800009900  AMOUNT: 18000000.00   USD
* BEGIN DESTINATION *DST(3), DLV STATE: Q
    RTE: /
    DST: ENQ//////
        QUEUE: 175//RGW_OUTQ
        RGW_OUTQ         TEXT: 2016030800009900  AMOUNT: 18000000.00   USD
                         OPRID: $$$PAY
* END DESTINATION
* BEGIN DESTINATION *DST(4), DLV STATE: Q
    RTE: /
    DST: ENQ//////
        QUEUE: 175//RGW_OUTQ
        RGW_OUTQ         TEXT: 2016030800009900  AMOUNT: 18000000.00   USD
* END DESTINATION
```

# Exhibit I



# GNB SUDAMERIS BANK

Panamá, Rep. de Panamá
Calle Manuel María Icaza No. 19 - Area Bancaria
Apartado 0816-00419, Panamá, Rep. de Panamá
Tel. (507) 206-6900 - SWIFT ID.GNBKPAPA
Fax: (507) 206-6901

**EXTRACTO DE CUENTA / STATEMENT OF ACCOUNT**
No. / NO.    3

USD

| CUENTA No.<br>ACCOUNT NO. | 24355467 - | 1 | DESCRIPCION DE LA CUENTA<br>ACCOUNT DESCRIPTION | CUENTAS CORRIENTES | DE<br>FROM | 1/03/16 | A<br>TO | 31/03/16 | PAGINA<br>PAGE | 1 |

| FECHA<br>DATE | VALOR<br>VALUE<br>DATE | DESCRIPCION DE LA OPERACION<br>TRANSACTION DESCRIPTION | REFERENCIA<br>REFERENCE NUMBER | CARGOS<br>DEBITS | ABONOS<br>CREDITS | SALDOS<br>BALANCES |
|---|---|---|---|---|---|---|
| DDMM | DDMMYY | | Saldo Inicial | | | 35,000.00 |
| 0803 | 080316 | Orden de Pago recibida | BRIGHTPARK INVESTM | | 18,000,000.00 | 18,035,000.00 |
| 1003 | 100316 | Por Nota de Debito | A/F CT ENERGIA LTD | 18,000,000.00 | | 35,000.00 |
| 1603 | 160316 | | | | 50.00 | 34,950.00 |
| 3003 | 300316 | | | | 25.00 | 34,925.00 |

| TOTAL CARGOS<br>TOTAL DEBITS | 18,000,075.00 | TOTAL ABONOS<br>TOTAL CREDITS | 18,000,000.00 | Saldo | 34,925.00 |

SEÑORES

CT ENERGIA OIL AND GAS LTD.
C/O GNB SUDAMERIS BANK S.A.
******RETENER******

CT ENERGIA OIL & GAS LTD

SIRVASE EXAMINAR EL EXTRACTO Y NOTIFICARNOS INMEDIATAMENTE CUALQUIER DISCONFORMIDAD.
PLEASE EXAMINE AND ADVISE US PROMPTLY OF ANY DISCREPANCY.

BS-GC-315

CONFIDENTIAL

# Exhibit J



**GNB SUDAMERIS BANK**

Panamá, Rep. de Panamá
Calle Manuel María Icaza No. 19 - Area Bancaria
Apartado 0816-00419, Panamá, Rep. de Panamá
Tel: (507) 206-6900 - SWIFT ID GNBKPAPA
Fax: (507) 206-6901

**EXTRACTO DE CUENTA / STATEMENT OF ACCOUNT**
No. / NO.

USD

| CUENTA No. ACCOUNT NO. | 24356467 - | 1 DESCRIPCION DE LA CUENTA ACCOUNT DESCRIPTION | CUENTAS CORRIENTES DE FROM | 1/03/16 | A TO | 31/03/16 | PAGINA PAGE | 1 |

| FECHA DATE | VALOR VALUE DATE | DESCRIPCION DE LA OPERACION TRANSACTION DESCRIPTION | REFERENCIA REFERENCE NUMBER | CARGOS DEBITS | ABONOS CREDITS | SALDOS BALANCES |
|---|---|---|---|---|---|---|
| DDMM | DDMMYY | | Saldo Inicial | | | 11,677,722.13 |
| 0703 | 070316 | | | 20.00 | | 11,677,702.13 |
| 0703 | 070316 | | | 3,326.40 | | 11,674,375.73 |
| 0703 | 070316 | | | 40.00 | | 11,674,335.73 |
| 0703 | 070316 | | | 25,000.00 | | 11,649,335.73 |
| 0703 | 070316 | | | 20.00 | | 11,649,315.73 |
| 0703 | 070316 | | | 10,000.00 | | 11,639,315.73 |
| 0703 | 070316 | | | 40.00 | | 11,639,275.73 |
| 0703 | 070316 | | | 41,589.49 | | 11,597,686.24 |
| 0703 | 070316 | | | 40.00 | | 11,597,646.24 |
| 0703 | 070316 | | | 40,000.00 | | 11,557,646.24 |
| 0703 | 070316 | | | 20.00 | | 11,557,626.24 |
| 0703 | 070316 | | | 5,000.00 | | 11,552,626.24 |
| 0703 | 070316 | | | 20.00 | | 11,552,606.24 |
| 0703 | 070316 | | | 5,000.00 | | 11,547,606.24 |
| 0703 | 070316 | | | 40.00 | | 11,547,566.24 |
| 0703 | 070316 | | | 15,000.00 | | 11,532,566.24 |
| 0703 | 070316 | | | 20.00 | | 11,532,546.24 |
| 0703 | 070316 | | | 5,162.23 | | 11,527,384.01 |
| 0803 | 080316 | | | 20.00 | | 11,527,364.01 |
| 0803 | 080316 | | | 9,581.00 | | 11,517,783.01 |
| 0903 | 090316 | | | 100.00 | | 11,517,683.01 |
| 0903 | 090316 | | | 15.00 | | 11,517,668.01 |
| 1003 | 100316 | Por Nota de Credito | P/O CT ENERGIA OIL | | 18,000,000.00 | 29,517,668.01 |
| 1603 | 160316 | | | 50.00 | | 29,517,618.01 |
| 1603 | 160316 | | | 80.00 | | 29,517,538.01 |
| 2303 | 230316 | | | 20.00 | | 29,517,518.01 |
| 2303 | 230316 | | | 3,719.87 | | 29,513,798.14 |
| 3003 | 300316 | | | 25.00 | | 29,513,773.14 |

| TOTAL CARGOS TOTAL DEBITS | | TOTAL ABONOS TOTAL CREDITS | |

E
N M
V A
I I
A L
R
T
A O

SEÑORES
CT ENERGIA LTD.
