**Hearing Date:**
**September 21, 2017 at 11:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
http://www.nysb.uscourts.gov/

In re:

CINQUE TERRE FINANCIAL
GROUP LIMITED,

         Debtor in a Foreign Proceeding.

_____/

Case No:   16-11086 (JLG)
Chapter 15

### DECLARATION OF LIQUIDATOR IN SUPPORT OF
### MOTION TO APPROVE COMPROMISE OF CONTROVERSY AND
### IN SUPPORT OF REPLY TO SUPPLEMENTAL OBJECTION

I, Stuart Mackellar, under penalty of perjury pursuant to 28 U.S.C. § 1746, make the following declaration:

1. I am the duly appointed liquidator for Cinque Terre Financial Group Limited.

2. I make this declaration in support of the (i) Motion to Approve the Compromise of Controversy ("Compromise Motion"), (ii) the Liquidator's Reply to the Objection of Centauro Liquid Opportunities Master Fund, L.P. ("Centauro") to Motion for Approval of Compromise, and (iii) in reply to the Supplemental Objection filed by Centauro.

3. I have asked the Court to grant the Compromise Motion and overrule Centauro's objection because the Settlement Agreement is the product of (a) an arm's length negotiation through competent and thorough legal counsel, (b) a review by me and my professionals of information demanded and provided as part of the settlement dialogue, (c) an honest assessment

of the relative strengths and weaknesses of the positions of the parties to the matters being settled, and (d) an honest assessment of the relevant costs (in terms of expense and delays) in settling or litigating the matters. It is my considered business judgment that the approval of the Settlement Agreement is in the overall best interests of the estate and the creditors of the estate.

**Liquidator's Factual Due Diligence For Settlement Agreement**.

4.      The Settlement Agreement references that Elemento, Ltd. ("Elemento") provided bank account statements and declarations as part of the settlement dialogue process.

5.      First, my team and I demanded and Elemento provided copies of Elemento's bank account records showing that the funds used to pay PetroPeru came from two wire transfer deposits from a non-debtor entity. We shared those bank account records with the estate's largest creditors[1] (BNP Paribas, RB International, Chemoil/Glencore, and Centauro).

6.      In the review of these records my professional team and I (we are forensic accountants) could not trace the funds used to pay PetroPeru to the Debtor. In fact, the tracing exercise was not very difficult because there was little activity in the bank account between the funding of the account and the purchase of the product.

7.      Second, I demanded and Elemento provided a declaration of an authorized representative of the non-debtor entity attesting under penalty of perjury that the non-debtor entity who supplied the funds as shown in the bank account records was not and is not owned or controlled by the Debtor, the Debtor's former officers, or the Debtor's former directors. We shared this declaration (by a representative located in Miami, Florida) with these same largest creditors of the estate.

8.      Third, after receipt of the bank account records and the first declaration my team

---

[1] Centauro has never filed or presented a proof of claim to the Liquidator. Nothing herein is intended to prevent or estop the Liquidator from exercising any rights or taking any position regarding Centauro in the foreign proceedings.

2

and I demanded additional bank records regarding Elemento's bank account (there was one monthly statement missing), a supplemental declaration from the non-debtor entity to further explain the timeline of events leading up to the wire transfers, and documents supporting the timeline of events. We requested this further information to confirm that the source of the funds used to acquire the product from PetroPeru came from non-debtor sources and that the non-debtor sources were independent and non-insiders of the Debtor. Elemento provided the documents and supplemental declaration demanded by us which has now been shown to Centauro.

9. Fourth, after receipt of these further documents and as part of the final push regarding settlement we demanded (a) an additional declaration from the non-debtor entity who supplied the funds used to acquire the product from PetroPeru and (b) a declaration from Elemento that, among other things, further confirmed under penalty of perjury the provenance of these funds. We specifically demanded that the declaration address that the funds used to acquire the product from PetroPeru did not have any connection to "Harvest Natural Resources" precisely because Centauro had made allegations in their litigation regarding such entity/transaction.

10. In sum, neither I nor my team have seen any documentation showing that the funds used to acquire the product from Petroperu originated from the Debtor.

### The Settlement Amount

11. We informed the largest creditors including Centauro that the amount of the proposed settlement was based upon the aggregate of (a) the fees and costs incurred by the estate and Chemoil (as of the settlement date) in connection with the pending contested matters and prosecuting the Texas Action, (b) the profit made on the Petroperu transaction which amount

3

was vetted with industry participants (including Chemoil) as being in line with the market, and (c) an appropriate amount in addition to these sums as a sanction for entering into the Petroperu transaction, in part, through the unauthorized use of CTFG's licensure rights with Petroperu.

### Limited Release

12.     The Settlement Agreement, among other things, only provides for a limited release regarding the PetroPeru transaction.

13.     Moreover, neither we nor Elemento are asking for the Court to make any findings of fact.  Thus, Centauro should have no concerns that approval of the settlement resolves any facts beyond the specific transaction with PetroPeru and in that regard only as it relates to the Debtor.  Of course, if the declarations and/or information provided to me is false, I may have a variety of civil and criminal claims to pursue.

### Centauro's Objection

14.     At its core, Centauro's objection and its supplemental objection argue that it hopes to be able to show at some point in the future that Elemento (and others) are alter-egos of CT Energia, Ltd., a BVI company, that allegedly issued a promissory note to Centauro.

15.     Centauro's allegations, if correct, would mean that the monies held in Texas are Elemento's monies (albeit Elemento as an alter-ego of another non-debtor entity) and not the Debtor's monies.  Thus, according to Centauro, the Liquidator's Motion to Determine Property of the Debtor would be wrong on the facts.  Similarly, the garnishment in Texas issued because of the claim that the monies were the Debtor's would also be wrong on the facts.  Centauro's allegations therefore support the notion that the Debtor's estate is not entitled to these funds as a matter of tracing or ownership.

16.     Centauro's objection and supplemental objection do not cite any evidence to

4

support that the monies used to acquire the product from PetroPeru originated from the Debtor.

17. Likewise, Centauro's objection and supplemental objection do not allege a factual or legal theory supporting that the amount of the settlement funds is too low in relation to the misconduct alleged by the Liquidator – namely, the using of the Debtor's license rights with Petroperu without authorization.

18. Centauro argues that approval of the Settlement Agreement would not be "fair and equitable". I assert that it would not be fair and equitable to disapprove a settlement agreement resulting from a hard-fought arms-length negotiation that brings significant monies into the estate where disapproval could result in the estate receiving nothing from the efforts of Chemoil or my team merely because Centauro asserts that someday its claims (which benefit only Centauro and not the Debtor's estate) might be proved.

## 28 U.S.C. § 1746 DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 11 September, 2017.

_____
Stuart Mackellar

5