C/O GNB SUDAMERIS BANK S.A.
******RETENER******

CT ENERGIA, LTD

SIRVASE EXAMINAR EL EXTRACTO Y NOTIFICARNOS INMEDIATAMENTE CUALQUIER DISCONFORMIDAD.
PLEASE EXAMINE AND ADVISE US PROMPTLY OF ANY DISCREPANCY.

BS-GC-315

 **GNB SUDAMERIS BANK**

Panamá, Rep. de Panamá
Calle Manuel María Icaza No. 19 - Area Bancaria
Apartado 0816-00410, Panamá, Rep. de Panamá
Tel.: (507) 206-6900 - SWIFT ID.GNBKPAPA
Fax.: (507) 206-6901

## EXTRACTO DE CUENTA / STATEMENT OF ACCOUNT
No. / NO.

USD

| CUENTA No. ACCOUNT NO. | 24356467 - 1 | DESCRIPCION DE LA CUENTA ACCOUNT DESCRIPTION | CUENTAS CORRIENTES | DE FROM | 1/03/16 | A TO | 31/03/16 | PAGINA PAGE | 2 |

| FECHA DATE | VALOR VALUE DATE | DESCRIPCION DE LA OPERACION TRANSACTION DESCRIPTION | REFERENCIA REFERENCE NUMBER | CARGOS DEBITS | ABONOS CREDITS | SALDOS BALANCES |
|---|---|---|---|---|---|---|
| 3003 | 300316 | | | 100.00 | | 29,513,673.14 |

| TOTAL CARGOS TOTAL DEBITS | | TOTAL ABONOS TOTAL CREDITS | | | | |
|---|---|---|---|---|---|---|
| 164,048.99 | | 18,000,000.00 | | Saldo | | 29,513,673.14 |

SEÑORES
CT ENERGIA LTD.
C/O GNB SUDAMERIS BANK S.A.
******RETENER******

ENVIAR AL
APARTADO ....

CT ENERGIA, LTD

SIRVASE EXAMINAR EL EXTRACTO Y NOTIFICARNOS INMEDIATAMENTE CUALQUIER DISCONFORMIDAD.
PLEASE EXAMINE AND ADVISE US PROMPTLY OF ANY DISCREPANCY.

BS-GC-315

# Exhibit K



# GNB SUDAMERIS BANK S.A.

Panamá, Rep. de Panamá
Calle Manuel María Icaza No. 19 – Area Bancaria
Apartado 0816-00419, Panamá, Rep. De Panamá
Tel.: (507) 206-6900 – SWIFT ID. GNBKPAPA
Fax. (507) 206-6901

**EXTRACTO DE CUENTA / STATEMENT OF ACCOUNT**
No. /NO.

|  |  |  | USD |  |  |  |  |
|---|---|---|---|---|---|---|---|
| CUENTA No. 24355467 - 1 | | DESCRIPCIÓN DE LA CUENTA | CUENTAS CORRIENTES | DE. 1/01/16 A 31/12/16 | | PAGINA | 1 |
| ACCOUNT NO. | | ACCOUNT DESCRIPTION | | | | | |

| FECHA DATE | VALOR VALUE | DESCRIPCION DE LA OPERACIÓN TRANSACTION DESCRIPTION | REFERENCIA REFERENCE NUMBER | CARGOS DEBITS | ABONOS CREDITS | SALDOS BALANCES |
|---|---|---|---|---|---|---|
| DDMM | DDMMYY | | Saldo Inicial | | | 0,00 |
| 2901 | 290116 | Orden de Pago recibida | BRIGHTPARK INVESTM | | 12.000.000,00 | 12.000.000,00 |
| 0402 | 040216 | Por Nota de Debito | A/F CT ENERGIA LTD | 11.965.000,00 | | 35.000,00 |
| 0803 | 080316 | Orden de Pago recibida | BRIGHTPARK INVESTM | | 18.000.000,00 | 18.035.000,00 |
| 1003 | 100316 | Por Nota de Debito | A/F CT ENERGIA LTD | 18.000.000,00 | | 35.000,00 |
| 1603 | 160316 | | | 50,00 | | 34.950,00 |
| 3003 | 300316 | | | 25,00 | | 34.925,00 |
| 1605 | 160516 | | | 20,00 | | 34.905,00 |
| 1605 | 160516 | | | 919,01 | | 33.985,99 |
| 0107 | 010716 | | | 20,00 | | 33.965,99 |
| 2807 | 010716 | | | | 20,00 | 33.985,99 |
| 1512 | 151216 | | | 95,00 | | 33.890,99 |

| TOTAL CARGOS TOTAL DEBITS | TOTAL ABONOS TOTAL CREDITS | SALDOS BALANCE |
|---|---|---|
| 29.966.129,01 | 30.000.020,00 | 33.890,99 |

| SEÑORES | ELEMENTO OIL & GAS, LTD |
|---|---|
| ELEMENTO OIL & GAS LTD | |
| C/O GNB SUDAMERIS BANK S.A. | |
| ******RETENER****** | |

# Exhibit L

**Share Purchase and
Novation Agreement**

**BETWEEN**

Elemento Oil & Gas LTD (the **"Seller"**)

**AND**

CISA Holdings Limited (the **"Purchaser"**)

**AND**

Cedaridge Investments S.A (the **"Creditor"**)



**192, Old Bakery Street
Valletta VLT 1455
Malta**

Tel: (+356) 2122 8888
Fax: (+356) 2122 8808

e-mail: info@gvzh.com.mt
Web:    www.gvzh.com.mt

A share purchase and novation agreement (the **"Agreement"**) entered into this 7th day of FEBRUARY 2017

**BETWEEN:**

Elemento Oil & Gas LTD, bearing Company Registration Number C 73377, incorporated under the laws of Malta and having its registered office address at 85, St John's Street, Valletta, VLT 1165 (hereinafter referred to as the "**Seller**");

and

CISA Holdings Limited, bearing Company Registration Number ●, incorporated under the laws of Malta and having its registered office address at 35, Strait Street, Valletta (hereinafter referred to as the "**Purchaser**");

and

Cedaridge Investments S.A, a company organized and existing under the laws of the Republic of Panama bearing Company Registration Number 29514 and formed on October 8, 2014, (hereinafter referred to as the "**Creditor**")

The Purchaser and the Seller shall also hereinafter be referred to individually as a "**Party**" and collectively as the "**Parties**".

**PREAMBLE:**

(i) Whereas the Seller is the owner of the Shares in the Company for all intents and purposes at law;

(ii) Whereas the Seller desires to sell, transfer and assign the Shares to the Purchaser and/or any such intermediary corporate entity/ies as the Purchaser may nominate for this purpose and the Purchaser desires to purchase, acquire and accept from the Seller the Shares in the Company which correspond to and represent 100% of the issued share capital and all voting rights of the Company, according to the modalities and subject to the terms and conditions set forth in this agreement;

(iii) Whereas the Seller acknowledges and accepts that it is a debtor of the Creditor for the Debt and whereas such Debt is still due by the Seller to the Creditor;

(iv) Whereas the Consideration for the Shares shall consist of the novation of the Debt by way of substitution of the debtor in terms of Article 1179(b) of the Civil Code (Chapter 16 of the Laws of Malta), namely by substitution of the Seller for the Purchaser;

(v) Whereas the Creditor is hereby appearing to consent to the novation, and to hereby discharge the Seller from any and all claims and demands arising from the Debt and accept the assumption of all liabilities and obligations of the Purchaser in substitution of the liabilities and obligations of the Seller in relation to the Debt;

**IT IS AGREED** as follows:

1.  **Definitions and interpretation**

    1.1.   In this Agreement, including the schedules, the following words and expressions have the following meanings unless the context otherwise requires:

    **"Agreement"**
    this Agreement including any and all recitals and schedules;

    **"Business Day"**
    a day other than a Saturday or Sunday or public holiday in Malta;

**"Purchaser Warranties" and "Purchaser Warranty"**
shall each have the meaning given to them in clause 7;

**"Company"**
Elemento LTD, bearing Company Registration Number C 72520, incorporated under the laws of Malta and having its registered office address at 85, St John Street, Valletta, VLT 1165;

**"Completion"**
completion of the sale and purchase of the Shares in accordance with this Agreement;

**"Confidential Information"**
all trade secrets, data, know how and other such information (in whatever form held including written, oral, visual and electronic) which is for the time being not publicly known which is used in, or otherwise relates to, any part of the Company's business including (i) any goods manufactured and/or sold, or services rendered by, the Company, (ii) the operations, management, administration or other financial affairs of the Company (iii) the Company Intellectual Property;

**"Consideration"**
The Consideration consists of the nominal value of the Shares and the novation of the Debt by way of substitution of the debtor in terms of Article 1179(b) of the Civil Code (Chapter 16 of the Laws of Malta), namely by substitution of the Seller for the Purchaser;

**"Debt"**
Shall mean the amount of thirty million US Dollars (\$ 30,000) currently owing by the Seller to the Creditor;

**"Shares"**
Shall mean one thousand one hundred and sixty-five (1,165) fully paid up Ordinary Shares, having a nominal value of \$1.122400 each, in the capital of the Company held by the Seller comprising 100% of the Company's issued share capital.

1.2   In this Agreement, a reference to:

1.2.1   a document in the "agreed form" is a reference to a document in a form approved and, for the purposes of identification, signed by or on behalf of each party provided that where any document is not in such agreed form as at the date of this Agreement the term "agreed form" shall be deemed to be a reference to a document in such form as the Purchasers shall require (without being manifestly unreasonable so that, for the avoidance of doubt, the Purchasers shall not be deemed unreasonable where it is seeking protection in any document for any of its legitimate interests in connection with the subject-matter of that document and such protection being sought is not manifestly outside of any of the usual forms of protection sought by such a party in the relevant circumstances) to be delivered at Completion;

1.2.2   a person includes a reference to an individual, body corporate, association, government, state, agency of state or any undertaking (whether or not having a legal personality and irrespective of the jurisdiction in or under the law of which it was incorporated or exists);

1.2.3   a party means a party to this Agreement;

1.2.4   a sub-clause in a clause, or to a paragraph in a schedule, are to a sub-clause of that clause or a paragraph of that schedule;

1.2.5   a clause, paragraph or schedule, unless the context otherwise requires, is a reference to a clause or paragraph of, or schedule to, this Agreement;

1.2.6   "includes" and "including" shall mean including without limitation; and

1.2.7   this Agreement or any provision of this Agreement or any document are to this Agreement, that provision or that document as in force for the time being and as amended from time to time in accordance with the terms of this Agreement or that document or with the agreement of the relevant parties.

1.3     Words importing the singular include the plural and vice versa and words importing a gender include every gender.

**2.      Sale and purchase**

2.1     On the terms of this Agreement, the Seller shall sell and the Purchaser shall purchase all the issued Shares in the Company, such that one thousand one hundred and sixty-five (1,165) fully paid up Ordinary Shares, having a nominal value of $1.122400 each, in the capital of the Company shall be acquired by the Purchaser and/or any such intermediary corporate entity/ies as the Purchaser may nominate for this purpose.

2.2     The Seller hereby covenants with the Purchaser as follows:

2.1.1     the Seller has the right to dispose of the Shares on the terms set out in this Agreement;

2.1.2     the Seller shall do everything necessary to give the Purchaser full and unrestricted legal and beneficial title to the Shares; and

2.1.3     without limitation the Shares shall be sold and transferred free from any encumbrance whatsoever.

2.3     Title to, beneficial ownership of and any risk attaching to the Shares shall pass to the Purchaser on Completion and the Shares shall be sold and purchased together with all rights and benefits attached to or accruing to them at or at any time after Completion.

**3.      Consideration**

3.1     The Consideration consists of the novation of the Debt by way of substitution in terms of Article 1179(b) of the Civil Code (Chapter 16 of the Laws of Malta), whereby the Purchaser shall as at the date of this Agreement assume all liabilities and obligations of the Debt in substitution for the Seller;

**4.      Novation**

4.1     The Seller acknowledges and accepts that it is a debtor of the Creditor for the Debt and that such Debt is still due by the Seller to the Creditor.

4.2     In virtue of this Agreement, the Seller, the Purchaser and the Creditor will novate the Debt by substitution of the debtor in terms of Article 1179(b) of the Civil Code (Chapter 16 of the Laws of Malta), namely by substitution of the Seller for the Purchaser.

4.3     In virtue of this Agreement, the Creditor is consenting to the novation under Clause 4.2, and is discharging the Seller from any and all claims and demands arising from the Debt and is accepting the assumption of all liabilities and obligations by the Purchaser in substitution of the liabilities and obligations of the Seller in relation to the Debt.

**5.      Completion**

5.1     Parties hereby acknowledge and approve the documents contained in Annex A to this Agreement, which documents are necessary for the completion of the transfer of Shares in terms of Maltese law:

(a) Resolution of the Board of Directors of the Company approving the proposed transfer of the Shares to the Purchaser and undertaking the registration of such transfer in the Company's registers upon completion of the relative formalities;
(b) Simple share transfer instrument and Statutory Form T to be presented to the Authorities in Malta;
(c) a notice in terms of Rule 5(10) of the Capital Gains Rules (S.L 123.27) (Schedule E) to be submitted by a transferor of shares where the transfer is exempt from tax in the circumstance mentioned in rule 5(14);

5.2     The Parties acknowledge that Completion of the sale and transfer of the Shares shall occur takes place

immediately upon execution of this Agreement;

5.3   The Parties acknowledge that the Novation as provided under Clause 4 of this Agreement shall have immediate effect upon execution of this Agreement;

5.4   The Parties undertake to ensure that all documentation in respect of the transfer of the Shares by the Seller to the Purchaser including, without limitation, the appropriate statutory forms and/or any other documents, are filed with the Registry of Companies as required;

5.5   The Seller shall within 10 Business Days from the date of this Agreement, ensure that the Company's financial documents, accounting documents, and all other statutory books which the Company is obliged to keep in terms of Maltese law shall be delivered to the Purchaser, to an address in Malta as indicated by the Purchaser, and shall also furnish the purchaser with all details on all the assets of the Company including but not limited to, the details of any bank accounts which the Company holds;

5.6   This Agreement is irrevocable and shall constitute a valid and legally binding instrument, enforceable by and between the Parties in accordance with its terms.

## 6.   **Seller Warranties and Undertakings**

6.1   The Seller warrants to the Purchaser:

6.1.1   The Company is duly organised, validly existing and in good standing under the laws of their country of incorporation and the Company has full corporate power and authority to enter into this Agreement and consummate the obligations hereunder;

6.1.2   Neither the execution of this Agreement nor compliance by it with the terms and provisions hereof will:

(a)   contravene, conflict with, or result in a violation of its documents of incorporation or other corporate resolutions; or

(b)   contravene, conflict with, or result in a violation of, or give any governmental body or other person the right to challenge this Agreement or to exercise any remedy or obtain any relief under any legal requirement or court order to which it is subject.

6.1.3   There is no encumbrance, nor is there any agreement, arrangement or obligation to create or give an encumbrance, in relation to any of the Shares. No person has claimed to be entitled to an encumbrance in relation to any of the Shares.

6.1.4   There is no litigation, arbitration, prosecution, administrative or other legal proceedings or dispute in existence against the Seller in relation to any of the Shares or in relation to the Seller's entitlement to dispose of any of the Shares.

6.1.5   The Company is a limited liability company incorporated under Maltese law and has been in continuous existence since incorporation. The Company has the right, power, capacity and authority to conduct its business as conducted at the date of this Agreement.

6.1.6   All dividends and distributions declared, made or paid by the Company have been declared, made or paid in accordance with its constitution (at the relevant time), all applicable legislation and any agreement or arrangement made with any third party regulating the payment of dividends and distributions by the Company.

6.1.7   The copy of the memorandum and articles of association of the Company is true, complete and accurate and has embodied in it or annexed to it a copy of every resolution and agreement amending or affecting the same. The Company has at all times carried on its business and affairs in accordance with its constitution (at the relevant time).

6.1.8   Each register, minute book and other book which the Company is required by law to keep has been properly kept and contains a true, complete and accurate record of the matters which it is required to record.

6.1.9   There are no outstanding returns, particulars, resolutions and other documents required to be delivered by the Company to any governmental or other authority (all of which have been

properly prepared).

6.1.10   The warranties in this clause are true and accurate.

6.1.11   Each warranty is to be construed independently and (except where this Agreement provides otherwise) is not limited by the terms of any other warranty or any other provision of this Agreement.

6.1.12   The Seller shall procure that except so far as may be necessary to give effect to this Agreement, the Company shall not before Completion without the prior written consent of the Purchaser:

(a)   do, procure or allow anything which may cause, constitute or result in a breach of the warranties; or

(b)   in any way depart from the usual course of the Company's business.

## 7.    Purchaser Warranties and Undertakings

7.1   The Purchaser warrants to the Seller:

7.1.1   this Agreement shall constitute a valid and legally binding instrument, enforceable against it in accordance with its terms as of the date of this Agreement.

7.1.2   neither the execution of this Agreement nor compliance by it with the terms and provisions hereof will contravene, conflict with, or result in a violation of, or give any governmental body or other person the right to challenge this Agreement or to exercise any remedy or obtain any relief under any legal requirement or court order to which it is subject.

## 8.    Claims Arising Prior to Sale

8.1   The Purchaser warrants to the Seller that any claims that any and all litigation, arbitration, prosecution, administrative or any other legal proceedings or disputes that may be threatened or undertaken against the Company subsequent to this Agreement, but which claims originate prior to the date of this sale, shall be assumed exclusively by the Seller.

## 9    Dealing with Shares pending registration

9.1   The Seller undertakes to the Purchaser that for so long as they remain the registered holder of any of the Shares after Completion it will:

(a)   hold the Shares and the dividends, and other distributions of profits or surplus or other assets declared, paid or made in respect of them after Completion and all rights arising out of or in connection with them in trust for the Purchaser; and

(b)   deal with and dispose of the Shares and all such dividends, distributions and rights as the Purchaser may direct.

## 10   Confidential Information

10.1   Each Party undertakes with the other Party (for itself and for the benefit of the Company) that it will:

10.1.1   not use or disclose to any person Confidential Information it has or acquires; and

10.1.2   make every effort to prevent the use or disclosure of Confidential Information.

10.2   Clause 10.1 does not apply to:

10.2.1   disclosure of Confidential Information to a director, officer or employee of a party or the Company whose function requires him to have the Confidential Information;

10.2.2   use or disclosure of Confidential Information required to be used or disclosed by law or by any governmental or regulatory body but only to the extent required by law

(Including, but not limited to, disclosures necessary in relation to the satisfaction of the Condition);

10.2.3    disclosure of Confidential Information to either Party's advisor/s;

10.2.4    Confidential Information which becomes publicly known except by a breach of clause 10.1.

## 11    Notices

11.1    All notifications and communications addressed to any party by a party shall be made in the English language to the applicable addresses indicated for this purpose by either Party from time to time.

11.2    A notice so addressed shall be deemed to have been received:

11.2.1    if personally delivered, at the time of delivery, save that if such notice or communication is received after the end of normal working hours, such notice or communication shall be deemed to have been received on the next following Business Day;

11.2.2    if sent by pre-paid recorded delivery or registered post, forty-eight (48) hours after the date of posting;

11.2.3    if sent by air mail, five (5) days after the date of posting; and

11.2.4    if sent by facsimile, on successful completion of its transmission, save that if such notice or communication is received after the end of normal working hours, such notice or communication shall be deemed to have been received on the next following Business Day.

11.3    For the purposes of this clause 11, "normal working hours" shall be deemed to be from 09.00 to 17.00 in the country of the recipient.

11.4    For the avoidance of doubt, any notice given under this Agreement shall not be validly served if sent by e-mail unless the recipient gives written notice to the sender, in accordance with this Agreement, that it is prepared to accept notice in such a manner.

## 12    General

12.1    A variation of this Agreement is valid only if it is in writing and signed by or on behalf of each Party.

12.2    The failure or delay in exercising a right or remedy provided by this Agreement or by law does not constitute a waiver of that (or any other) right or remedy. No single or partial exercise of a right or remedy provided by this Agreement or by law prevents the further exercise of that (or any other) right or remedy.

12.3    Each party's rights and remedies contained in this Agreement are cumulative and not exclusive of any rights or remedies provided by law.

12.4    Except to the extent that they have been performed or where this Agreement provides otherwise, the obligations contained in this Agreement remain in force after Completion.

12.5    This Agreement, together with all agreements entered into or to be entered into pursuant to the terms of this Agreement, constitutes the entire agreement between the Parties in connection with the matters dealt with therein and (save in respect of fraudulent misrepresentation) supersedes and extinguishes all previous agreements between the parties (whether orally or in writing) in connection with the matters dealt with therein.

12.6    Each provision of this Agreement is severable and distinct from the others. If any provision is or at any time becomes to any extent or in any circumstances invalid, illegal or unenforceable for any reason, it shall to that extent or in those circumstances be deemed not to form part of this Agreement but (except to that extent or in those circumstances in the case of that provision) the validity, legality and enforceability of that and all other provisions of this Agreement shall not be affected or impaired and shall remain valid and enforceable.

12.7    If any term or provision in this Agreement (or any part of such a term or provision) shall be held by any Court or Tribunal of competent jurisdiction to be unenforceable, under any enactment or rule of law, such term or provision or part shall to that extent be deemed severable and not to form part of the Agreement, but the validity and enforceability of the remainder of the Agreement shall not be affected.

12.8    This Agreement may be executed in any number of counterparts each of which when executed and delivered is an original but all the counterparts together shall constitute the same document.

**13    Governing law and jurisdiction**

13.1    This Agreement shall be governed by and construed in accordance with the laws of Malta and, accordingly, the rights and obligations of the Parties under this Agreement and the construction and effect of every provision hereof, as well as any disputes arising out of the validity, operation, application or interpretation of any provision hereof, shall be governed by and determined according to the laws of Malta.

13.2    Any dispute, controversy or claim arising out of or relating to or concerning this Agreement, or the breach, or invalidity thereof, shall be settled by arbitration in accordance with the provisions of the Laws of Malta as from time to time amended.

**IN WITNESS WHEREOF** the Parties have executed this Agreement as of the date above first written.

for and on behalf of CISA Holdings Limited

for and on behalf of Elemento Oil & Gas LTD

for and on behalf of Cedaridge Investments S.A

12.8    This Agreement may be executed in any number of counterparts each of which when executed and delivered is an original but all the counterparts together shall constitute the same document.

**13      Governing law and jurisdiction**

13.1    This Agreement shall be governed by and construed in accordance with the laws of Malta and, accordingly, the rights and obligations of the Parties under this Agreement and the construction and effect of every provision hereof, as well as any disputes arising out of the validity, operation, application or interpretation of any provision hereof, shall be governed by and determined according to the laws of Malta.

13.2    Any dispute, controversy or claim arising out of or relating to or concerning this Agreement, or the breach, or invalidity thereof, shall be settled by arbitration in accordance with the provisions of the Laws of Malta as from time to time amended.

**IN WITNESS WHEREOF** the Parties have executed this Agreement as of the date above first written.

for and on behalf of CISA Holdings Limited

for and on behalf of Elemento Oil & Gas LTD

for and on behalf of Cedaridge Investments S.A

12.8   This Agreement may be executed in any number of counterparts each of which when executed and delivered is an original but all the counterparts together shall constitute the same document.

**13    Governing law and jurisdiction**

13.1   This Agreement shall be governed by and construed in accordance with the laws of Malta and, accordingly, the rights and obligations of the Parties under this Agreement and the construction and effect of every provision hereof, as well as any disputes arising out of the validity, operation, application or interpretation of any provision hereof, shall be governed by and determined according to the laws of Malta.

13.2   Any dispute, controversy or claim arising out of or relating to or concerning this Agreement, or the breach, or invalidity thereof, shall be settled by arbitration in accordance with the provisions of the Laws of Malta as from time to time amended.

**IN WITNESS WHEREOF** the Parties have executed this Agreement as of the date above first written.


for and on behalf of CISA Holdings Limited


for and on behalf of Elemento Oil & Gas LTD


for and on behalf of Cedaridge Investments S.A

12.8    This Agreement may be executed in any number of counterparts each of which when executed and delivered is an original but all the counterparts together shall constitute the same document.

**13      Governing law and jurisdiction**

13.1    This Agreement shall be governed by and construed in accordance with the laws of Malta and, accordingly, the rights and obligations of the Parties under this Agreement and the construction and effect of every provision hereof, as well as any disputes arising out of the validity, operation, application or interpretation of any provision hereof, shall be governed by and determined according to the laws of Malta.

13.2    Any dispute, controversy or claim arising out of or relating to or concerning this Agreement, or the breach, or invalidity thereof, shall be settled by arbitration in accordance with the provisions of the Laws of Malta as from time to time amended.

**IN WITNESS WHEREOF** the Parties have executed this Agreement as of the date above first written.

for and on behalf of CISA Holdings Limited

for and on behalf of Elemento Oil & Gas LTD

for and on behalf of Cedaridge Investments S.A

# Exhibit M

```
-RCGPNC03- GNB SUDAMERIS BANK, S. A.                                                           Fecha  :  7/04/17
                                                                                              Hora   : 15:55:26
                                        ESTADO DE CUENTA                                       Página :       1


     Sucursal . :     1  GNB SUDAMERIS BANK
     Cuenta . . :   24356467   ELEMENTO, LTD                   -   1      Moneda . . :    1  USD
     C.Contable :       213202102  DEP.VISTA CLIE.NO FIN.DISP.NO REM.


     Desde  . . :    1/03/17      Hasta . . :    7/04/17


     CUENTA CORRIENTE                       Saldo anterior . . :     15.870.090,30
```

| Fecha | F/Valor | Concepto | Nuestra Refer. | Su Referencia | Débitos | Créditos | Saldo |
|-------|---------|----------|----------------|---------------|---------|----------|-------|
| 3/03/17 | 3/03/17 106 | | | //060-022-0007 | 20,00 | | 15.870.070,30 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0007 | 7.000,00 | | 15.863.070,30 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0008 | 20,00 | | 15.863.050,30 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0008 | 5.000,00 | | 15.858.050,30 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0009 | 20,00 | | 15.858.030,30 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0009 | 750,00 | | 15.857.280,30 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0010 | 20,00 | | 15.857.260,30 |
| 3/03/17 | 3/03/17 106 | | | ,/060-022-0010 | 2.500,00 | | 15.854.760,30 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0011 | 20,00 | | 15.854.740,30 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0011 | 4.020,00 | | 15.850.720,30 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0012 | 40,00 | | 15.850.680,30 |
| 3/03/17 | 3/03/17 106 | | | /060-022-0012 | 44.317,55 | | 15.806.362,75 |
| 3/03/17 | 3/03/17 106 | | | /060-022-0013 | 20,00 | | 15.806.342,75 |
| 3/03/17 | 3/03/17 106 | | | ,/060-022-0013 | 2.886,22 | | 15.803.456,53 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0015 | 20,00 | | 15.803.436,53 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0015 | 6.895,00 | | 15.796.541,53 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0036 | 20,00 | | 15.796.521,53 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0036 | 3.500,00 | | 15.793.021,53 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0050 | 40,00 | | 15.792.981,53 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0050 | 14.830,00 | | 15.778.151,53 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0051 | 20,00 | | 15.778.131,53 |
| 3/03/17 | 3/03/17 106 | | | //060-022-0051 | 5.000,00 | | 15.773.131,53 |
| 3/03/17 | 3/03/17 11 | | | /060-061-0002 | 40,00 | | 15.773.091,53 |
| 3/03/17 | 3/03/17 11 | | | /060-065-0001 | 7.618,61 | | 15.765.472,92 |
| 3/03/17 | 3/03/17 11 | | | //060-065-0002 | 11.205,65 | | 15.754.267,27 |
| 3/03/17 | 3/03/17 11 | | | //060-065-0003 | 3.367,22 | | 15.750.900,05 |
| 6/03/17 | 6/03/17 11 | | | //060-061-0002 | 20,00 | | 15.750.880,05 |
| 6/03/17 | 6/03/17 107 | | | //061-010-0004 | | 2.178.708,44 | 17.929.588,49 |
| 8/03/17 | 8/03/17 106 | | | //060-022-0009 | 125,00 | | 17.929.463,49 |
| 8/03/17 | 8/03/17 106 | Orden de Pago enviad PETROPERU SA | | //060-022-0009 | 12.637.896,00 | | 5.291.567,49 |
| 9/03/17 | 9/03/17 11 | | | //060-061-0001 | 20,00 | | 5.291.547,49 |
| 10/03/17 | 10/03/17 106 | | | ·/060-022-0010 | 40,00 | | 5.291.507,49 |
| 10/03/17 | 10/03/17 106 | | | //060-022-0010 | 15.000,00 | | 5.276.507,49 |
| 10/03/17 | 10/03/17 11 | | | //060-065-0002 | 7.048,59 | | 5.269.458,90 |
| 13/03/17 | 13/03/17 11 | | | //060-061-0001 | 74,07 | | 5.269.384,83 |
| 14/03/17 | 14/03/17 11 | | | //060-061-0003 | 20,00 | | 5.269.364,83 |
| 15/03/17 | 15/03/17 106 | | | //060-022-0002 | 62,50 | | 5.269.302,33 |
| 15/03/17 | 15/03/17 106 | | | //060-022-0002 | 372.943,12 | | 4.896.359,21 |
| 15/03/17 | 15/03/17 11 | | | //060-065-0001 | 12.368,00 | | 4.883.991,21 |
| 16/03/17 | 16/03/17 11 | | | //060-061-0001 | 40,00 | | 4.883.951,21 |
| 16/03/17 | 16/03/17 11 | | | //060-061-0002 | 20,00 | | 4.883.931,21 |
| 16/03/17 | 16/03/17 11 | | | //060-065-0001 | 7.151,51 | | 4.876.779,70 |
| 20/03/17 | 20/03/17 106 | | | //060-022-0005 | 125,00 | | 4.876.654,70 |
| 20/03/17 | 20/03/17 106 | | | //060-022-0005 | 1.040.000,00 | | 3.836.654,70 |
| 20/03/17 | 20/03/17 106 | | | //060-022-0008 | 40,00 | | 3.836.614,70 |
| 20/03/17 | 20/03/17 106 | | | //060-022-0008 | 20.000,00 | | 3.816.614,70 |
| 20/03/17 | 20/03/17 11 | | | //060-061-0002 | 91,00 | | 3.816.523,70 |
| 21/03/17 | 21/03/17 106 | | | //060-022-0008 | 125,00 | | 3.816.398,70 |
| 21/03/17 | 21/03/17 106 | | | //060-022-0008 | 1.663.000,00 | | 2.153.398,70 |
| 30/03/17 | 30/03/17 106 | | | //060-022-0017 | 62,50 | | 2.153.336,20 |
| 30/03/17 | 30/03/17 106 | | | //060-022-0017 | 129.500,00 | | 2.023.836,20 |

CONFIDENTIAL

```
-RCGPNC03- GNB SUDAMERIS BANK, S. A.                                    Fecha : 7/04/17
                                                                       Hora  : 15:55:26
                          ESTADO DE CUENTA                             Página :      2


    Sucursal . :   1  GNB SUDAMERIS BANK
    Cuenta . . :   24356467   ELEMENTO, LTD              -  1    Moneda . . :   1  USD
    C.Contable :       213202102 DEP.VISTA CLIE.NO FIN.DISP.NO REM.


    Desde . . :    1/03/17    Hasta . . :    7/04/17


    CUENTA CORRIENTE                     Saldo anterior . . :    15.870.090,30
```

| Fecha | F/Valor | Concepto | Nuestra Refer. | Su Referencia | Débitos | Créditos | Saldo |
|-------|---------|----------|----------------|---------------|---------|----------|-------|
| 31/03/17 | 31/03/17 | 106 | | '/060-022-0005 | 125,00 | | 2.023.711,20 |
| 31/03/17 | 31/03/17 | 106 | | //060-022-0005 | 1.000.000,00 | | 1.023.711,20 |
| 3/04/17 | 3/04/17 | 107 | | //061-010-0011 | | 1.039.970,00 | 2.063.681,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0009 | 40,00 | | 2.063.641,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0009 | 20.000,00 | | 2.043.641,20 |
| 4/04/17 | 4/04/17 | 10f | | //060-022-0012 | 40,00 | | 2.043.601,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0012 | 14.255,00 | | 2.029.346,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0013 | 20,00 | | 2.029.326,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0013 | 7.000,00 | | 2.022.326,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0014 | 20,00 | | 2.022.306,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0014 | 5.000,00 | | 2.017.306,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0015 | 20,00 | | 2.017.286,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0015 | 10.000,00 | | 2.007.286,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0016 | 20,00 | | 2.007.266,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0016 | 3.500,00 | | 2.003.766,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0017 | 20,00 | | 2.003.746,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0017 | 1.250,00 | | 2.002.496,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0018 | 40,00 | | 2.002.456,20 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0018 | 45.125,61 | | 1.957.330,59 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0019 | 20,00 | | 1.957.310,59 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0019 | 4.000,00 | | 1.953.310,59 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0021 | 20,00 | | 1.953.290,59 |
| 4/04/17 | 4/04/17 | 106 | | //060-022-0021 | 10.000,00 | | 1.943.290,59 |
| 4/04/17 | 4/04/17 | 11 | | //060-061-0001 | 20,00 | | 1.943.270,59 |
| 4/04/17 | 4/04/17 | 11 | | //060-065-0003 | 1.229,42 | | 1.942.041,17 |
| 5/04/17 | 5/04/17 | 106 | | //060-022-0011 | 125,00 | | 1.941.916,17 |
| 5/04/17 | 5/04/17 | 106 | | //060-022-0011 | 1.198.500,00 | | 743.416,17 |
| 5/04/17 | 5/04/17 | 106 | | //060-022-0016 | 20,00 | | 743.396,17 |
| 5/04/17 | 5/04/17 | 106 | | //060-022-0016 | 6.274,56 | | 737.121,61 |
| 5/04/17 | 5/04/17 | 11 | | //060-065-0004 | 3.181,25 | | 733.940,36 |
| 5/04/17 | 5/04/17 | 11 | | //060-065-0007 | 3.431,48 | | 730.508,88 |
| 5/04/17 | 5/04/17 | 11 | | //060-065-0008 | 11.469,95 | | 719.038,93 |

# Exhibit N

```
PRINTED BY TurboSwift AT:   2017.03.08 14:58:34    FOR: GNBKPAPAAXXX
--------------------------------------------------------------------------------
  Message Name: SINGLE CUSTOMER CREDIT TRANSFER
  Message Type: F 103   Sent/Received: SCBLUS33XXXX
     Direction: Input                 STANDARD CHARTERED BANK
      Priority: Normal                ONE MADISON AVENUE
       Session: 4407                  NEW YORK,NY
      Sequence: 060532
                                 Input Output ACK   NAK   DUP  AUTH
  MIR: 170308GNBKPAPAAXXX4407060532   Time   Time  Flag  Code  Flag Code
  MOR:                               -----  ------ ---- ------ ----- ----
  MUR:                               1458           0           ----- SP--

  NOTE:
--------------------------------------------------------------------------------
1:      MESSAGE HEADER
        F01GNBKPAPAXXXX4407060532
2:      APPLICATION HEADER
        I103SCBLUS33XXXXN
4:      MESSAGE TEXT
:20:    Sender's Reference
TRN:              TCT2017/21201
:23B:   Bank Operation Code
                  CRED
:32A:   Value Date, Currency Code, Interbank Settled Amount
Value Date:       170308
Currency Code:    USD
Settled Amount:       12'637'896,00
:50K:   Ordering Customer
Optional Account Line: /24356467
Name & Address:   ELEMENTO LTD.
                  85 ST. JOHN STREET
                  VALLETA VLT 1165,MALTA
:52A:   Ordering Institution
Optional Account Line:
Identifier Code:  GNBKPAPA
                  GNB BANK PANAMA, S.A.
                  ICAZA 19
                  SUITE 4213
                  PANAMA
:57A:   Account With Institution
Optional Account Line:
Identifier Code:  CHASUS33
                  JPMORGAN CHASE BANK, N.A.
                  4 NEW YORK PLAZA
                  FLOOR 15
                  NEW YORK,NY
:59:    Beneficiary Customer
Optional Account Line: /880315416
Name & Address:   PETROLEOS DEL PERU
                  PETROPERU SA
:70:    Remittance Information
Free Format:      LOG.NO.CTE261 PETROPERU
                  INVOICE R.U.C.20100128218
                  PROFORMA
:71A:   Details of Charges
--------------------------------------------------------------------------------
PRINTER: PRT5.0309.020524   QUEUE: PDFPRNTR   BY: PRT5
DATABASE KEY: 201703081310470002  USER KEY: 201703081310470000   PAGE:  1
```

PRINTED BY TurboSwift AT:    2017.03.08 14:58:34    FOR: GNBKPAPAAXXX
--------------------------------------------------------------------------------
                            OUR
5:        TRAILER
CHK:      Checksum        DC7592BAB48C

                    **** END OF MESSAGE ****